TIMOTHY M. BARRETT,                                  )

WILLIAM A. BARRETT, BY HIS FATHER                    )
AND NEXT FRIEND, TIMOTHY M. BARRETT,                 )

                                                     )
AND                                                  )

                                                     )
KATARINA N. BARRETT, BY HER FATHER                   )
AND NEXT FRIEND, TIMOTHY M. BARRETT,                 )

                                                     )
                              PLAINTIFFS,            )

                                                     )
v.                                                   )

                                                     )
VALERIE JILL RHUDY MINOR,                            )

                                                     )
                              DEFENDANT.             )

CLERK'S OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED

JUN 2 6 2015

JULIA C. DUDLEY, CLERK
BY:
    DEPUTY CLERK

CASE NUMBER: 1:15CV32
JURY TRIAL DEMANDED

# COMPLAINT

**COMES NOW** the Plaintiffs, Timothy M. Barrett, *pro se,* and William A. Barrett and Katarina N. Barrett, by their father and next friend, Timothy M. Barrett, and moves this Honorable Court as follows:

## *INTRODUCTION*

1.      In Part 1 of this Complaint, the Plaintiffs seek from this Honorable Court a review of Virginia Code §§20-124.1 to 20-124.3 and 20-124.6 with the intent that the Court will declare them to be unconstitutional and permanently enjoin their use in cases involving child custody disputes.

2.      In Part 2 of this Complaint, assuming this Honorable Court grants the relief requested in Part 1, the Plaintiffs seek from this Court habeas corpus relief in the form of an order that

immediately transfers of custody of Plaintiffs William A. Barrett and Katarina N. Barrett to Plaintiff Timothy M. Barrett in keeping with Virginia's common law as to child custody.

3.      In Part 3 of this Complaint, assuming this Honorable Court does not grant the relief requested in Part 1, the Plaintiffs seek a declaration that the October 4, 2012, child custody order of the Honorable Judge Powell of the Bristol Juvenile and Domestic Relations ("J&DR") District Court is unconstitutional and permanently enjoin its use for any purpose whatsoever.

4.      In Part 4 of this Complaint, assuming this Honorable Court does not grant the relief requested in Part 1, the Plaintiffs seek a declaration that the April 9, 2010, child custody order of the Honorable Brent Geisler of the Grayson County Circuit Court is unconstitutional and permanently enjoin its use for any purpose whatsoever.

5.      In Part 5 of this Complaint, assuming this Honorable Court does not grant the relief requested in Part 1, the Plaintiffs seek a declaration that the March 9, 2006, child custody order of the Honorable J. Colin Campbell of the Grayson County Circuit Court is unconstitutional and permanently enjoin its use for any purpose whatsoever.

6.      In Part 6 of this Complaint, Plaintiff Timothy M. Barrett seeks from this Honorable Court an order of judgment in the form of compensatory and punitive damages for the Defendant's violation of 28 U.S.C. §1983.

7.      In Part 7 of this Complaint, Plaintiff Timothy M. Barrett seeks from this Honorable Court an order of judgment in the form of compensatory and punitive damages for the Defendant's violation of Virginia common law as it pertains to the custody of children.

8.      In Part 8 of this Complaint, assuming this Honorable Court does not grant the relief requested in Part 1, the Plaintiffs seek a declaration that the May 20, 2015, child custody order

of Judge Jarrett Benson of the Bristol J&DR District Court is unconstitutional and permanently enjoin its use for any purpose whatsoever.

## *PARTIES, JURISDICTION AND VENUE*

9.     Timothy M. Barrett is a natural person and domiciled in the City of Yorktown within the Commonwealth of Virginia.

10.    Timothy M. Barrett is *pro se*.

11.    Timothy M. Barrett is the natural father and next friend of William A. Barrett and Katarina N. Barrett.

12.    William A. Barrett is a minor and natural person and presently domiciled in the City of Bristol within the Commonwealth of Virginia.

13.    Katarina N. Barrett is a minor and natural person and presently domiciled in the City of Bristol within the Commonwealth of Virginia.

14.    The Defendant is a natural person and domiciled in the City of Bristol within the Commonwealth of Virginia.

15.    The Defendant presently has unlawful custody of William A. Barrett and Katarina N. Barrett.

16.    Timothy M. Barrett is ready, willing and able in all respects to take lawful custody of William A. Barrett and Katarina N. Barrett, just as he did with Alexander E. Barrett, after custody of Alexander was transferred to Timothy M. Barret incident to his being assaulted and then abandoned by the Defendant.

17.    This Honorable Court has original jurisdiction because this case arises under the United States Constitution. See 28 U.S.C. §1331.

18. This Honorable Court has original jurisdiction because William A. Barrett and Katarina N. Barrett are in the custody of another based on the judgment of a state court that is in violation of the Constitution of the United States. See 28 U.S.C. §2241 *et. seq.*

19. There is an absence of available state corrective process or the circumstances that exist render such process ineffective to protect the rights of William A. Barrett and Katarina N. Barrett.

20. This Honorable Court has original jurisdiction because the Defendant violated Timothy M. Barrett's natural, fundamental and constitutional rights, even denying him time with his children by order of the courts, under color of state law. See 28 U.S.C. 1983.

21. This Honorable Court has supplemental jurisdiction to hear claims arising under state law because those claims are so related to the federal claims raised in this Complaint that they form the same or controversy under Article III of the U.S. Constitution. See 28 U.S.C. §1367.

22. Venue is proper in this Honorable Court because the Defendant is domiciled in the City of Bristol, Virginia. See 28 U.S. Code § 1391(b)(1) and http://www.vawd.uscourts.gov/court-information/where-to-file.aspx.

## *FACTS COMMON TO ALL COUNTS*

23. The Plaintiffs incorporate by reference and re-allege the previous and following paragraphs as if fully reproduced herein.

24. Timothy M. Barrett and the Defendant were married in July of 1990.

25. Born of their marriage were six children.

26.     Those children are as follows: Jonathan H. Barrett (DOB 3/21/92), Alexander E. Barrett (DOB 8/25/93), Erin E. Barrett (DOB 5/8/95), Emily G. Barrett (DOB 4/5/97), William H. Barrett (DOB 2/17/99) and Katarina N. Barrett (DOB 2/12/01).

27.     Of these children, only William A. Barrett and Katarina N. Barrett remain minors and subject to the jurisdiction of the courts of the Commonwealth of Virginia.

28.     Timothy M. Barrett and the Defendant ceased living as husband and wife in July of 2001, when the Defendant abandoned her marriage and absconded with the parties' six children, moving them across the state, without his knowledge or permission.

29.     The Defendant then sued Timothy M. Barrett for divorce, obtaining said divorce on "no fault" grounds in August of 2002, and have been in litigation over the custody of their children ever since.

30.     Timothy M. Barrett has seen his God-given, natural, fundamental and Constitutional rights repeatedly violated by the trial courts of the Commonwealth of Virginia in his quest to have custody of children with appellate courts often refusing to even consider his pleas.

31.     On or about May 15, 2012, Timothy M. Barrett appropriately filed for a modification of the April 9, 2010, custody order of the Honorable Brent L. Geisler of the Grayson County Circuit Court as it pertains to Erin E. Barrett, Emily G. Barrett, William A. Barrett and Katarina N. Barrett, who were still minors at the time, in the Grayson County J&DR District Court.

32.     Under Virginia law, previous custody determinations can be modified upon a showing that there has been a material change in circumstances since the entry of the previous determination and that a different custody arrangement is in the children's best interests. See *Keel v. Keel*, 225 Va. 606, 303 S.E.2d 917 (1983).

33.     During the pre-trial phase of the case in the Grayson County J&DR District Court, Timothy M. Barrett moved for, adduced undisputed evidence for and was granted a finding of a material change in circumstances as a matter of law, leaving only the issue of what was in the children's best interests for the trial on the merits.

34.     In addition, because in 2011 the Defendant and the children moved from Grayson County to the City of Bristol, Timothy M. Barrett moved for and was granted a change in venue to the J&DR District Court for the City of Bristol.

35.     The case was heard by the Honorable Judge Florence A. Powell on August 22, 2012.

36.     During the pendency of the case, Judge Powell made the following evidentiary rulings over the legal, evidentiary and Constitutional objections of Timothy M. Barrett:

    a.     No evidence would be received of any facts that arose prior to April 9, 2010.

    b.     The parties would not be allowed to call their minor children to testify.

    c.     The report of Guardian *Ad Litem*, Patricia Smith, Esquire, would be received into evidence.

    d.     The case would only be given one day for trial and not the three days as requested by your Plaintiff.

37.     After a one day bench trial, the parties rested and provided Judge Powell with closing arguments.

38.     Judge Powell then dismissed the parties, taking the matter under advisement.

39.     Before doing so, however, and prior to her review of the documentary evidence submitted by Timothy M. Barrett, Judge Powell announced her primary decision, which matched her final decision.

40.     As Judge Powell was considering her determination, Mr. D. Jeffrey Coale, Esquire, attorney for the Defendant, wrote Judge Powell in an effort to influence her decision.

41.     Exhibit 1 is a true, accurate and complete copy of the aforementioned letter from Mr. Coale to Judge Powell.

42.     On October 3, 2012, Judge Powell issued her custody determination opinion letter followed on October 4, 2012, by her custody order, which incorporated her opinion letter.

43.     Exhibit 2 is a true, accurate and complete copy the aforementioned opinion letter and custody order of Judge Powell for Emily G. Barrett, William A. Barrett and Katarina N. Barrett.

44.     In reaching her opinion, Judge Powell expressly relied on the April 9, 2010 custody order/opinion letter of the Honorable Brent L. Geisler of the Grayson Count Circuit Court.

45.     Exhibit 3 is a true, accurate and complete copy of the aforementioned opinion letters and custody order of Judge Geisler.

46.     The April 9, 2010, custody order/opinion letter of the Honorable Brent L. Geisler, in turn, expressly relied on the March 9, 2006, custody order/opinion letter of the Honorable J. Colin Campbell of the Grayson County Circuit Court.

47.     Exhibit 4 is a true, accurate and complete copy of the aforementioned opinion letter and custody order of Judge Campbell.

48.     Judge Campbell's March 9, 2006 custody order/opinion letter, in turn, expressly relied upon the December 16, 2005, letter of Guardian *Ad Litem,* Jonathan Venzie, Esquire.

49.     Exhibit 5 is a true, accurate and complete copy of the aforementioned letter of Guardian *Ad Litem,* Jonathan Venzie, Esquire.

50.     All told, this custody case has been heard by at least 11 different judges, all of whom reached different conclusions based on what was essentially the same evidence based on the (mis)application of Virginia Code §§20-124.1, *et. seq.*

51.     In reaching her opinion, authoring her opinion letter and entering her custody order, Judge Powell (mis)applied Virginia Code §§20-124.1-20-124.3, 20-124.2:1 and 20-124.6.

52.     Exhibit 6 is a true, accurate, current and complete copy of the aforementioned statutes from the Code of Virginia.

53.     Beginning in November of 2014 and continuing to the present, the Defendant has repeatedly failed to comply with both Judge Geisler's and Judge Powell's custody orders concerning Timothy M. Barrett's visitation with William A. Barrett.

54.     These failures prompted Timothy M. Barrett to file show causes in the J&DR District Court for the City of Bristol.

55.     Incident to these show causes, Timothy M. Barrett filed a motion for Judge Powell to recuse herself on the basis of bias shown toward Timothy M. Barrett during the custody litigation before her, as well as her violating his constitutional rights.

56.     Exhibit 7 is a true, accurate and complete copy of the aforementioned motion to recuse.

57.     Without even a hearing on the motion to recuse, Judge Powell did recuse herself from any further involvement in the matter.

58.     Such a recusal amounts to a tacit admission that the factual allegations in the motion to recuse were true as a matter of law.

## ***PRINCIPLED ARGUMENT COMMON TO ALL COUNTS***

59.     Contrary to modern constitutional jurisprudence, the limitations on state authority embodied in the U.S. Constitution were not intended by the Framers to be a hurdle to government action to which a state could get around with sufficient reason and by appropriate means.

60.     Rather, the Framers recognized that the rights guaranteed by the U.S. Constitution were barriers to state action, no matter the reasons why or means chosen to accomplish any end desired to be accomplished by the state.

61.     When Timothy M. Barrett is asserting his rights as recognized at law, he will plead in keeping with modern constitutional jurisprudence.

62.     However, Timothy M. Barrett takes and asserts the principled position that the wrong committed by the Commonwealth of Virginia in denying him custody of his children and the wrongs that flow naturally from that wrong are Constitutionally infirm no matter any justification offered by the Commonwealth and/or the Defendant.

## *PART 1*

### COUNT 1 - VIRGINIA CODE §§20-124.1, 20-124.2 AND 20-124.3 ARE UNCONSTITUTIONAL

#### *Count 1A - Virginia Code §§20-124.1, 20-124.2 and 20-124.3 Violate Timothy M. Barrett's Fundamental Right to the Care, Custody, Control, Management and Companionship of His Children*

63.     The Plaintiffs incorporate by reference and re-allege the previous and following paragraphs as if fully reproduced herein.

64.     Timothy M. Barrett has a God-given, natural and fundamental right to the care, custody, control, management and companionship of his minor children.

65. This right is recognized and protected incident to the due process clauses of the 14th Amendment to the United States Constitution.

66. In keeping with the principled argument above, the Commonwealth may not burden the right at all.

67. Otherwise, the Commonwealth of Virginia may only burden this right by demonstrating the existence of a compelling state interest and then only by the least restrictive means via a statute that is narrowly drawn so as to only to further that interest .

68. Such a compelling state interest concerning this right will only exist if the Commonwealth of Virginia can show that the health or safety of a child is at risk.

69. Virginia Code §§20-124.1, 20-124.2 and 20-124.3 exist, by their very nature and purpose, both in theory and in practice, to affect this right of Timothy M. Barrett to parent his children.

70. However, nothing in Virginia Code §§20-124.1, 20-124.2 and 20-124.3 require a showing that an at-issue child's health or safety is at risk before the Commonwealth of Virginia may intervene and interfere with this right. See *Williams v. Williams*, 256 Va. 19, 31 (1998) (Justice Hassell, dissenting).

71. To the contrary, all that is required is a showing that the child's parents are separated, divorcing or divorced.

72. So absent of any consideration of the health or safety of the at-issue child, that Virginia Code §§20-124.1, 20-124.2 and 20-124.3 leave the Commonwealth of Virginia impotent to act without a parental dispute and lawsuit no matter the existence of a child suffering actual and/or realized risk to their health or safety.

73.     Indeed, nothing in Virginia Code §§20-124.1, 20-124.2 and 20-124.3 concerns or promotes the health or safety of the at-issue child.

74.     The "best interest of the child standard" codified in Virginia Code §§20-124.1, 20-124.2 and 20-124.3 does not further a compelling state interest.

75.     Even if it did further a compelling state interest, the "best interest of the child standard" codified in Virginia Code §§20-124.1, 20-124.2 and 20-124.3 is not narrowly drawn.

76.     Even if it did further a compelling state interest and was narrowly drawn, the "best interest of the child" standard codified in Virginia Code §§20-124.1, 20-124.2 and 20-124.3 does not guarantee that the aforementioned right is impacted by the least restrictive means.

77.     Therefore, Virginia Code §§20-124.1, 20-124.2 and 20-124.3 are unconstitutional for violating the due process clauses of the 14th Amendment.

78.     Timothy M. Barrett has been denied, is being denied and will continue to be denied his rights pertaining to his children by the Commonwealth of Virginia because of the Virginia Code §§20-124.1, 20-124.2 and 20-124.3.

79.     Therefore, we ask this Honorable Court to declare Virginia Code §§20-124.1, 20-124.2 and 20-124.3 unconstitutional and permanently enjoin their use for any reason whatsoever.

### Count 1B - Virginia Code §§20-124.1, 20-124.2 and 20-124.3 are Unconstitutionally Vague

80.     The Plaintiffs incorporate by reference and re-allege the previous and following paragraphs as if fully reproduced herein.

81.     Under Virginia law, "In matters concerning custody and visitation, the welfare and best interests of the child are the 'primary, paramount, and controlling considerations'." *Mullen v. Mullen*, 188 Va. 259 (1948)

82.     However, this word "welfare" and phrase "best interests of the child" are never defined by Virginia law.

83.     Indeed, Virginia courts are "vested with broad discretion to make the decisions necessary to safeguard and promote the child's best interests, and its decision will not be set aside unless plainly wrong or without evidence to support it." See *e.g., Farley v. Farley*, 9 Va. App. 326 (1990).

84.     However, Virginia law forbids an appellate court to ever re-determine the facts and insists that any appeal comes with the presumption that the law was correctly applied to the facts.

85.     There has never been a single reported case in which a trial court's decision regarding custody and visitation was reversed because it was "plainly wrong".

86.     Instead, Virginia law provides nine specific factors and one non-specific "catch all" factor a trial court is to look at in determining what is in the best interests of the children.

87.     This "catch all" factor allows a trial court to base its decision on any other consideration it "deems necessary and proper to the determination". See Virginia Code §20-124.3(10).

88.     Under Virginia law, trial courts are not required to assign any particular weight to any of the factors, which is to say they can assign whatever import they want to any of the factors, including the catch-all factor, in rendering its custody decision. See *e.g., O'Rourke v. Vuturo*, 49 Va. App. 139 (2006).

89.     Even within each of the specific factors, the terms used in describing the factors have no definitions under Virginia law. For example, the factors repeatedly use the concept of the

"needs of the child", but never defines what these "needs" are and does not specify what needs are to be considered and what needs may be ignored.

90.     Nor is there any hint as to how these factors are to be related to what is in the best interests of the child.  For example, Virginia law does not tell us the import the age of the parent has on the custody determination and how that is to be determined?

91.     There is nothing in Virginia law that evidences why these factors are actually helpful in determining what is "best" for the child.

92.     To the contrary, given all of the data elucidated from the social sciences in the last 35 years, if Virginia really cared about the best interests of the children, it would repeal its statutes allowing for the dissolution of marriage, keeping families intact.

93.     Indeed, Virginia Code §§20-124.1, 20-124.2 and 20-124.3 are contrary to the best interests of the child because they cause children to view the family as an economic relationship rather than a familial unit.

94.     This results in children triangulating one parent against the other parent in an effort to maximize the economic benefit of each relationship.

95.     This, in-turn, results in encouraging parents to participate in a bidding war to see who can most appeal to the child's baser instincts and desires to win that child's preference for custody.

96.     Thus, Virginia Code §§20-124.1, 20-124.2 and 20-124.3 encourage negative character qualities in children, including, but not limited, selfishness, avariciousness, self-centeredness, lack of self-control, laziness, etc.

97. Counterwise, Virginia Code §§20-124.1, 20-124.2 and 20-124.3 destroy the ability of parents to instill positive and necessary character qualities that the child will need to be successful, intelligent, wise and emotionally mature in the real world that is faced by adults every day of their lives.

98. It leaves children utterly rudderless in the real world, destroying their security and promoting emotional retardation, leaving them without any real coping mechanisms, resulting in a whole host of emotional problems, illnesses and maladjustments.

99. This is especially true when, as here concerning the Defendant, one of the parents is more than willing to use the children as weapons against the other parent, intentionally alienating the other parent from the children, rewarding the children who join her in her war against the other parent, and punishing the children who remain steadfast in their love for the other parent.

100. Be that as it may, there is no rational basis, let alone compelling basis, to say that these factors promote the child's best interests, either in-and-of-themselves or as opposed to other factors the Virginia legislature did not adopt.

101. Some of them are clearly contrary to the best interests of the child. For example, a child's preference can be purely arbitrary and based on factors that are contrary to his or her best interests (e.g., one parent is more lax than the other in matters of discipline and education), but are expressed in "reasonable" terms as far as the trial court is concerned.

102. Indeed, there have been instances where trial courts have granted one parent custody on the sole basis of the child's preferences given that the child would run away from the non-

preferred parent's home, and this no matter the other consideration as to what is best for the child.

103.    Other factors which go without question to the child's best interests, such as which parent can provide the best educational opportunity, are conspicuously absent from Virginia law. This is especially telling when you consider that the Standards of Learning or SOL testing that takes places each year in Virginia's public schools has somewhat objectified school performance, allowing an objective evaluation of which parent provides the better schools.

104.    Reading these aspects of Virginia law together make it clear that a Virginia trial court in making a child custody determination is allowed to do whatever it wants.

105.    This explains why in the diverse custody determinations in the cases between Timothy M. Barrett and the Defendant, eleven different judges have come up with eleven different custody determinations, despite the facts being, more or less, the same and the law being exactly the same in each case.

106.    Indeed, Judge Gesiler had to author three separate opinions because each time he authored a new one, Timothy M. Barrett would file a motion to reconsider to expose the unlawful, non-factual and/or irrational nature of the current opinion.

107.    Finally, Judge Geisler gave up on the third opinion letter and entered an order based on it, saying that if he is wrong, he is wrong.

108.    Indeed, in one case involving a show cause for the Defendant's failure to abide by the terms of the custody order, Judge Colin Gibb of the Grayson County Circuit Court responded to Timothy M. Barrett's assertion that Judge Gibb's statements implied that the custody order was not worth the paper it was written on with "that is correct".

109.    Furthermore, under Virginia law, in subsequent custody determinations, a trial court must first determine if there has been a "material change in circumstances" before it will even consider the "best interests of the child," that absent a finding of a material change in circumstances, the trial court is without the authority to change its prior custody order.  See *Keel v. Keel,* 225 Va. 606 (1983).

110.    However, "material change in circumstances" is also without a definition under Virginia law and is left totally at the discretion of the trial court.

111.    In the diverse child custody cases between Timothy M. Barrett and the Defendant, one Juvenile Court trial judge found no material change in circumstances and then, on appeal, the Circuit Court ultimately did find a material change in circumstances, though the facts and the law were identical.

112.    In that same case, the Circuit Court failed to find a material change in circumstance and then, upon motion to reconsider, did find a material change in circumstance, though the facts and the law had not changed between the time of the initial decision and the reconsidered decision.

113.    But more than all of this, it allows a trial court to impose its subjective notions of best parenting practices or what makes a good parent on the litigants before it.

114.    And a trial court is empowered to impose these subjective notions on parents without any expertise of any kind as to what makes the best parenting practices and/or without hearing any expert testimony as to these issues whatsoever.

115.    For example, if a trial court subjectively believes spanking is harmful, that trial court could, on that basis alone, find that it is in the best interests of the child to be with the parent

that does not spank as opposed to the one who does. See *Roberts v. Roberts*, 41 Va. App. 513 (2003). This is true even though Virginia recognizes a parent has the right to employ corporal punishment in the discipline of their own children. See *Carpenter v. Commonwealth*, 186 Va. 851 (1947).

116.     The bottom line is that Virginia law imposes on trial judges an impossible task, absurdly asking them to take a painfully few hours of testimony and make a decision as to what is best for a child that will, for better of ill, affect that child for the rest of the child's life when that judge has no interest in the child, does not care for the child, and is not accountable for any harm that comes to a child from a poor decision without equipping a judge with the expertise to do this task.

117.     Thus, Virginia Code §§20-124.1, 20-124.2 and 20-124.3 do not clearly define how child custody cases are to be determined.

118.     Virginia Code §§20-124.1, 20-124.2 and 20-124.3 do not given persons of ordinary intelligence a reasonable opportunity to know what is and what is not in the child's best interests so that he may act accordingly.

119.     Virginia Code §§20-124.1, 20-124.2 and 20-124.3 trap the well-meaning parent who desires to do what is best for his child into losing custody by not providing a fair warning.

120.     Virginia Code §§20-124.1, 20-124.2 and 20-124.3 are without explicit standards for those who apply them.

121.     Virginia Code §§20-124.1, 20-124.2 and 20-124.3 allow arbitrary and discriminatory enforcement.

122.   Virginia Code §§20-124.1, 20-124.2 and 20-124.3 impermissibly delegate policy matters to judges for resolution on an *ad hoc* basis.

123.   Therefore, Virginia Code §§20-124.1, 20-124.2 and 20-124.3 are unconstitutional as being vague in themselves and in their application in violation of the due process clause of the 14th Amendment.

124.   Timothy M. Barrett has been denied, is being denied and will continue to be denied his rights pertaining to his children by the Commonwealth of Virginia because of Virginia Code §§20-124.1, 20-124.2 and 20-124.3.

125.   Therefore, we ask this Honorable Court to declare Virginia Code §§20-124.1, 20-124.2 and 20-124.3 unconstitutional and permanently enjoin their use for any reason whatsoever.

***Count 1C - Virginia Code §§20-124.1, 20-124.2 and 20-124.3 are Unconstitutionally Overbroad***

126.   The Plaintiffs incorporate by reference and re-allege the previous and following paragraphs as if fully reproduced herein.

127.   Under Virginia law, all of the rights of the parents are subordinated to the best interests of the child. See *Mullen v. Mullen*, 188 Va. 259, 269 (1948) and *Bottoms v. Bottoms*, 249 Va. 410, 413-414 (1995).

128.   This means that a Virginia trial court can make its custody decision based on a parent having exercised his right to freedom of speech under the 1st Amendment to the U.S. Constitution if it finds that what a parent says is not in the "best interests" of the children.

129.   This means that a Virginia trial court can make its custody decision based on a parent having exercised his right to freedom of the press under the 1st Amendment to the U.S.

Constitution if it finds that what a parent has written is not in the "best interests" of the children.

130.     This means that a Virginia trial court can make its custody decision based on a parent having exercised his right to freedom of religion under the 1st Amendment to the U.S. Constitution if it finds that what a parent believes or how a parent practices his faith is not in the "best interests" of the children.

131.     This means that a Virginia court can make its custody decision based on a parent having exercised his right to freedom of assembly under the 1st Amendment to the U.S. Constitution if it finds that whoever a parent spends their time with is not in the "best interests" of the children.

132.     This means that a Virginia court can make its custody decision based on a parent having exercised his right to freedom to petition the government for a redress of grievances under the 1st Amendment to the U.S. Constitution if it finds that what a parent has taken legal actions that are not in the "best interests" of the children.

133.     This means that a Virginia trial court can make its custody decision based on a parent having exercised his right to keep and bear arms under the 1st Amendment to the U.S. Constitution if it finds that what a parent's firearm ownership and/or use is not in the "best interests" of the children.

134.     This means that a Virginia trial court can make its custody decision based on a parent having exercised his right to call witnesses under the 6th Amendment to the U.S. Constitution if it finds that whoever a parent has called to testify in Court is not in the "best interests" of the children.

135. This means that a Virginia trial court can make its custody decision based on a parent having exercised his right to both substantive and procedural due process under the Due Process Clauses of 5th and 14th Amendments to the to the U.S. Constitution if it finds that the process insisted upon by a parent is not in the "best interests" of the children.

136. This means that a Virginia trial court can make its custody decision without any regard to the God-given, natural, fundamental and Constitutional right of parents to the care, custody, companionship and control of their own children, recognized by the due process clause of the 14th Amendment to the U.S. Constitution, if it finds that such rights are incompatible with the "best interests" of the children.

137. This means that a Virginia trial court can make its custody decision denying a parent his right to equal protection of the laws under the Equal Protection Clauses of the 14th Amendment to the U.S. Constitution if it finds that a parent's demand of equality before the law is not in the "best interests" of the children.

138. In fact, there is not a single God-given, natural, fundamental or Constitutional right that a Virginia trial court may not violate with extreme prejudice in rendering in child custody decision.

139. And this is with no consideration of whether the violation of these rights is via the least restrictive means.

140. This pits the parent's natural desire to maintain his relationship with his children at all costs against a parent's God-given, natural, fundamental and Constitutional rights, having a chilling effect on a parent's exercise of those rights, lest he suffer the loss of his children to a custody decision with which he disagrees.

141. This essentially makes a parent who desires to maintain his relationship with the child a slave to the arbitrary and capricious will of some judge, for the judge can excise any control he or she wants over the life of a parent, forcing the parent to do as he or she desires, lest he lose his involvement in his children's lives.

142. In the custody cases between Timothy M. Barrett and the Defendant, the exercise of these very rights have been held against Timothy M. Barrett in granting to the Defendant the custody of William A. Barrett and Katarina N. Barrett full legal and physical custody while allowing Timothy M. Barrett merely what even the Court admits is "unusually" limited visitation.

143. This has put Timothy M. Barrett in the position of choosing to forgo his God-given, natural, fundamental and Constitutional rights rather than risk losing more time with his children.

144. This makes Virginia Code §§20-124.1, 20-124.2 and 20-124.3 unconstitutional due to their being unconstitutionally overbroad.

145. Timothy M. Barrett has been denied, is being denied and will continue to be denied this rights pertaining to his children by the Commonwealth of Virginia because of Virginia Code §§20-124.1, 20-124.2 and 20-124.3.

146. Therefore, we ask this Honorable Court to declare Virginia Code §§20-124.1, 20-124.2 and 20-124.3 unconstitutional and permanently enjoin their use for any reason whatsoever.

## COUNT 2 – VIRGINIA COMMON LAW PERTAINING TO *IN CAMERA* INTERVIEWS OF CHILDREN AND VIRGINIA CODE §20-124.2:1 ARE UNCONSTITIONAL

### Count 2A - Virginia Common Law Pertaining to In Camera Interviews of Children and Virginia Code §20-124.2:1 Violate Timothy M. Barrett's Right to Due Process

147.    The Plaintiffs incorporate by reference and re-allege the previous and following paragraphs as if fully reproduced herein.

148.    The Due Process Clause of the 14th Amendment to the U.S. Constitution guarantees, among other things, a litigant's right to call and examine witnesses who may support his position in the cause of action in keeping with the rules of evidence.

149.    The Due Process Clause of the 14th Amendment to the U.S. Constitution also guarantees, among other things, a litigant's right to confront and cross-examine witnesses who are called to testify against his position in the cause of action in keeping with the rules of evidence.

150.    The Due Process Clause of the 14th Amendment to the U.S. Constitution also guarantees, among other things, that a litigant's case will not be tried in secret with him having no ability to confront the evidence that may support or be against his position in his cause of action.

151.    Even Virginia recognizes these due process rights in *Sydnor Pump v. County School Board*, 182 Va. 156, 170 (1943):

> It obviously lies at the foundation of justice that, in any forum where the rights of any person are to be judicially determined, he has the right to be present and to be heard through his own witnesses... and to hear the testimony of his adversary's witnesses, to cross-examine them, and rebut their testimony.

152.    Specifically, Virginia has recognized these due process rights extend to the calling and examining in open court of minor children that are the subjects of a custody dispute, even though the testimony may harm them. See *Hepler v. Hepler*, 195 Va. 611 (1954).

153.    Indeed, Virginia Code 20-124.3 presupposes the validity of a parent calling the children as witnesses since it insists that a trial court consider the preference of the children in determining their best interests, a preference which can only be expressed from the testimony of the children themselves lest it be excluded as hearsay under the Virginia Rules of Evidence.

154.     This would be especially true when, as in the cases between Timothy M. Barrett and the Defendant, the children, and the children alone, have testimony about each of the factors that are relevant to a trial court's custody determination, including the Defendant's abuse and neglect of them.

155.     Indeed, Timothy M. Barrett lacks personal knowledge of the lives of the children when they are not in his custody and the Defendant is incentivized to lie about her own conduct as a parent, which is to say the children are the only witness who can provide admissible evidence without immediate questions as to their biases and prejudices.

156.     The Defendant has lied in Court about the children's lives in her custody.

157.     The Constitution is the supreme law of the land, rendering void any statute contrary to its provisions.  See Article VI, Clause 2 of the U.S. Constitution.

158.     The Supreme Court of Virginia is the highest state court in the Commonwealth of Virginia.

159.     The Court of Appeals of Virginia is an appellate court that is inferior to the Supreme Court of Virginia and is bound by its opinions as to the law in the Commonwealth of Virginia.

160.     Despite the Constitution and the Supreme Court of Virginia being clear on the due process rights of parents as they pertain to calling and examining their minor children to testify in open court in child custody cases, the Court of Appeals of Virginia has granted trial courts authority to violate a parent's due process rights by allowing the trial court to interview the children *in camera* without the parents or their attorneys present.  See *Haase v. Haase*, 20 Va. App. 671 (1995).

161. The Court of Appeals of Virginia invented this common law rule knowing full well the due process implications and disregarded the same.

162. In granting this authority to trial courts, the Court of Appeals of Virginia refused to adopt a bright-line, objective test of applicability, leaving it entirely up to the broad discretion of the trial court as to when and when not to strip parents of their due process rights aforementioned. See *Brown v. Burch*, 30 Va. App. 670 (1999).

163. This authority has been implicitly codified in Virginia Code §20-124.2:1.

164. Trial courts throughout the Commonwealth of Virginia, including in the custody cases between Timothy M. Barrett and the Defendant have routinely denied the due process rights aforementioned by interviewing the children *in camera* out of the parents' presence.

165. Virginia Code §20-124.1 provides that if a trial court chooses to avail itself of the authority to strip parents of their due process rights aforementioned, it must provide a transcript of the interview and make it a part of the record, unless it chooses not to because it finds the child's safety at issue.

166. The Commonwealth of Virginia, either through its common law as it pertains to interviewing children in camera and/or Virginia Code §20-124.2:1, is in violation of the Constitution in denying parents their due process rights to call and examine witnesses, to confront and examine witnesses and to not have decisions affecting their rights based on secret evidence.

167. Even if the Commonwealth of Virginia is allowed in theory to deny parents their due process rights aforementioned, it may only do so by demonstrating the existence of a

compelling state interest and then only by the least restrictive means via a statute that is narrowly drawn so as to only to further that interest .

168.    Such a compelling state interest concerning the due process rights aforementioned does not exist.

169.    Assuming such a compelling state interest does exist, it will only exist if the Commonwealth of Virginia can show that the health or safety of a child is at risk.

170.    However, nothing in the common law as it pertains to interviewing children *in camera* and/or Virginia Code §20-124.2:1 requires a showing that an at-issue child's health or safety is at risk before the Commonwealth of Virginia may intervene and interfere with these due process rights.

171.    Indeed, nothing in the common law as it pertains to interviewing children *in camera* and/or Virginia Code §§20-124.2:1 concerns or promotes the health or safety of the child.

172.    The "best interest of the child standard" implicit in the common law as it pertains to interviewing children *in camera* and/or Virginia Code §§20-124.2:1 does not further a compelling state interest.

173.    Even if it did further a compelling state interest, the "best interest of the child standard" implicit in the common law as it pertains to interviewing children *in camera* and/or Virginia Code §§20-124.2:1 is not narrowly drawn.

174.    Even if it did further a compelling state interest and was narrowly drawn, the "best interest of the child standard" implicit in the common law as it pertains to interviewing children *in camera* and/or Virginia Code §§20-124.2:1 does not guarantee that the aforementioned due process rights are impacted by the least restrictive means.

175.    Virginia common law as it pertains to interviewing children *in camera* and Code §20-124.2:1 exist, by their very nature and purpose, both in theory and in practice, to negatively affect Timothy M. Barrett's aforementioned due process rights.

176.    Therefore, the common law as it pertains to interviewing children *in camera* and/or Virginia Code §§20-124.2:1 are unconstitutional for violating the due process clause of the 14th Amendment.

177.    Timothy M. Barrett has been denied, is being denied and will continue to be denied this rights pertaining to his children by the Commonwealth of Virginia because of Virginia common law as it pertains to in camera interview of children and Virginia Code §20-124.2:1.

178.    Therefore, we ask this Honorable Court to declare of Virginia common law as it pertains to in camera interview of children and Virginia Code §20-124.2:1 unconstitutional and permanently enjoin their use for any reason whatsoever.

### Count 2B - Virginia Common Law Pertaining to In Camera Interviews of Children and Virginia Code §20-124.2:1 Are Unconstitutionally Vague

179.    The Plaintiffs incorporate by reference and re-allege the previous and following paragraphs as if fully reproduced herein.

180.    Neither Virginia common law as its pertaining to *in camera* interview of children nor Virginia Code §20-124.2:1 clearly defines the circumstances under which a trial court may deny a parent their aforementioned due process rights.

181.    Neither Virginia common law as its pertaining to *in camera* interview of children nor Virginia Code §20-124.2:1 persons of ordinary intelligence a reasonable opportunity to know the circumstance under which a trial court may deny then the aforementioned due process rights.

182. Both Virginia common law as its pertaining to *in camera* interview of children and Virginia Code §20-124.2:1 trap the well-meaning parent who desires to do what is best for his children into losing their aforementioned due process rights by not providing a fair warning.

183. Both Virginia common law as its pertaining to *in camera* interview of children and Virginia Code §20-124.2:1 are without explicit standards for those who apply them.

184. Both Virginia common law as its pertaining to *in camera* interview of children and Virginia Code §20-124.2:1 allow arbitrary and discriminatory enforcement.

185. Both Virginia common law as its pertaining to *in camera* interview of children and Virginia Code §20-124.2:1 impermissibly delegates policy matters to judges for resolution on an *ad hoc* basis.

186. Therefore, both Virginia common law as its pertaining to *in camera* interview of children and Virginia Code §20-124.2:1 are unconstitutional as being vague in themselves and in their application in violation of the due process clause of the 14th Amendment.

187. Timothy M. Barrett has been denied, is being denied and will continue to be denied this rights pertaining to his children by the Commonwealth of Virginia because of Virginia common law as it pertains to in camera interview of children and Virginia Code §20-124.2:1.

188. Therefore, we ask this Honorable Court to declare of Virginia common law as it pertains to in camera interview of children and Virginia Code §20-124.2:1 unconstitutional and permanently enjoin their use for any reason whatsoever.

### COUNT 3 – VIRGINIA CODE §20-124.6 IS UNCONSTITUTIONAL

*Count 3A - Virginia Code §§20-124.6 Violates Timothy M. Barrett's Fundamental Right to the Care, Custody, Control, Management and Companionship of His Children*

189. The Plaintiffs incorporate by reference and re-allege the previous and following paragraphs as if fully reproduced herein.

190. Timothy M. Barrett has a God-given, natural, fundamental and Constitutional right to the care, custody, control, management and companionship of his minor children.

191. This right necessarily includes the right to those things that enable him to fully exercise those rights.

192. One of those things that enable him to fully exercise those rights is information pertaining to his children.

193. This information necessarily includes the information pertaining to the children's physical and mental health via their medical records.

194. These rights are recognized and protected incident to the due process clause of the 14th Amendment to the United States Constitution.

195. The Commonwealth of Virginia may only burden these rights by demonstrating the existence of a compelling state interest and then only by the least restrictive means via a statute that is narrowly drawn so as to only to further that interest .

196. Such a compelling state interest concerning these rights will only exist if the Commonwealth of Virginia can show that the health or safety of a child is at risk.

197. Virginia Code §§20-124.2:1(A) exists, by its very nature and purpose, both in theory and in practice, to affect the aforementioned rights of Timothy M. Barrett to parent his children.

198. However, nothing in Virginia Code §20-124.6 requires a showing that an at-issue child's health or safety is at risk before the Commonwealth of Virginia may intervene and interfere with these rights.

199. Indeed, nothing in Virginia Code §20-124.6 concerns or promotes the health or safety of the at-issue children.

200. To the contrary, under Virginia Code §20-124.6 a trial court incident to a custody determination need only have "good cause" to deny this fundamental right.

201. "Good cause" is patently insufficient to survive the strict scrutiny analysis required when a state seeks to violate God-given, natural, fundamental and Constitutional rights.

202. Timothy M. Barrett has been denied, is being denied and will continue to be denied these rights pertaining to his children by the Commonwealth of Virginia because of the Virginia Code §20-124.6.

203. Therefore, we ask this Honorable Court to declare Virginia Code §20-124.6 unconstitutional and permanently enjoin its use for any reason whatsoever.

### Count 3B - Virginia Code §20-124.6 is Unconstitutionally Vague

204. The Plaintiffs incorporate by reference and re-allege the previous and following paragraphs as if fully reproduced herein.

205. Under Virginia law, "In matters concerning custody and visitation, the welfare and best interests of the child are the 'primary, paramount, and controlling considerations'." *Mullen v. Mullen*, 188 Va. 259 (1948).

206. However, this word "welfare" and phase "best interests of the child" are never defined by Virginia law.

207. Indeed, Virginia courts are "vested with broad discretion to make the decisions necessary to safeguard and promote the child's best interests, and its decision will not be set

aside unless plainly wrong or without evidence to support it." See *e.g., Farley v. Farley*, 9 Va. App. 326 (1990).

208.    This is true, even if in the exercise of this broad discretion, a trial court violates the God-given, natural, fundamental and Constitutional rights of a parent.

209.    However, Virginia law forbids an appellate court to ever re-determine the facts and insists that the appeal comes with the presumption that the law was correctly applied to the facts.

210.    There has never been a single reported case in which a trial court's decision regarding custody and visitation was reversed because it was "plainly wrong".

211.    There is nothing in Virginia law that evidences why withholding information pertaining to a child from the parent is in the child's best interests.

212.    This is especially true when, as in the case here, the parent spends regular time with his child that can extend into weeks.

213.    To the contrary, given all of the data elucidated from the social sciences in the last 35 years, if Virginia really cared about the best interests of the children it would repeal its statutes allowing for the dissolution of marriage, keeping families intact, not further alienate parent and child.

214.    This is especially true when, as here concerning the Defendant, one of the parents is more than willing to use the children as weapons against the other parent, intentionally alienating the other parent from the children, rewarding children who join her in her war against the other parent, and punishing the children who remain steadfast in their love for the other parent.

215.    There is nothing in Virginia law that evidences why Virginia Code §20-124.6 actually promotes what is "good" for a child.

216.    Indeed, nothing in Virginia Code §20-124.6 requires that the finding of "good cause" has anything to do with a child.

217.    To the contrary, the application of Virginia Code §20-124.6 in both theory and the practice of this case, could hurt the child.

218.    Under Virginia Code §20-124.6 and Judge Powell's October 4, 2012 custody order, should a situation arise where his children need medical attention during Timothy M. Barrett's visitation, he would be forbidden to hear what the health care providers have to say concerning the care of his child, rendering him impotent to make decisions concerning the health and welfare of the child, endangering the child on many levels.

219.    Indeed, Virginia Code §20-124.6 is contrary to the best interests of the child because they cause children to view their father with distrust because he is not allowed to know certain aspects of their lives.

220.    This distrust leads to all kinds of psychological problems in children that negatively affect them both immediately and for the rest of their lives.

221.    Be that as it may, there is no rational basis, let alone compelling basis, to say that Virginia Code §20-124.6 with its "good cause" standard promotes the child's best interests, either in-and-of-itself or as opposed to other factors the Virginia legislature did not adopt.

222.    Reading Virginia law as a whole makes it clear that a Virginia trial court in making a decision under Virginia Code §20-124.6 is allowed to do whatever it wants.

223. This explains why, in the diverse custody determinations in the cases between Timothy M. Barrett and the Defendant, eleven different judges have come up with different decisions concerning Timothy M. Barrett and his access to his children's records.

224. But more than all of this, it allows a trial court to impose its subjective notions of what are the best parenting practices or what makes a good parent on the litigants before it in choosing to exercise its power under Virginia Code §20-124.6.

225. But more than all of this, it allows a trial court to impose its subjective notions of the best parenting practices or what makes a good parent on the litigants before it.

226. Indeed, Judge Powell based her decision to deny Timothy M. Barrett access to his children's medical records because he used those records to demonstrate in court that the Defendant was abusing and neglecting her children because she thought he was litigating for custody too often.

227. This is patently absurd given that a) he has the right under Virginia law to petition the court for a change in the previous custody order when he deems it appropriate; b) Judge Powell agreed with him that it was appropriate given that she increased his visitation of his children; c) the court needs to know about the children's medical conditions and needs and whether they are being abused or neglected in making its custody decision; and d) for the court to purposefully make itself ignorant of such important factors in making its custody determination is clearly not in the children's best interests.

228. And a trial court is empowered to impose these subjective notions on parents without any expertise of any kind as to what makes the best parenting practices and/or without hearing any expert testimony as to these issues whatsoever.

229.    The bottom line is that Virginia law imposes on trial judges an impossible task, absurdly asking them to take a painfully few hours of testimony and make a decision about what is best for a child that will, for better of ill, affect that child for the rest of the child's life when that judge has no interest in the child, does not care for the child, and is not accountable for any harm that comes to a child from a poor decision, all without equipping a judge with the expertise to do this task.

230.    Thus, Virginia Code §20-124.6 does not clearly define how a trial court is to determine whether a parent has access to a child's records.

231.    Virginia Code §20-124.6 does not given persons of ordinary intelligence a reasonable opportunity to know what is and what is not in the child's best interests or even what is "good" so that he may act accordingly.

232.    Virginia Code §20-124.6 traps the well-meaning parent who desires to do what is best for his child into losing assess to his child's records by not providing a fair warning.

233.    Virginia Code §20-124.6 is without explicit standards for those who apply them.

234.    Virginia Code §20-124.6 allows arbitrary and discriminatory enforcement.

235.    Virginia Code §20-124.6 impermissibly delegates policy matters to judges for resolution on an *ad hoc* basis.

236.    Timothy M. Barrett has been denied, is being denied and will continue to be denied these rights pertaining to his children by the Commonwealth of Virginia because of the Virginia Code §20-124.6.

237. Therefore, we ask this Honorable Court to declare Virginia Code §20-124.6 unconstitutional and permanently enjoin its use for any reason whatsoever due to it being unconstitutional vague.

### Count 3C - Virginia Code §20-124.6 is Unconstitutionally Overbroad

238. The Plaintiffs incorporate by reference and re-allege the previous and following paragraphs as if fully reproduced herein.

239. Under Virginia Code §20-124.6, a parent can lose the ability to know and respond to what is going on in his children's lives (*i.e.*, to properly parent and rear them) for "good cause shown."

240. This is true even if the "good cause" is unrelated to any child before the court on a custody determination.

241. This means that a Virginia trial court can take away a parent's ability to properly parent and rear his children through seeking and receiving information based on a parent having exercised his right to freedom of speech under the 1st Amendment to the U.S. Constitution if it finds that what a parent says is not "good".

242. This means that a Virginia trial court can take away a parent's ability to properly parent and rear his children through seeking and receiving information based on a parent having exercised his right to freedom of the press under the 1st Amendment to the U.S. Constitution if it finds that what a parent writes is not "good".

243. This means that a Virginia trial court can take away a parent's ability to properly parent and rear his children through seeking and receiving information based on a parent having

exercised his right to freedom of religion under the 1st Amendment to the U.S. Constitution if it finds that what a parent believes of how he practices his faith is not "good".

244. This means that a Virginia trial court can take away a parent's ability to properly parent and rear his children through seeking and receiving information based on a parent having exercised his right to freely associate with whom he wills under the 1st Amendment to the U.S. Constitution if it finds that who a spends his time with is not "good".

255. This means that a Virginia trial court can take away a parent's ability to properly parent and rear his children through seeking and receiving information based on a parent having exercised his right to freedom to petition the government for a redress of grievances under the 1st Amendment to the U.S. Constitution if it finds that he takes legal actions that are not "good".

256. This means that a Virginia trial court can take away a parent's ability to properly parent and rear his children through seeking and receiving information based on a parent having exercised his right to keep and bear arms under the 2nd Amendment to the U.S. Constitution if it finds that a parent's firearm's ownership and/or use is not "good".

257. This means that a Virginia trial court can take away a parent's ability to properly parent and rear his children through seeking and receiving information based on a parent having exercised his right to call and examine witnesses under the 6th Amendment to the U.S. Constitution if it finds that who a parent has called to testify in court is not "good".

258. This means that a Virginia trial court can take away a parent's ability to properly parent and rear his children through seeking and receiving information based on a parent having exercised his right to substantive and procedural due process under the 5th and 14th

Amendments to the U.S. Constitution if it finds that the process insisted upon by a parent is not "good".

259. This means that a Virginia trial court can take away a parent's ability to properly parent and rear his children through seeking and receiving information without any regard to the fundamental right of parents to care, custody, companionship and control of their own children, recognized by the due process clause of the 14th Amendment to the U.S. Constitution if it finds that the exercise of such rights is not "good."

260. This means that a Virginia trial court can take away a parent's ability to properly parent and rear his children through seeking and receiving information without any regard to a parent's seeking equal protection under the equal protection clause of the 14th Amendment to the U.S. Constitution if it finds that the seeking of such a right is not "good."

261. In fact, a Virginia trial court can take away a parent's ability to properly parent and rear his children through seeking and receiving information if a parent exercises any God-given, natural, fundamental or Constitutional right if it finds that the exercise of such a right is not "good."

262. And this with no consideration of whether the violation of these rights is via the least restrictive means.

263. The parent's natural desire to maintain his relationship with his children at all costs is thus pitted against a parent's God-given natural, fundamental and Constitutional rights, having a chilling effect on a parent's exercise of those rights, lest he suffers the loss of the ability to parent and rear his child through the seeking and receiving information on that child.

264. In the custody cases between Timothy M. Barrett and the Defendant, the exercise of these very rights have been held against Timothy M. Barrett in denying to him the ability to control his children by Judge Powell holding the exercise of his rights against him in finding it "good" he be denied access to his children's records per Virginia Code §20-124.6.

265. This has put, is putting and will put Timothy M. Barrett in the position of choosing to forgo his God-given, natural, fundamental and/or constitutional rights rather than risk losing access to his children's information.

266. Therefore, we ask this Honorable Court to declare Virginia Code §20-124.6 unconstitutional and permanently enjoin its use for any reason whatsoever due to it being unconstitutionally overbroad.

### COUNT 4 – VIRGINIA CODE §§20-124 TO 20-124.6 ARE UNCONSTITUTIONAL

#### Count 4A - Virginia Code §§20-124 to 20-124.6 Violate Timothy M. Barrett's Right To The Equal Protection of the Laws So As Not to Be Discriminated Against on the Basis of Sex

267. The Plaintiffs incorporate by reference and re-allege the previous and following paragraphs as if fully reproduced herein.

268. In applying Virginia Code §§20-124 to 20-124.6 ("Child Custody Statutes"), Virginia Trial Courts routinely discriminate on the basis of sex in favor of granting custody of children to women over men.

269. In fact, mothers are awarded custody of their children in disproportionately greater numbers than are fathers in contested custody cases.

270. There is nothing in the Child Custody Statutes that prevents a trial court from discriminating on the basis of sex.

271. To the contrary, Virginia Code §20-124.2(B) authorizes a trial court to discriminate on the basis of sex "when appropriate".

272. Timothy M. Barrett has been, is being and will continue to a victim of this sexual discrimination.

273. Such sexual discrimination violates the Equal Protection Clause of the 14th Amendment to the U.S. Constitution, violating Timothy M. Barrett's right to be treated equally in the eyes of the law.

274. Therefore, we ask this Honorable Court to declare Virginia's Child Custody Statutes unconstitutional and permanently enjoin their use for any reason whatsoever due to their violating the Equal Protection Clause of the 14th Amendment.

### Count 4B - Virginia Code §§20-124 to 20-124.6 Violate Timothy M. Barrett's Right To The Equal Protection of the Laws So As Not to Be Discriminated Against as a Divorced Parent

275. The Plaintiffs incorporate by reference and re-allege the previous and following paragraphs as if fully reproduced herein.

276. The Child Custody Statutes do not apply to intact marriages.

277. The Child Custody Statutes only apply to parents who are separated, divorcing or divorced.

278. Under Virginia law, a father can find himself separated, divorcing, or divorced through no legal fault of his own.

279. Thus, a father in Virginia is faced with a whole series of legal barriers to his God-given, natural, fundamental and constitutional rights to his children through no legal fault on his own.

280. A father who has an intact marriage does not face these barriers.

281.    Timothy M. Barrett is a father who has been, is and will be faced with these legal barriers to his children through no legal fault of his own.

282.    By placing these burdens on one class of fathers but not on another class of fathers, though they are otherwise identical, Virginia's Child Custody Statutes violate the Equal Protection Clause of the 14th Amendment to the U.S. Constitution.

283.    Therefore, we ask this Honorable Court to declare Virginia's Child Custody Statutes unconstitutional and permanently enjoin their use for any reason whatsoever due to their violating the Equal Protection Clause of the 14th Amendment.

### Count 4C - Virginia Code §§20-124 to 20-124.6 Violate Timothy M. Barrett's Right To Privacy

284.    The Plaintiffs incorporate by reference and re-allege the previous and following paragraphs as if fully reproduced herein.

285.    As described herein, Virginia's Child Custody Statues invade fathers' right to privacy to make legally protected decisions without interference by the state on the basis of a decision the state does not approve.

286.    This right to privacy is guaranteed by the 4th Amendment and Due Process Clause of the 14th Amendment to the U.S. Constitution.

287.    Timothy M. Barrett is a father who has faced, is facing and will face this loss of his right to privacy concerning his own children.

288.    Therefore, we ask this Honorable Court to declare Virginia's Child Custody Statutes unconstitutional and permanently enjoin their use for any reason due to their violating the Constitutional right to privacy under the Due Process Clause of the 14th Amendment.

## PART 2

## COUNT 5 – *HABEAS CORPUS* RELIEF FATHER IS ENTITLED TO CUSTODY AS A MATTER OF LAW

289.    The Plaintiffs incorporate by reference and re-allege the previous and following paragraphs as if fully reproduced herein.

290.    If this Honorable Court strikes down Virginia Code §§20-124.1, 20-124.2 and 20-124.3 as unconstitutional and permanently enjoins their use in child custody determinations, Virginia will be without a legislative enactment as to child custody determinations.

291.    Under Virginia law, absent a valid legislative enactment, the Commonwealth of Virginia has adopted and applies the common law of England as her organic law. See Virginia Code §1-200.

292.    Under English common law, the courts were unwavering in their demand for paternal custody, finding fathers had a natural right to custody over mothers even when the father was imprisoned or the father was an alien citizen of a state at war with England. See *Ex Parte Skinner*, 9 Moore 278 (Ch. 1824) and *King v. De Manneville*, 5 East 221, 102 Eng. Rep. 1054 (1804).

293.    Under common law as interpreted by Virginia courts, fathers were likewise entitled to custody of their children as a matter of law. See *Carr v. Carr*, 22 Gratt. (63 Va.) 168 (1872) and *Latham v. Latham*, 30 Gratt. (71 Va.) 307 (1878).

294.    Timothy M. Barrett is the father of William A. Barrett and Katarina N. Barrett.

295.    William A. Barrett and Katarina N. Barrett are unlawfully in the custody of the Defendant due to a court order that is itself in violation of the U.S. Constitution and upon which is founded the child custody determination laws that are in violation of the U.S. Constitution.

296.     Therefore, applying the common law to the facts of this case mandate that Timothy M. Barrett be granted custody as the natural father of William A. Barrett and Katarina N. Barrett as a matter of law.

297.     Therefore, we ask this Honorable Court to enter an order immediately granting William A. Barrett and Katarina N. Barrett *habeas corpus* relief, commanding that the Defendant immediately turn them over to the physical custody of Timothy M. Barrett and that Timothy M. Barrett shall have full legal and physical custody of them until such time as a court of competent jurisdiction shall determine otherwise in keeping with the law.

## PART 3

## JUDGE POWELL'S OCTOBER 4, 2012 CUSTODY ORDER IS UNCONSTITUTIONAL

### COUNT 6 – JUDGE POWELL'S CUSTODY ORDER VIOLATES TIMOTHY M. BARRETT'S RIGHT TO SUBSTANTIVE DUE PROCESS GUARANTEED BY THE 14TH AMENDMENT TO THE U.S. CONSTITUTION

#### *Introduction*

298.     The Plaintiffs incorporate by reference and re-allege the previous and following paragraphs as if fully reproduced herein.

299.     The Due Process Clause of 14th Amendment to the U.S. Constitution guarantees that no state may violate its citizens' God-given, natural, fundamental and/or Constitutional rights.

300.     The Due Process Clause applies to acts of the states' judiciaries as much as it does to acts of the states' legislatures.

301.     The protections afforded by the Due Process Clause even applies to a states' authority to adjudicate all aspects of family law.  See *Wise v. Bravo*, 666 F.2d 1328 (10th Cir., 1981).

302. Therefore, any judgment that is rendered by any court that is violation of rights recognized by the U.S. Constitution is void for lack of jurisdiction. See *Johnson v. Zerbest,* 304 U.S. 458 (1938); *Smith v. O'Grady*, 312 U.S. 329 (1941); and *Townsend v. Burke*, 334 U.S. 736 (1948).

303. Such a violation that renders an order void makes said order unavailable for any purpose whatsoever.

304. This is true whether we are speaking of substantive due process rights or procedural due process rights.

305. It is a patent violation of the Due Process Clause of the 14th Amendment to the U.S. Constitution to punish a person for doing what the law plainly allows him to do, which is to say no state may punish an individual for exercising a protected statutory or constitutional right. See *U.S. v. Goodwin*, 457 U.S. 368 (1982).

306. Indeed, to punish an individual for the exercise of his rights, either directly or by drawing a negative inference about that person from that exercise is also contrary to Virginia law. See Virginia Code §8.01-223.1 and *Travis v. Finley*, 36 Va. App. 189 (2001).

### Count 6A - Judge Powell's Custody Order Violates
### Timothy M. Barrett's Due Process Right to Self-Representation

307. The Plaintiffs incorporate by reference and re-allege the previous and following paragraphs as if fully reproduced herein.

308. Virginia law recognizes that every litigant has the fundamental and inalienable right to appear in Virginia's courts of law and be heard on his own behalf. See Introduction to Part IV of the Rules of the Supreme Court of Virginia and *Bryce v. Gillespie,* 160 Va. 137, 144 (1933).

309.   Timothy M. Barrett exercised his right to self-representation during all phases of his child custody case before Judge Powell.

310.   Despite Timothy M. Barrett having and exercising his right to self-representation, Judge Powell did repeatedly hold it against Timothy M. Barrett that he chose to represent himself before her, drawing a negative inference about him, denying Timothy M. Barrett custody of his children and even "normal" visitation with them.

311.   Specifically, Judge Powell violated Timothy M. Barrett's right to due process by punishing him for exercising his right to self-representation as follows:

   A.   On Page 4 of Exhibit 2, Judge Powell draws a negative inference about Timothy M. Barrett's psychological functioning based upon his representation of himself at trial, the manner in which he conducted his examination of witnesses, and the order and timing of which he called his witnesses.

   B.   On Page 5 of Exhibit 2, Judge Powell drew a negative inference against Timothy M. Barrett's interaction with his children based on his representation of himself and his taking advantage of the discovery rules to obtain relevant information about the children's functioning in the Defendant's custody.

   C.   On Page 7 of Exhibit 2, Judge Powell drew a negative inference against Timothy M. Barrett based on his self-representation and desire to call the children to testify in keeping with Virginia law, civil procedure and rules of evidence.

   D.   Again on Page 7 of Exhibit 2, Judge Powell again draws a negative inference about Timothy M. Barrett's psychological functioning and its damage to his children based on his representation of himself at trial and the tactics he chose in that representation.

   E.   Again on Page 7 of Exhibit 2, Judge Powell again draws a negative inference about Timothy M. Barrett concerning his conduct toward his children based on his representation of himself, his tactics and his use of the methods of discovery in Virginia.

312.   These negative inferences were not based on and did not concern the manner or content of Timothy M. Barrett's testimony on the stand, which would have been permissible,

but rather all related solely to his representation of himself, the tactics he employed and his making use of the procedural and discovery tools available to him as his own representative.

313.    At no time did opposing counsel or the court *sua sponte* object to the tactics or discovery employed by Timothy M. Barrett in his self-representation, which is to say no one found them to be in violation of the rules governing such things.   This makes it doubly wrong to hold his exercise of Timothy M. Barrett's right to represent himself against him and to draw negative inferences about him based on the exercise of that right.

314.    Because Judge Powell's October 4, 2012 custody order violates the due process right of Timothy M. Barrett to representing himself, said order is unconstitutional and void for lack of jurisdiction.

315.    Therefore, we ask this Honorable Court to declare Judge Powell's October 4, 2012, custody order unconstitutional and void for lack of jurisdiction and permanently enjoin its use for any reason whatsoever.

### Count 6B - Judge Powell's Custody Order Violates
### Timothy M. Barrett's Due Process Right to Petition the Government

316.    The Plaintiffs incorporate by reference and re-allege the previous and following paragraphs as if fully reproduced herein.

317.    The 1st Amendment to the U.S. Constitution guarantees a litigant's right to petition the government for a redress of grievances.

318.    Furthermore, the Due Process Clause of the 14th Amendment to the U.S. Constitution bars a state from preventing its citizens the right to take advantage of the means of legal process it has proscribed in its laws.  See *Boddie v. Connecticut*, 401 U.S. 371 (1971).

319.   Under Virginia law, this due process specifically and expressly includes the right to seek custody of one's own children. See *Hepler v. Hepler*, 195 Va. 611 (1954):

> Code §20-108 gives either parent the right to seek a revision or alteration of a decree "concerning the care, custody and maintenance of the children" and to request from the court to make a new decree concerning the same, as the circumstances of the parents and the benefit of the children may require.

320.   Under Virginia law, an aggrieved litigant has the right of appeal any decision of a trial court to the Virginia Court of Appeals.

321.   Thus, it would be a violation of both the 1st and 14th Amendments to the U.S. Constitution for a trial court to punish Timothy M. Barrett for petitioning that court for custody of his children, either directly or by drawing a negative inference about that him based on that petition.

322.   Despite this clear Constitutional prohibition, Judge Powell in her October 4, 2012, custody order did repeatedly hold it against Timothy M. Barrett that he filed a petition seeking a modification of Judge Geisler's April 9, 2010, custody order in making her custody determination, denying Timothy M. Barrett custody of his children and even "normal" visitation with them.

323.   Specifically, Judge Powell violated Timothy M. Barrett's right to due process by punishing him for exercising his right to petition the government for a redress of grievances to seek custody of his children as follows:

A.   On page 5 of Exhibit 2, Judge Powell held the "seemingly continuous litigation" against Timothy M. Barrett.

B.   On page 7 of Exhibit 2, Judge Powell states her consideration of the "extensive litigation over custody and visitation of the children in the trial courts in Grayson County and the appellate courts."

C.    On page 7 of Exhibit 2, Judge Powell holds the litigation brought by Timothy M. Barrett against him, inferring from the bringing of that litigation that he has a serious psychopathology that is "damaging" to his children.

D.    On page 7 of Exhibit 2, Judge Powell again holds against Timothy M. Barrett his continued filing of motions to "pursue more time with the children and ultimately custody of them".

324.    What is most insidious about Judge's Powell holding Timothy M. Barrett's right to petition the court for custody of his children against him was that she, herself, found the petition well founded as a matter of law, ruling that it was in the children's best interests that Timothy M. Barrett time with his children increase.

325.    Judge Powell in essence ruled that it was a good thing that Timothy M. Barrett filed his litigation, but that she was going to hold it against him anyway to such a degree that his quest for custody and even more time with his children was thwarted.

326.    This has the effect of saying that no matter what is in one's children's best interests, never bring it to the attention of the court, for they will punish for it, which thwarts and turns on its head the very purpose of the modification case.

327.    Because Judge Powell's October 4, 2012 custody order violates the 1st and 14th Amendment rights of Timothy M. Barrett to petition the government for a redress of grievances, said order is unconstitutional and void for lack of jurisdiction.

328.    Therefore, we ask this Honorable Court to declare Judge Powell's October 4, 2012, custody order unconstitutional and void for lack of jurisdiction and permanently enjoin its use for any reason whatsoever.

***Count 6C - Judge Powell's Custody Order Violates***
***Timothy M. Barrett's Due Process Right to Call Witnesses – The Children***

329.    The Plaintiffs incorporate by reference and re-allege the previous and following paragraphs as if fully reproduced herein.

330.    The Due Process Clause of the 14th Amendment to the U.S. Constitution guarantees a litigant's right to call witnesses on his behalf in furtherance of his cause.

331.    Even Virginia law recognizes this same right. See *Sydnor Pump v. County School Board*, 182 Va. 156 (1943):

> It obviously lies at the foundation of justice that, in any forum where the rights of any person are to be judicially determined, he has the right to be present and to be heard through his own witnesses...

332.    This is especially true when it comes to the calling of children to testify in open court in child custody cases.    See Virginia Code §20-124.3(8) and *Hepler v. Hepler*, 195 Va. 611 (1954), which legislatively presupposes the validity of calling children to testify and which recognizes the right to do so, respectively.

333.    During the trial on the merits before Judge Powell, she ruled that Timothy M. Barrett would not be allowed to call the then minor children to testify, though he made it clear that he desired to do in keeping with his Constitutional right to do so.

334.    Such ruling was not based on any evidentiary consideration, for the children had relevant information to provide to the court as to the issue of their own custody.

335.    The relevance of the children's testimony is made clear by Judge Powell's reliance on their hearsay testimony throughout her order. See, for example, Pages 6 to 8 of Exhibit 2.

336.    This refusal to allow Timothy M. Barrett to call his children to testify was in violation of his right to due process to be heard through his own witnesses.

337.    But then, in further violation of his right to due process, Judge Powell used Timothy M.

Barrett's *desire* to call the children to testify against him, drawing negative inferences about

him for his wanting to exercise his Constitutional rights, denying Timothy M. Barrett custody of

his children and even "normal" visitation with them.

338.    Specifically, Judge Powell violated Timothy M. Barrett's right to due process by

punishing him for exercising his right to be heard through his own witness as follows:  On page

7 of Exhibit B, Judge Powell noted "the father continues to insist that the children testify at the

hearing", inferring from this insistence that Timothy M. Barrett has a serious psychopathology.

339.    Amazingly, in that same portion of the order, Judge Powell blames Timothy M. Barrett

for his minor daughter Erin E. Barrett testifying when she was called to testify *by the Defendant*

over the objection of Timothy M. Barrett.

340.    In other words, Timothy M. Barrett is even punished for the exercise of a right to call

Erin E. Barrett that he did not exercise.

341.    Because Judge Powell's October 4, 2012 custody order violates the 14th Amendment

rights of Timothy M. Barrett to call witness to be heard in his own cause, said order is

unconstitutional and void for lack of jurisdiction

342.    Therefore, we ask this Honorable Court to declare Judge Powell's October 4, 2012,

custody order unconstitutional and void for lack of jurisdiction and permanently enjoin its use

for any reason whatsoever.

### Count 6D - Judge Powell's Custody Order Violates
### Timothy M. Barrett's Due Process Right to Call Witnesses – Other Witnesses

343.    The Plaintiffs incorporate by reference and re-allege the previous and following

paragraphs as if fully reproduced herein.

344.     The Due Process Clause of the 14th Amendment to the U.S. Constitution guarantees a litigant's right to call witnesses on his behalf in furtherance of his cause.

345.     Even Virginia law recognizes this same right.  See *Sydnor Pump v. County School Board*, 182 Va. 156 (1943):

> It obviously lies at the foundation of justice that, in any forum where the rights of any person are to be judicially determined, he has the right to be present and to be heard through his own witnesses...

346.     Incident to the right to be heard through his own witnesses is Timothy M. Barrett's right to:

    A.     Call witnesses in the order that he believes best serve him in his cause of action.

    B.     Call witnesses no matter their distance from the courthouse.

    C.     Ask only those questions, be they few or many, he deems necessary in furtherance of position in his cause of action.

347.     In rendering her custody decision, Judge Powell did reference Timothy M. Barrett's exercise of his right call witness, the order in which he called them and the number of questions he asked them in support of her decision to deny Timothy M. Barrett custody of his children and even "normal" visitation with them.

348.     Specifically, Judge Powell violated Timothy M. Barrett's right to due process by denying him the right to call and examine witnesses as follows:

    A.     During the preliminary phase of the hearing, Judge Powell ruled that no evidence of facts arising prior to April 9, 2010 would be admitted into evidence.

    B.     Virginia Code §20-124.2(1) and (2) makes the mental health of the children and the Defendant a factor a trial court must consider in rendering its custody determination.

    C.     Rebecca Chapman was a mental health care professional for the Defendant, making her knowledge relevant to the proceedings before Judge Powell.

D.     Likewise, Laura Gillespie was a mental health care professional for both the Defendant and the children, making her knowledge relevant to the proceedings before Judge Powell.

E.     This is true no matter the distance these ladies had to travel to appear in Court.

F.     This distance between Grayson County and the City of Bristol is approximately 80 miles per www.MAPQUEST.com.

G.     A distance of 80 miles is not unduly burdensome, especially in a rural area like Southwest Virginia.

H.     Federal HIPPA laws would have precluded either Ms. Chapman or Ms. Gillespie from speaking to Timothy M. Barrett outside of the courthouse.

I.     In Virginia J&DR District Courts litigants do not have the right of discovery of witness' testimony by deposition.

J.     Because Timothy M. Barrett was unable to depose Ms. Chapman or even speak to her about her knowledge, he was unaware of whether the facts known to her as to the mental health of the Defendant arose before or after April 9, 2010.

K.     Thus, the only way to know the dates of the information possessed by Ms. Chapman was to call her to the stand and ask her.

L.     Opposing counsel moved Judge Powell to allow Ms. Chapman to testify out of order, introducing her to the Court.

M.     Timothy M. Barrett did not object to Ms. Chapman going out of order.

N.     Because Judge Powell already knew who Ms. Chapman was, the initial question that needed to be asked of her by Timothy M. Barrett was whether any of her knowledge arose after April 9, 2010.

O.     Given Judge Powell's order pertaining to the exclusion of evidence arising prior to April 9, 2010, when Ms. Chapman answered the initial question in the negative, there was nothing more to ask her that would have been admissible.

P.     For this reason, Timothy M. Barrett asked her only the one question.

L.     In addition, Judge Powell denied Timothy M. Barrett his requested three day trial, giving him only one day in which to present his case and demanding he leave time for the Defendant to make her case.

M.      As a mental health care professional for both the Defendant and the children, Ms. Gillespie has extensive knowledge as to the mental health of both, some before and after April 9, 2010.

N.      Unfortunately, the time it would take to fully flush out Ms. Gillespee's extensive knowledge would invade the time reserved for other aspects of Timothy M. Barrett's case and the Defendant's case.

O.      Thus, Timothy M. Barrett made a strategic decision to limit his examination of Ms. Gillespee to one incident where the Defendant had instructed Erin E. Barrett in what to do in furtherance of the Defendant's efforts to deny Timothy M. Barrett his visitation rights with Erin E. Barrett.

P.      Ms. Gillespee testified that the Defendant had instructed Erin to hide from her Father in case her Father came looking for her when the Defendant disobeyed Judge Geisler's order to provide Erin for visitation.

Q.      This clearly makes the Defendant's contempt of court and failure to act in keeping with the children's best interests as willful, which is entirely relevant under Virginia Code §20-124.3(6).

R.      It only took Timothy M. Barrett only a "few questions" to solicit this testimony from Ms. Gillespee.

S.      Despite these facts, on Page 4 of Exhibit 2, Judge Powell held it against Timothy M. Barrett that he called these witnesses, the distance they had to travel, the timing of his calling them, and the limited number of questions he asked them.

T.      She did this in the section of her custody determination that goes to the mental health of Timothy M. Barrett, which is to say she held the exercise of his right to call and examine witnesses in the manner and timing he choose to infer and confirm her own diagnosis that he was suffering from a serious psychopathology.

U.      Had Judge Powell not unlawfully limited Timothy M. Barrett's evidence and the amount of time he had to put on his case (see below), Timothy M. Barrett would have asked more questions of these witnesses, allowing them to be called in a more timely manner on a subsequent day, perhaps defeating Judge Powell's illogical inference that his excising his rights the way he did in keeping with her orders means he has a serious psychopathology.

349. Because Judge Powell's October 4, 2012 custody order violates the 14th Amendment rights of Timothy M. Barrett to call witness to be heard in his own cause, said order is unconstitutional and void for lack of jurisdiction.

350. Therefore, we ask this Honorable Court to declare Judge Powell's October 4, 2012, custody order unconstitutional and void for lack of jurisdiction and permanently enjoin its use for any reason whatsoever.

### Count 6E - Judge Powell's Custody Order Violates
### Timothy M. Barrett's Right to Subpoena Documents

351. The Plaintiffs incorporate by reference and re-allege the previous and following paragraphs as if fully reproduced herein.

352. The Due Process Clause of the 14th Amendment to the U.S. Constitution guarantees a litigant's right to subpoena documents in keeping with the state's rules of discovery.

353. Even Virginia law recognizes this same right with Virginia Code §§8.01-399 and Rules 4.9 (A) of the Rules of the Supreme Court of Virginia.

354. In rendering her custody decision, Judge Powell did repeatedly reference Timothy M. Barrett's exercise of his right subpoena documents in support of her decision to deny Timothy M. Barrett custody of his children and even "normal" visitation with them as well as deny him future access to his children's medical records.

355. Specifically, Judge Powell violated Timothy M. Barrett's right to due process by denying him the right to subpoena documents as follows:

    A.    On Page 5 of Exhibit 2, Judge Powell mentions Timothy M. Barrett "invading [the children's] privacy to discover information for seemingly continuous litigation".

    B.    On page 7 of Exhibit 2, Judge Powell mentions that Timothy M. Barrett "continues to file...subpoenas *duces tecum* for all medical records of the mother

and children, even as adults. He subpoenaed school records and the children's and mother's electronic communications. The court has concerns that the father cannot comprehend that such actions harm the children, adversely affect their relationship with him and may turn them against him."

C.     On page 9 of Exhibit 2, Judge Powell again mentions "the father subpoenaed the medical records of the children" in order to deny him further access to the children medical records.

D.     Children have no right of privacy as against their parents under Virginia law, and even if such a right existed under Virginia law, it must yield to the God-given, natural, fundamental and Constitution right of Timothy M. Barrett to the care, custody and control of his children.

E.     To the contrary, Virginia Code §20-124.6 expressly provides that it is the parents that have the right to determine what information on the children they will access, not the children.

F.     Even Judge Powell concedes the existence of the parents' rights in this regard on Page 8 of Exhibit 2. She ignores its obvious implications because it does not fit her desired conclusion.

G.     Indeed, Virginia law presupposes that it is right for parents to have access to the full panoply of information available on the other parent and children through the discovery process and to present this information to a trial court so the court knows as much as possible in rendering a custody decision as to the best interests of the children.

356.   Because Judge Powell's October 4, 2012 custody order violates the 14th Amendment rights of Timothy M. Barrett to subpoena documents, said order is unconstitutional and void for lack of jurisdiction.

357.   Therefore, we ask this Honorable Court to declare Judge Powell's October 4, 2012, custody order unconstitutional and void for lack of jurisdiction and permanently enjoin its use for any reason whatsoever.

   *Count 6F - Judge Powell's Custody Order Violates Timothy M. Barrett's Right to Confrontation*

358.    The Plaintiffs incorporate by reference and re-allege the previous and following paragraphs as if fully reproduced herein.

359.    The 6th Amendment and the Due Process Clause of the 14th Amendment to the U.S. Constitution guarantees Timothy M. Barrett the right to confront the evidence that will influence the outcome of his cause of action, including being granted the opportunity to hear said evidence, cross-examine the proponent of said evidence and to rebut said testimony.

360.    Even Virginia law recognizes this same right. See *Sydnor Pump v. County School Board*, 182 Va. 156 (1943):

> It obviously lies at the foundation of justice that, in any forum where the rights of any person are to be judicially determined, he has a right to be present....and to hear the testimony of his adversary's witnesses, to cross-examine them, and rebut their testimony. Any trial which excludes him, and tries his case in his absence, is but a mock trial, and should be set aside.

361.    See also Virginia Code §8.01-401(A), "A party called to testify for another, having an adverse interest, may be examined by such other party according to the rules applicable to cross-examination."

362.    In rendering her custody decision, Judge Powell repeatedly referenced and based her decision on evidence that Timothy M. Barrett was never allowed to confront, denying Timothy M. Barrett custody and even "normal" visitation of his children.

363.    Specifically, Judge Powell violated Timothy M. Barrett's right to due process by denying him the opportunity to confront adversarial evidence as follows:

   A.    On pages 3, 7 and 9 of Exhibit 2, Judge Powell states that she supposedly reviewed and relied on the files from the prior custody cases before Judges Campbell and Geisler in rendering her custody decision.

        I.    She did this though these documents were never put into evidence by either party.

II.    She did this despite Timothy M. Barrett being denied the opportunity to hear the content of these documents, cross-examine the proponent of these documents and to rebut their contents.

III.   In fact, the first time Timothy M. Barrett knew that these documents were in play as far as Judge Powell's custody decision is concerned was when he read Judge Powell's order after it had been entered.

VI.    She did this despite the fact that these documents came into existence before April 9, 2010, in violation of her own order as to the admissibility of evidence.

B.    On pages 6-8 of Exhibit 2, Judge Powell relies on the testimony of Emily G. Barrett, William A. Barrett and Katarina N. Barrett in rendering her custody decision.

I.    She did this though none of these children testified before her.

II.    She did this despite Timothy M. Barrett being denied the opportunity to hear their testimony, cross-examine them and to rebut that testimony.

C.    On Page 4 of Exhibit 2, Judge Powell relies upon the supposed actions of a health care professional that were made necessary to treat a particular ailment of one of the children.

I.    She did this though no health care professional was called by either party to testify about the child having any physical condition, let alone the appropriate treatment for that condition and that the medication the child was on was for that condition.

II.    She did this despite Timothy M. Barrett being denied the opportunity to hear the testimony of, cross-examine and to rebut that health care professional.

D.    Likewise on Page 4 of Exhibit 2, Judge Powell makes reference to a "standard" medical treatment for a particular ailment of one of the children.

I.    She did this though no health care professional was called by either party to testify, let alone about what the "standard" treatment for any ailment is.

II.     She did this despite Timothy M. Barrett being denied the opportunity to hear the testimony of, cross-examine and rebut that health care professional.

III.    In fact, the first time Timothy M. Barrett heard of this "standard" medical treatment was in play as far as Judge Powell's custody decision was concerned was when he read Judge Powell's order after it had been entered.

E.    Likewise, on Page 7 of Exhibit 2, Judge Powell makes reference to Jonathan H. Barrett's attitude toward his Father.

I.    She did this though Jonathan H. Barrett never testified before Judge Powell.

II.    She did this despite Timothy M. Barrett being denied the opportunity hear his testimony, cross-examine him and to rebut that testimony.

F.    Likewise, on Pages 7 and 9 of Exhibit 2, Judge Powell makes reference to the "harm" that may come to the children should Timothy M. Barrett continue to subpoena the children's medical records.

I.    She did this though no health care professional was called by either party to testify, let alone about what any "harm" the legal process could cause the children.

II.    She did this despite Timothy M. Barrett being denied the opportunity to hear the testimony of, cross-examine and rebut that health care professional.

III.    In fact, the first time Timothy M. Barrett heard of this "harm" was in play as far as Judge Powell's custody decision was concerned was when he read Judge Powell's order after it had been entered.

G.    Likewise, on Page 4 of Exhibit 2, Judge Powell makes reference to the diagnosis she makes as to Timothy M. Barrett's psychological functioning based on his trial tactics and manner of questioning witnesses.

I.    She did this though no health care professional was called by either party to testify, let alone about the relatedness of Timothy M. Barrett's trial tactics and manner of questioning witnesses to any psychopathology.

        II.      She did this despite Timothy M. Barrett being denied the opportunity to hear the testimony of, cross-examine and rebut that health care professional.

        III.     In fact, the first time Timothy M. Barrett heard of this supposed psychopathology was in play as far as Judge Powell's custody decision was concerned was when he read Judge Powell's order after it had been entered.

364.    Because Judge Powell's October 4, 2012 custody order violates the 14th Amendment rights of Timothy M. Barrett to confront the evidence that will be used against him in determining the custody of his children, said order is unconstitutional and void for lack of jurisdiction.

365.    Therefore, we ask this Honorable Court to declare Judge Powell's October 4, 2012, custody order unconstitutional and void for lack of jurisdiction and permanently enjoin its use for any reason whatsoever.

### Count 6G - Judge Powell's Custody Order Violates Timothy M. Barrett's Right to Cross-Examine His Opponent's Witnesses

366.    The Plaintiffs incorporate by reference and re-allege the previous and following paragraphs as if fully reproduced herein.

367.    The Due Process Clause of the 14th Amendment to the U.S. Constitution guarantees Timothy M. Barrett the right to confront the evidence that will influence the outcome of his cause of action, including being granted the opportunity to hear said evidence, cross-examine the proponent of said evidence and to rebut said testimony. See *Food Lion, Inc. v. Cox*, 257 Va. 448 (1980).

368.    Under Virginia law, this right of cross-examination grants to the cross-examiner great liberty in conducting the examination, which may not be arbitrarily limited by any trial court,

for the right of cross-examination is invaluable in the search for truth. See *Norfolk So. R. Co. v. Fentress*, 127 Va. 87 (1920) and *Campbell v. Campbell*, 49 Va. App. 498 (2007).

369.    In rendering her custody decision, Judge Powell did reference Timothy M. Barrett's exercise of his right to cross-examine the Defendant's witnesses and the manner in which he conducted that examination, holding the exercise and manner of that cross-examination against him, drawing a negative inference concerning his suffering a serious phytopathology, in support of her decision to deny Timothy M. Barrett custody of his children and even "normal" visitation with them.

370.    Specifically, Judge Powell violated Timothy M. Barrett's right to due process by denying him the right to cross-examine his adversary's witnesses as follows:

A.    During her case-in-chief, the Defendant called herself and Erin E. Barrett to testify.

B.    Both of these witnesses were hostile witnesses. Indeed, on page 7 of Exhibit 2, Judge Powell summarizes Erin's testimony as "hate" for her father and desire for no contact.

C.    In the usual course, Timothy M. Barrett exercised his right to cross-examine the Defendant and Erin Barrett.

D.    Part of art of effective cross-examining of hostile witnesses is to exercise maximal control over them with one's questions and tone of voice.

E.    Because this case was in Juvenile Court where litigants have no opportunity to depose potential witnesses, Timothy M. Barrett had no idea what Erin E. Barrett would say under cross-examination.

F.    In addition, Timothy M. Barrett was concerned about how a heavy-handed cross-examination of own his child would appear.

G.    In addition, Timothy M. Barrett had introduced a three inch binder that was full of Erin E. Barrett's postings to social media, which by her own hand, contained everything to which he needed her to testify without the concern of her putting her own spin on it on the stand.

H.    Therefore, in cross-examining Erin E. Barrett, Timothy M. Barrett adopted a very soft tone and asked only three questions of Erin concerning her having lied about her age on an age-restricted website, which had the obvious goal of establishing in the mind of Judge Powell that Erin is willing to abandon truth telling to get her way, calling into doubt any testimony she offered as to her father as well as the ability of the mother to instill moral character in her children.

I.    Nevertheless, on Page 4 of Exhibit 2, Judge Powell makes reference to not only the fact that Timothy M. Barrett cross-examined the Defendant and Erin Barrett, but the manner in which he did so.

J.    Likewise, in the same sentence, Judge Powell also makes reference to "other witnesses" that Timothy M. Barrett examined in such a manner in which was not approved of by Judge Powell. Because they are not named, we cannot know if Judge Powell punished Timothy M. Barrett for exercising his right to examine or cross-examine these witnesses. Either way, Judge Powell violated the rights of Timothy M. Barrett.

K.    At no point during said trial did opposing counsel or Judge Powell *sua sponte* object to the matter in which Timothy M. Barrett cross-examined any witness.

371.    Because Judge Powell's October 4, 2012 custody order violates the 14th Amendment rights of Timothy M. Barrett to cross-examine his adversary's evidence in determining the custody of his children, said order is unconstitutional and void for lack of jurisdiction.

372.    Therefore, we ask this Honorable Court to declare Judge Powell's October 4, 2012, custody order unconstitutional and void for lack of jurisdiction and permanently enjoin its use for any reason whatsoever.

### Count 6H - Judge Powell's Custody Order Violates Timothy M. Barrett's Right to Control His Children without Governmental Interference.

373.    The Plaintiffs incorporate by reference and re-allege the previous and following paragraphs as if fully reproduced herein.

374. The Due Process Clause of the 14th Amendment to the U.S. Constitution guarantees Timothy M. Barrett the right to care for, custody to and control of his children. See *Troxel v. Granville*, 530 U.S. 57 (2000).

375. This right includes the right of parents to direct their children's upbringing and control their children's education, and to nurture and direct their children's destiny without government interference. See *Lehr v. Robertson*, 462 U.S. 248 (1983); *Schleifer v. City of Charlottesville*, 159 F.3d 843 (4th Cir. 1998); and *Williams v. Williams*, 256 Va. 19 (1998).

376. Concomitant with this right is the right to choose, which shields a parent from undue government influence as he makes decisions involving his children. See *Cleveland Board of Education v. Lafleur*, 414 U.S. 632 (1974); *Washington v. Glucksberg*, 521 U.S. 702 (1997); and *Griswold v. Connecticut,* 381 U.S. 479 (1965).

377. In rendering her custody decision, Judge Powell did reference Timothy M. Barrett's exercise of his right to care for and custody and control of his children and the manner in which he directed their upbringing in a way she did not approve, holding it against him in support of her decision to deny Timothy M. Barrett custody of his children and even "normal" visitation with them, enabling the government to interfere in the future exercise of that right.

378. Specifically, Judge Powell violated Timothy M. Barrett's right to due process by denying him the right to care for and custody and control of his children and to direct their upbringing as follows:

    A.    On Page 4 of Exhibit 2, Judge Powell mentions Timothy M. Barrett's unwillingness to provide his children birth control under given circumstances.

    B.    On Page 8 of Exhibit 2, Judge Powell expresses sadness that Timothy M. Barrett used his visitation time to administer reading comprehension and mathematics

tests to Katarina N. Barrett, expressing her disapproval by saying that "children are not robots to be programmed and tested."

C.     According to the Constitution, it is for Timothy M. Barrett, not Judge Powell, to determine how his children will be reared and their destiny affected.

379.   Because Judge Powell's October 4, 2012 custody order violates the 14th Amendment rights of Timothy M. Barrett to care for and have custody and control of his children, said order is unconstitutional and void for lack of jurisdiction.

380.   Therefore, we ask this Honorable Court to declare Judge Powell's October 4, 2012, custody order unconstitutional and void for lack of jurisdiction and permanently enjoin its use for any reason whatsoever.

### Count 6I - Judge Powell's Custody Order Violates Timothy M. Barrett's 1st Amendment Right to Freedom of Religion

381.   The Plaintiffs incorporate by reference and re-allege the previous and following paragraphs as if fully reproduced herein.

382.   The 1st Amendment to the U.S. Constitution guarantees to Timothy M. Barrett the free exercise of religion.

383.   Thus, it would be a violation of both the 1st and 14th Amendments to the U.S. Constitution for a trial court to punish Timothy M. Barrett for exercising his religion in making its custody decision.

384.   Despite this clear Constitutional prohibition, Judge Powell in her October 4, 2012, custody order did repeatedly hold Timothy M. Barrett's religious convictions against him in rendering its custody decision, denying him custody and even limiting his time with his children.

385.   Specifically, Judge Powell violated Timothy M. Barrett's right to freedom of religion by punishing him for his holding beliefs of which Judge Powell did not approve as follows:

A.    On Page 6 of Exhibit 2, Judge Powell speaks of Timothy M. Barrett's religious beliefs in a negative light concerning Emily G. Barrett:

        I.    Judge Powell focuses on Emily's differences with her father over the role of women in society.

        II.    Judge Powell mentions Timothy M. Barrett's supposed hypocrisy in saying women should work at home while his wife works outside the home.

        III.    Judge Powell indicates that Emily does not wish to have her father impose his views on her.

        IV.    Judge Powell singles out "Emily's particular exception to her father's rigid rules regarding his faith".

        V.    Judge Powell notes Emily's desire to attend her mother's church.

B.    The entire discussion as to Emily's preferences by Judge Powell concerned Timothy M. Barrett's religious views.

C.    On Page 6 of Exhibit 2, Judge Powell again speaks of Timothy M. Barrett's religious faith in a negative light by pointing out William A. Barrett's disagreement with his father over matter of gender roles and religion and points out that William wants to live with the Defendant so he can develop and express his own views about faith.

D.    On Page 8 of Exhibit 2, Judge Powell expressed her "sadness" over the fact that Timothy M. Barrett spends part of his time evaluating Katarina N. Barrett's academic prowess, which testimony showed was based on his religious belief as to excellence in all human endeavors.

E.    What is most disappointing is that Judge Powell completely ignored all of the evidence that would have painted Timothy M. Barrett's religious convictions in a positive light, including but not limited to his devotion to his children and his not imposing his views on his children, but instead teaching them through rigorous polemics.

386.    Because Judge Powell's October 4, 2012 custody order violates the 1st and 14th Amendment rights of Timothy M. Barrett to freedom of religion, said order is unconstitutional and void for lack of jurisdiction.

387.  Therefore, we ask this Honorable Court to declare Judge Powell's October 4, 2012, custody order unconstitutional and void for lack of jurisdiction and permanently enjoin its use for any reason whatsoever.

### Count 6J - Judge Powell's Custody Order Violates
### Timothy M. Barrett's 1st Amendment Right to Freedom of Speech

388.  The Plaintiffs incorporate by reference and re-allege the previous and following paragraphs as if fully reproduced herein.

389.  The 1st Amendment to the U.S. Constitution guarantees to Timothy M. Barrett the right to freedom of speech, a right made applicable to the states by the 14th Amendment.

390.  This right includes, but is not limited to, the speaking of one's mind, the receiving and answering of questions and making inquiry of the world around them.

391.  Thus, it would be a violation of both the 1st and 14th Amendments to the U.S. Constitution for a trial court to punish Timothy M. Barrett for exercising his freedom of speech in making its custody decision.

392.  Despite this clear Constitutional prohibition, Judge Powell in her October 4, 2012, custody order did repeatedly hold the content of Timothy M. Barrett's speech against him in rendering its custody decision, denying Timothy M. Barrett custody of his children and even "normal" visitation with them.

393.  Specifically, Judge Powell violated Timothy M. Barrett's right to freedom of speech by punishing him for speech of which Judge Powell did not approve as follows:

    A.    On Page 4 of Exhibit 2, Judge Powell condemns Timothy M. Barrett and draws a negative inference about his psychological functioning based on the appropriate questions he asked the Defendant and other witnesses during an adversarial hearing to decide the child custody matter before her.

B.   On Page 4 of Exhibit 2, Judge Powell condemns Timothy M. Barrett for what he says to his children, which he denies ever saying to his children.

C.   On Page 5 of Exhibit 2, Judge Powell condemns Timothy M. Barrett for his statement to the Guardian Ad Litem that he alone has the ability and the means to assess and provide for the needs of the children, that he cannot conceive of any reason to continue to allow the children to be in the sole custody of the Defendant to whom he attributes no redeeming qualities and no parenting skills, and this without regard to the truth or falsity of the statement.

D.   On Page 8 of Exhibit 2, Judge Powell condemned Timothy M. Barrett for making inquiry into Katarina N. Barrett's academic progress.

394.   Because Judge Powell's October 4, 2012 custody order violates the 1st and 14th Amendment rights of Timothy M. Barrett to freedom of speech, said order is unconstitutional and void for lack of jurisdiction.

395.   Therefore, we ask this Honorable Court to declare Judge Powell's October 4, 2012, custody order unconstitutional and void for lack of jurisdiction and permanently enjoin its use for any reason whatsoever.

## COUNT 7 – JUDGE POWELL'S CUSTODY ORDER VIOLATES TIMOTHY M. BARRETT'S RIGHT TO PROCEDURAL DUE PROCESS GUARANTEED BY THE 14TH AMENDMENT TO THE U.S. CONSTITUTION

### Introduction

396.   The Plaintiffs incorporate by reference and re-allege the previous and following paragraphs as if fully reproduced herein.

397.   "The phrase 'due process of law' is synonymous with phrase 'according to the law of the land'." See *Fleenor v. Hammond*, 116 F.2d 982 (6th Cir. 1941).

398.    The Due Process Clause of 14th Amendment to the U.S. Constitution guarantees that no state may impose burdens on a person except in accordance with the valid laws of the land. See *Giaccio v. State of Pa.,* 382 U.S. 399 (1966).

400.    Thus, "when the sovereign has established rules to govern its own conduct, it will be held to self-imposed limitation on its own authority, departure from which denies procedural due process of law." *Bluth v. Laird*, 435 F.2d 1065, 1071 (4th Cir. 1970).

401.    In other words, a "state's failure to abide by its own laws that results in deprivation of liberty constitutes violation of the due process clause of Fourteenth Amendment." *Thompson v. Missouri Bd. of Parole*, 929 F.2d 396, 306 (8th Cir. 1991) (citing *Hicks v. Oklahoma*, 447 U.S. 343, 346 (1979)).

402.    Timothy M. Barrett has a liberty interest in the care, custody and control of his children, a liberty interest guaranteed by the 14th Amendment to the U.S. Constitution.

403.    The Due Process Clause applies to acts of the states' judiciaries as much as it does to acts of the states' legislatures.

404.    In Virginia, a trial court's power to act in child custody matters is purely statutory.  See *Willis v. Gamez,* 20 Va. App. 75 (1995).

405.    Under Virginia law in child custody cases, the demands of due process require trial courts to strictly comply with the statutory scheme mandated in Virginia law, even if deviating from that scheme is perceived to be in the children's best interests.  See *Id.; Rader v. Montgomery County,* 5 Va. App. 523, 528, (1988).