the evidence in that Timothy M. Barrett, during his direct testimony, offered limited praise of the Defendant for the job she has done under the difficult circumstances that confront her.

XXII.   On Page 17 of Exhibit 3, Judge Geisler found that the Defendant had not committed any acts of family abuse as defined in Code §16.1-228. However, the evidence was uncontradicted that the Defendant had been convicted of violating Code §16.1-228 by abusing Alexander. Furthermore, Dr. Beres testified of an incident in her office in which the Defendant kicked Alexander while in a fit of rage that Dr. Beres thought was abusive. And even Jonathan speaks of the Defendant scratching him and physically hurting him and his siblings.

XXIII.  On Page 17 of Exhibit 3, Judge Geisler implies that the incident where Timothy M. Barrett "tried to forcefully drag Jonathan out of a van to exercise visitation. . . could. . . be deemed a family abuse". No, it could not, for this incident happened prior to the closing of the evidence in the first custody case and Judge Campbell did not find it abusive. It would appear that the Trial Court wishes to saddle the Father with Judge Campbell's findings, except where those finding support his position.

XXIV.  On Page 18 of Exhibit 3, Judge Geisler finds Timothy M. Barrett "damaging" to his children because he exercises his constitutional rights and because Judge Geisler ignored the evidence as to Timothy M. Barrett's true state of mental health. The uncontradicted testimony was that the Father was not damaging to his children. Indeed, even the Defendant tacitly admitted that Timothy M. Barrett is not damaging when she insists or allows the Father to spend more time with the children than ordered by the court. When these abuses of discretion, these fictions, are removed one is left with no evidence whatsoever that shows that Timothy M. Barrett is anything but loving toward his children. In fact, even the Mother admitted, an admission that is binding on her, that Timothy M. Barrett would be viewed by any outsider as that of a "concerned, involved and loving father". How is that damaging?

XXV.   On Page 18 of Exhibit 3, Judge Geisler says that "switching the children between their parents has and continues to cause a great deal of stress to the children". There was no evidence that the transfer of the children at the beginning or at the end of visitation had any effect on them. Indeed, the uncontradicted testimony was the children are overjoyed when they arrive for visitation, but that they get increasingly upset as they get closer to the end of the visit and express that they do not wish to live with the Defendant. The Defendant agreed, saying only that the

children were unsettled after each visit without being allowed to state the cause of their being unsettled.

XXVI. On Page 16 of Exhibit 3, Judge Geisler finds that the Defendant "does adequately supervise the children's access and use of the Internet." But the Defendant testified that she does not supervise the children's access to and use of the Internet *at all*.

L.    Judge Geisler's custody order violated Timothy M. Barrett's due process right to not have the custody proceeding used to punish him for wrongs, be they real or imagined.   Specifically, even a cursory reading of Judge Geisler's April 9, 2010, custody order will show he was far more interested in punishing Timothy M. Barrett for the fact of the litigation and the tactics he employed during the litigation than in the purpose of the litigation, which was to determine the best interests of the children.  For example:

I.    On Page 14 of Exhibit 3, Judge Geisler complains of Timothy M. Barrett's continuous litigation.

II.    Indeed, on Page 14 of Exhibit 3, Judge Geisler speaks of Timothy M. Barrett's inquiries into the lives of his children as "cross-examination", which is a legal term of art inapplicable outside of the courtroom, but does reveal that the fact of the litigation and not its purpose was in the forefront of his mind.

III.    On Page 15 of Exhibit 3, Judge Geisler, despite admitting that Timothy M. Barrett has the right to call witness to give testimony favorable to him, holds it against him the that he supposedly subpoened the children to testify.

IV.    On Page 15 of Exhibit 3, Judge Geisler complains of Timothy M. Barrett's "three years [of] countless hearings".

V.    On Page 15 of Exhibit 3, Judge Geisler complains about Timothy M. Barrett's "combative nature" toward witnesses.

VI.    On Page 15 of Exhibit 3, Judge Geisler ignores the real needs of the children and finds that "the children need to be free from ongoing litigation".

VII.    On Page 16 of Exhibit 3, Judge Geisler uses Timothy M. Barrett's litigation to justify the Defendant's refusal to cooperate with him in matters concerning the children.

VIII.    On Page 17 of Exhibit 3, Judge Geisler admits to making his decision regarding the parent's due process rights as to the testimony of the children on the basis of "this Court's absolute desire to shield them from any ongoing litigation between the parents".

IX.    On Page 18 of Exhibit 3, Judge Geisler complains of the fact that Timothy M. Barrett's litigation "takes more time than any other matters presently pending on this Court's docket".

X.    On Page 18 of Exhibit 3, Judge Geisler makes mention of the need the children have for counseling in relation to the litigation.

563.    Because Judge Geisler's April 9, 2010, custody order violated Timothy M. Barrett's right to procedural due process, his custody determination violated the 14th Amendment to the U.S. Constitution, rendering it unconstitutional and void for lack of jurisdiction.

564.    Therefore, we ask this Honorable Court to declare Judge Geisler's April October 4, 2010, custody order unconstitutional and void for lack of jurisdiction and permanently enjoin its use for any reason whatsoever.

### Count 16 - Judge Geisler's Custody Order
### Violated Timothy M. Barrett's Right to Equal Protection

### Count 16A – Judge Geisler's Custody Order Violated Timothy M. Barrett's
### Right To Equal Protection As To The Standard Of What Is Best For The Children

565.    The Plaintiffs incorporate by reference and re-allege the previous and following paragraphs as if fully reproduced herein.

566.    Despite the clear Constitutional insistence on equal protection, Judge Geisler repeatedly held Timothy M. Barrett to a different and unequal standard than the Defendant in determining what custody arrangement is best for the children, resulting in him denying Timothy M. Barrett custody of his children and even "normal" visitation with them.

567. Specifically, Judge Geisler's April 9, 2010, custody order was based on a denial of equal protection in regard to the best interest standard of comparison:

A. In discussing the needs of the children, Judge Geisler spoke of the children's relationship with others offered by the Defendant, but ignored the children's relationships with others offered by Timothy M. Barrett. See Page 15 of Exhibit 3.

B. In discussing the role of each parent in the lives of the children, Judge Geisler focused on the Defendant's activities and successes in rearing five of the children, but ignored Timothy M. Barrett's activities and successes in rearing Alexander. In fact, though Timothy M. Barrett had actual and positive experience with Alexander E. Barrett, as found by Judge Geisler in his first opinion letter (Pages 1-8 of Exhibit 3), Judge Geisler ignored this experience in his third opinion letter to minimize it as if Timothy M. Barrett's parenting style was only theoretical. See Page 15-16 of Exhibit 3.

C. In discussing the active support of the children in their relationship with the other parent, Judge Geisler justified the Defendant's *actual refusal* to cooperate because of her fears about the litigation, but then dismissed Timothy M. Barrett's *actual support* on supposition and because of the litigation. In other words, the litigation was there to excuse the Defendant's conduct and condemn Timothy M. Barrett's. See Page 14 of Exhibit 3.

D. The same is true with the Defendant's abuse of the children. That abuse was to be ignored for custody purposes given the context of the "dynamics" between the parties, but Timothy M. Barrett's asking the children about that abuse was to be "rammed down his throat," the dynamics between the parties notwithstanding. See Pages 12-19 of Exhibit 3.

E. Concerning the parents' willingness and ability to maintain a close relationship with the children, Judge Geisler spoke of the Defendant's day-to-day interaction with the five children, but ignored Timothy M. Barrett's day-to-day interaction with Alexander E. Barrett. See Page 16 of Exhibit 3.

F. Likewise, Judge Geisler concentrated on Timothy M. Barrett's visitation with his five children, which was very active, but ignored the Defendant's visitation with Alexander E. Barrett, which the evidence showed was so distant, cold and filled with anger that it stopped altogether. See Page 16 of Exhibit 3.

G. Concerning the parents' ability to cooperate, Judge Geisler used the Defendant's *feelings* to discount and dismiss the Father's *actions*. See Page 17 of Exhibit 3.

H.      Timothy M. Barrett was condemned as "damaging" to his children for asking the children about the Defendant's abuse, and then punished for it by having his time with his children limited, but the Defendant's repeated abuse of the children (mental, emotional and physical) was dismissed without comment. In other words, Timothy M. Barrett *inquiring* about the abuse was far worse than the Defendant *inflicting* the abuse. See Pages 12-19 of Exhibit 3.

I.      Judge Geisler condemned Timothy M. Barrett for involving his children in the litigation, but had no problem with the Defendant doing the same.  See Pages 15 of Exhibit 3.  And this despite that Timothy M. Barrett's litigation was *about* the children, whereas the Defendant's litigation was *against* the children via CHINS petitions and criminal charges.

J.      Timothy M. Barrett was condemned by Judge Geisler for calling the children as witnesses to support his position, but the Defendant was not likewise condemned when she called Jonathan to testify in open court in the custody case and Jonathan, Alex and Erin to testify in open court in the assault case against Alexander E. Barrett. See Page 15 of Exhibit 3.

K.      Timothy M. Barrett was condemned for bringing the litigation in the first place, which he won, but the Defendant was given a pass when she filed a Motion to Hear Additional Evidence, which would have perpetuated the litigation and which the Court denied. See Pages 12-19 of Exhibit 3.

L.      The Defendant's criminal conduct in regard to her multiple-assaults against her own children was excused (Page 14 of Exhibit 3), but the Father's making a mere inquiry about those assaults was enough to deny him custody of his children. See Pages 14 and 17 of Exhibit 3.

M.      Timothy M. Barrett was condemned for merely questioning his children about the Defendant's abuse and neglect of them because said questioning supposedly caused the children stress, but the inflection of the abuse and neglect on the children by the Defendant was not even worthy of comment or consideration. And this was despite the fact that the mental health experts testified that it was this conduct on the part of the Defendant that not only caused the children stress but that it would have life-long negative consequences on the children if they were not removed from the Defendant's custody.

N.      Judge Geisler said that neither party was cooperative out of their hate for one another.  Putting aside the fact that this was contradicted by the Trial Court's own factual findings, this equal lack of cooperation was only held against the Father to limit his time with his children. See Page 18 of Exhibit 2.

O.   Judge Geisler was quick to condemn Timothy M. Barrett for all of his supposed failings, but was likewise quick to excuse the Defendant's known failings.   For example, Timothy M. Barrett exercising his constitutional rights meant he had a serious psychopathology, but the Defendant's diagnosed mental issues and their effect on the children were excused since she is a "single mother" in a "difficult situation." See Pages 14-15 of Exhibit 2.

568.   Because Judge Geisler's April 9, 2010, custody order was based on an unequal application of his own chosen basis of comparing the two parents in making his custody determination, his custody determination violated the 14th Amendment Equal Protection rights of Timothy M. Barrett, rendering said order unconstitutional and void for lack of jurisdiction.

569.   Therefore, we ask this Honorable Court to declare Judge Geisler's April 9, 2010, custody order unconstitutional and void for lack of jurisdiction and permanently enjoin its use for any reason whatsoever.

### Count 16B – Judge Geisler's Custody Order Violates Timothy M. Barrett's Right To Equal Protection As To The Admissibility Of Evidence

570.   The Plaintiffs incorporate by reference and re-allege the previous and following paragraphs as if fully reproduced herein.

571.   Despite the clear Constitutional insistence on equal protection, Judge Geisler repeatedly held Timothy M. Barrett to a different standard than the Defendant when it came to the allegations of fact he would and would not receive into evidence, basing his custody determination on the evidence the Defendant was allowed to introduce and Timothy M. Barrett was not, resulting in him denying Timothy M. Barrett custody of his children and even "normal" visitation with them.

572.   Specifically, Judge Geisler's April 9, 2010, custody order was based on a denial of equal protection in regard to the admissibility of evidence as follows:

A.  Judge Geisler ruled that the parties' minor children would not be allowed to testify during the hearing.

   I.   This ruling was strictly enforced against Timothy M. Barrett, despite his request that he be allowed to call all of his minor children to offer case-relevant testimony as to the relative positives and negatives of each parent as well as the other factors of Virginia Code §20-124.3.

   II.  However, prior to the custody hearing, Judge Geisler had no problem with the Defendant, who sat with the prosecution, calling Jonathan H. Barrett and Erin E. Barrett to testify in open court against Alexander who was charged with assault, though they were minors at the time.

   III. Likewise, during the custody hearing, Judge Geisler had no problem with the Defendant calling Jonathan H. Barrett to testify in open court during a contempt proceeding.

B.  Judge Geisler ruled that no evidence from prior to October 29, 2004, the date the evidence before Judge Campbell had closed his receipt of evidence, would be admissible into evidence in the custody modification case before him. This rule was strictly enforced against Timothy M. Barrett, but not so much against the Defendant.

   I.   In one instance, Timothy M. Barrett attempted to put into evidence the *de bene esse* deposition of Dr. Susan Garvey to establish that the Defendant lied to Dr. Ramsden about her mental health. Judge Geisler excluded the deposition since the information contained occurred before October 29, 2004.

   II.  But then, during the Defendant's cross-examination of Mrs. Kathy Barrett, Judge Geisler allowed the Defendant to ask about hearsay evidence about supposed court orders from before October 29, 2004, in an attempt to impeach Mrs. Barrett.

   III. Timothy M. Barrett was refused direct evidence to impeach while the Defendant was allowed hearsay evidence to impeach.

   IV.  In a second instance, on Page 13 of Exhibit 3, Judge Geisler freely admits to having "considered. . . the previous rulings of Judge Campbell, which were expressly based on evidence from prior to October 29, 2004.

   V.   Incorporated into the previous ruling of Judge Campbell was the report of Jonathan Venzie, the children's Guardian *Ad Litem* before him, a report which was based solely on evidence from prior to October 29, 2004.

C.   Judge Geisler himself violated his own ruling as to the admissibility of allegations of fact from on or before October 29, 2004, by relying on the custody order of Judge Campbell , which was based entirely on and contained nothing but facts, be they real or imagined, from before October 29, 2004.

D.   Judge Geisler again violated his own ruling as to the admissibility of allegations of fact from on or before October 29, 2004, by relying on the opinion letter of the Guardian *Ad Litem*, Jonathan Venzie, which was based entirely on and contained nothing but facts, be they real or imagined, from before October 29, 2004.

573.   Because Judge Geisler's April 9, 2010, custody order is based on an unequal application of his ruling as to the admissibility and usability of evidence in making his custody determination, his custody determination violates the 14th Amendment Equal Protection rights of Timothy M. Barrett, rendering said is unconstitutional and void for lack of jurisdiction.

574.   Therefore, we ask this Honorable Court to declare Judge Geisler's April 9, 2010, custody order unconstitutional and void for lack of jurisdiction and permanently enjoin its use for any reason whatsoever.

### Count 17 - Judge Geisler's Custody Order Violates Timothy M. Barrett's Rights by Relying on the Report of the Guardian *Ad Litem from Judge Campbell's Case*

575.   The Plaintiffs incorporate by reference and re-allege the previous and following paragraphs as if fully reproduced herein.

576.   Specifically, the Plaintiffs incorporate Part 5: Introduction and Part 5: Count 22, as if fully reproduced herein.

577.   In making his own child custody determination, Judge Geisler relied heavily on the report of Mr. Venzie from Judge Campbell's case, by relying on the Judge Campbell's custody order which found its justification in Mr. Venzie's report and by directly citing it on page 14 of Exhibit 3.

578. Because Judge Geisler's April 9, 2010, custody order is based on the report of the Guardian *Ad Litem*, which itself is and which contains many violations of the God-given, natural fundamental and Constitutional rights of Timothy M. Barrett, his custody determination violates the 14th Amendment Due Process rights of Timothy M. Barrett, rendering said order unconstitutional and void for lack of jurisdiction.

579. Therefore, we ask this Honorable Court to declare Judge Geisler's April 9, 2010, custody order unconstitutional and void for lack of jurisdiction and permanently enjoin its use for any reason whatsoever.

### Count 18 - Judge Geisler's Custody Order Violates Timothy M. Barrett's Right to Have His Case Adjudicated by a Judge without Bias or Prejudice and His Right to a Fair Trial

580. The Plaintiffs incorporate by reference and re-allege the previous and following paragraphs as if fully reproduced herein.

581. Despite this clear Constitutional insistence on due process and equal protection in the administration of justice aforesaid, Judge Geisler was clearly biased and/or prejudiced against Timothy M. Barrett or in favor of the Defendant, denying him an impartial judge who could administer justice fairly and resulting in a determination that denied him custody of his children and even "normal" visitation with them.

582. Specifically, Judge Geisler discriminated against Timothy M. Barrett and displayed his bias and prejudice as follows:

A. Judge Geisler focused on the fact of Timothy M. Barrett's litigation rather than the purpose of the litigation, expressing his desire to shield the children from the litigation rather than act in their best interests.

B. Judge Geisler utterly ignored the evidence of the benefits of Timothy M. Barrett as a person and his abilities to promote what is best for the children, even

expressly denying the contradicted evidence of the court-appointed experts that disagreed with his *a priori* conclusion. See Page 18 of Exhibit 3.

C. Likewise, Judge Geisler ignored the evidence of the harm done to the children by the Defendant.

D. More to the point, even those things that should have been viewed as negative in regards to the Defendant having custody were excused or dismissed because of the litigation.

E. Judge Geisler literally even made up evidence to hold against Timothy M. Barrett to support his *a priori*, biased and prejudiced conclusion. For example, all of the findings of Judge Geisler for which there was no evidence adduced above.

F. Judge Geisler repeatedly (and even expressly) ignored the rights of Timothy M. Barrett in adjudicating this matter whenever they stood in the way of his *a priori*, biased and prejudiced conclusion. See, for example, 15 of Exhibit 3.

G. Even the equal factors, which should have been viewed as a non-factor by Judge Geisler of *both parties* being unable to effectively communicate to resolve disputes concerning the children was radically used to discriminate against Timothy M. Barrett in his quest to have custody of his children and even deny him "normal" visitation.

H. Judge Geisler even employed a double standard, applying one standard to the Defendant and another to Timothy M. Barrett.

I. Rather than base his decision on the evidence in his case, including the contemporary circumstances, Judge Geisler essentially copied another Judge's opinion because they agreed with his *a priori*, biased and prejudiced conclusion, ignoring anything positive those opinions said about Timothy M. Barrett and anything negative those opinions said about the Defendant.

J. Whenever Judge Geisler was called upon to draw an inference, those inferences cut against Timothy M. Barrett.

K. Indeed, any evidence adduced by Timothy M. Barrett was merely treated as an allegation or a claim that was not subject to serious consideration merely because it was evidence adduced by Timothy M. Barrett.

M. Rather than continue to consider his legal and factual errors, Judge Geisler arbitrarily limited Timothy M. Barrett's ability to present them to him via additional Motions to Reconsider, saying if there were any errors in his opinion, "so be it". See Page 19 of Exhibit 3.

583. Indeed, while he had dismissed accusations by Timothy M. Barrett of his bias and prejudice during the trial, after it was over, when custody enforcement actions were filed with the court due to the Defendant's continuing violations of even Judge Geisler's April 9, 2010, custody order, Judge Geisler on his own initiative recused himself from any further involvement in Timothy M. Barrett's matters because of his own bias and prejudice.

584. A true and accurate copy of said letter of Judge Geisler tacitly admitting his own bias and prejudice is attached to this Complaint as Exhibit 10.

585. Because Judge Geisler's April 9, 2010, custody order is the result of his being prejudiced and biased against Timothy M. Barrett, depriving him of a fair trial, his custody determination violates the 14th Amendment Due Process and Equal Protection rights of Timothy M. Barrett, rendering said order unconstitutional and void for lack of jurisdiction.

586. Therefore, we ask this Honorable Court to declare Judge Geisler's April 9, 2010, custody order unconstitutional and void for lack of jurisdiction and permanently enjoin its use for any reason whatsoever.

### Count 19 - Judge Geisler's Custody Order Violates Timothy M. Barrett's Constitutional Rights Because It is Based on the Unconstitutional Order of Judge Campbell

587. The Plaintiffs incorporate by reference and re-allege the previous and following paragraphs as if fully reproduced herein.

588. Judge Geisler's April 9, 2010, custody order is expressly based on the March 9, 2006, custody order of Judge Campbell.

589. Judge Campbell's March 9, 2006, custody order is unconstitutional (See Part 5 Below).

590. Because Judge Campbell's March 9, 2006, custody order is unconstitutional and because Judge Geisler's April 9, 2010, custody order is based on Judge Campbell's March 9, 2006, custody order, Judge Geisler's April 9, 2010, custody order is unconstitutional.

591. Therefore, we ask this Honorable Court to declare Judge Campbell's April 9, 2010, custody order unconstitutional and void for lack of jurisdiction and permanently enjoin its use for any reason whatsoever.

## PART 5

## JUDGE CAMPBELL'S MARCH 9, 2006, CUSTODY ORDER IS UNCONSTITUTIONAL

### *Introduction*

592. Eight days shy of their eleventh wedding anniversary, the Defendant abandoned Timothy M. Barrett and their marital residence, absconding with his children without his knowledge or consent.

593. The Defendant then filed for divorce from Timothy M. Barrett with the matter being heard in the Virginia Beach Circuit Court.

594. The Defendant obtained her divorce in August of 2002 on "no fault" grounds, with the issues of equitable distribution being reserved and kept in Virginia Beach, the issue of spousal support being reserved and transferred to the Grayson County Circuit Court, and the issues pertaining to child custody and support being reserved and transferred to the Grayson County Juvenile Court.

595. As a result of the equitable distribution hearing in the Virginia Beach Circuit Court, the Defendant received none of the marital property and was ordered to pay the marital debt in her own name.

596.   This debt resulted in her filing bankruptcy.

597.   As a result of the spousal support hearing in the Grayso Circuit Court, the Defendant was denied any and all future spousal support.

598.   This lack of spousal support, as well as her own refusal to work despite having two college degrees, resulted in her going on public assistance.

599.   This greatly embittered the Defendant, resulting in her declaring war on Timothy M. Barrett, using the children as pawns in that war of revenge.

600.   The Defendant was unable to make Timothy M. Barrett financially pay for his wrongs, be they real or imagined, and so she decided to punish him by taking away from him his children.

601.   In reality, the Defendant never cared about the children, for she even admitted to the Court-appointed psychologists that they interfered with her life and that she wished she did not have some of them.

602.   Unfortunately for the children, her desire to wage war on Timothy M. Barrett was greater than her love and concern for her own children.

603.   Be that as it may, after conducting a full hearing on the matter, the Grayson County Juvenile Court, Judge Thompkins presiding, awarded Timothy M. Barrett joint legal and physical custody, with Timothy M. Barrett having visitation with his children every weekend.

604   Even Judge Thompkins failed to follow Virginia law, for he failed to provide the parties with the reasons for his decision, either in writing or orally from the bench.  Instead, he stated that what he did did not really matter because both parties were going to appeal his decision anyway.  See Virginia Code §20-124.3.

605.   Indeed, both parties did appeal with the matter being heard by Judge J. Colin Campbell.

606.    Because of Judge Campbell's busy docket, he was unable to provide the parties with back-to-back hearing days, resulting in the trial dragging on for years. Indeed, because months would go by between hearings, new facts would arise in the interim period to which needed to be testified, increasing the length of the trial.

607.    During the case, Judge Campbell appointed Jonathan Venzie, Esquire, as the children's Guardian *Ad Litem*.

608.    More than just the children's representative during the hearing, Judge Campbell tasked Mr. Venzie with doing a secret "independent investigation" and then reporting the results of that investigation as well as his own opinion as to what is best for the children to the Court, with the parties having the opportunity to dispute that report. See Page 2 of Exhibit 4.

609.    Mr. Venzie did indeed perform his secret investigation and did provide his "facts" and opinions to the Court, but the parties were never given the opportunity to confront that report.

610.    Timothy M. Barrett objected to the Court relying on Mr. Venzie's report with a Motion to Strike, but that motion was denied. See Page 2 of Exhibit 4.

611.    Indeed, Judge Campbell adopted Mr. Venzie's report wholesale, save as to one of the factors, incorporating that report into his own opinion. See Page 6 of Exhibit 4.

612.    Indeed, Judge Campbell essentially turned over his entire fact-finding function and determination as to what is best for the children to Mr. Venzie. See Exhibit 4.

613.    And he did this despite the fact that Mr. Venzie has no knowledge, skill, experience, training, or education on what is best for children, making him unqualified to offer an opinion. See Rule 2:702 of the Rules of the Supreme Court of Virginia.

614.    Likewise, Mr. Venzie is, of course, entitled to his own opinion as to the facts of this case, but what he is not allowed to do is share that opinion with the Court.    See *Trout v. Commonwealth*, 167 Va. 511 (1936).

**Count 19 - Judge Campbell's Custody Order Violates**
**Timothy M. Barrett's Right to Substantive Due Process**

615.    The Plaintiffs incorporate by reference and re-allege the previous and following paragraphs as if fully reproduced herein.

616.    Judge Campbell's March 9, 2006, custody order repeatedly violated the substantive due process rights guaranteed to Timothy M. Barrett under the 14th Amendment to the U.S. Constitution, resulting in Timothy M. Barrett being denied custody of his children and even "normal" visitation with them.

617.    Specifically, Judge Campbell's March 9, 2006, custody order violated Timothy M. Barrett's right to substantive due process as follows:

A.    Judge Campbell's custody order violated Timothy M. Barrett's right to self-representation by holding the fact that Timothy M. Barrett represented himself and his trial tactics against him in rendering his custody determination.    For example:

   i.    On Page 2 of Exhibit 5, Judge Campbell, via Mr. Venzie, states that litigation surrounds Timothy M. Barrett "like angry hornets", including Judge Campbell's court, whatever that means.

   ii.    On Page 3 of Exhibit 5, Judge Campbell, via Mr. Venzie, mentions Timothy M. Barrett's combativeness in litigation.

   iii.    On Page 3 of Exhibit 5, Judge Campbell, via Mr. Venzie, singles out Timothy M. Barrett's trial tactics.

   iv.    On Page 6 of Exhibit 5, Judge Campbell, via Mr. Venzie, condemns Timothy M. Barrett's use of the facts to his "strategic advantage" in trial.

v.  On Page 7 of Exhibit 5, Judge Cambell, via Mr. Venzie, condemns Timothy M. Barrett again for his trial tactics.

vi.  On Page 9 of Exhibit 5, Judge Cambell, via Mr. Venzie, condemns Timothy M. Barrett for his interaction with expert witnesses.

v.  In reviewing the order as a whole, Judge Campbell, via Mr. Venzie, was more concerned about the *fact* of the litigation than the *purpose* of the litigation.

B.  Judge Campbell's custody order violated Timothy M. Barrett's right to petition the government for a redress of grievances by holding the exercise of that right against him in rendering his custody decision.

    I.  See Subsection A above.

    II.  On Pages 6-7 of Exhibit 5, Judge Campbell, via Mr. Venzie, condemns Timothy M. Barrett for his appeal to the legal system to protect his children from the neglect and abuse of the Defendant.

C.  Judge Campbell's custody order violated Timothy M. Barrett's right to call witnesses and examine witnesses by holding the exercise of that right against him in rendering his custody determination. See Subsection A above.

D.  Judge Campbell's custody order violated Timothy M. Barrett's right to have his custody case determined by the evidence before the court and not based on Judge Campbell's individual and/or extra-judicial knowledge by basing his custody decision on the report of Mr. Venzie and the testimony of the children.

E.  Judge Campbell's custody order violated Timothy M. Barrett's right to confront and examine the evidence used in rendering his custody determination.

    I.  On Page 2 of Exhibit 4, Judge Campbell admits that Mr. Venzie conducted a secret investigation to which the parties were not privy and then provided the fruit of that investigation to the court.

    II.  As to the children as witnesses:

        a.  Timothy M. Barrett called each of his children to testify in open court in keeping with his right to do so recognized by the Supreme Court of Virginia.

        b.  Judge Campbell denied Timothy M. Barrett's request, rejecting the holding of the Supreme Court of Virginia in favor of the

authority granted to him by the inferior Court of Appeals of Virginia, hearing from the children *in camera* and outside of the presence of the parents.

c. Even so, Judge Campbell failed to apply a balancing test demanded by the Court of Appeals of Virginia to determine if this was the right option for this case and instead adopted a bright-line test that such would not be permitted.

d. Then, contrary to the common law of the Court of Appeals of Virginia, Judge Campbell failed to ask all of the questions that Timothy M. Barrett demanded he ask.

e. Then, contrary to the command of the Court of Appeals of Virginia, Judge Campbell refused to provide a copy of the transcript of the children's testimony to the parents.

f. Nevertheless, Judge Campbell factored the children's testimony into his custody determination.

III. In both instances, Timothy M. Barrett was denied the opportunity to hear, examine and overcome the evidence that was used against him in denying him custody of his children and even providing him "normal" visitation with them.

IV. Indeed, Timothy M. Barrett was never even informed as to the contents of Mr. Venzie's report or of the testimony of the children until after the close of the evidence.

F. Judge Campbell's custody order violates Timothy M. Barrett's right to freedom of religion by holding the exercise of that right against him in rendering his custody determination.

I. On Pages 2-3 of Exhibit 5, Judge Campbell, via Mr. Venzie, condemns Timothy M. Barrett's "theologically fixed view" and inquires as to how much the Court should allow him to expose his children to this view.

II. On Page 4 of Exhibit 5, Judge Campbell, via Mr. Venize, attacks Timothy M. Barrett's religiously motivated choice to exercise corporal punishment as a disciplinary tool in the rearing of his children.

III. On Page 5 of Exhibit 5, Judge Campbell, via Mr. Venzie, holds it against Timothy M. Barrett that he is "head of a patriarchal family", a clear reference to Timothy M. Barrett's conservative Christian traditions.

IV.     On Page 8 of Exhibit 5, Judge Campbell, via Mr. Venzie, bases his custody determination on the allegation that the Defendant will not, unlike Timothy M. Barrett, be "constantly fighting every aspect of 21st century society as well as every institution in that society", which again in a clear reference to Timothy M. Barrett's conservative (and in the court's mind, passé) Christian traditions.

V.      Mr. Venzie never interviewed Timothy M. Barrett about his religious convictions and that he was very wrong in his understanding of them. But once bigotry takes hold, it is very difficult to overcome.

G.    Judge Campbell, via Mr. Venzie, violated Timothy M. Barrett's (and the children's) right to freedom of speech by holding the exercise of that right against him in rendering his custody determination, expressly punishing him by drawing negative inference as to his behavior toward his children merely because of what he supposedly believes or how it is speculated he will act toward his children based on his speech.

I.      On Page 1 of Exhibit 5, Judge Campbell, via Mr. Venzie, condemns Timothy M. Barrett for what he will supposedly instruct his children concerning his religious views.

II.     On Page 3 of Exhibit 5, Judge Campbell, via Mr. Venize, condemns Timothy M. Barrett for his imagined "cross-examination" of his children.

III.    On Page 4 of Exhibit 5, Judge Campbell, via Mr. Venzie, again condemns Timothy M. Barrett for his questioning of the children about their life.

IV.     On Page 5 of Exhibit 5, Judge Campbell, via Mr. Venzie, condemns Timothy M. Barrett for "bribing" one of his children.

V.      On Pages 6-7 of Exhibit 5, Judge Campbell, via Mr. Venzie, condemns Timothy M. Barrett for the advice he gave to Alexander E. Barrett about the Defendant's abuse toward him, the same criminal abuse she was later found to have committed.

VI.     On Pages 9 of Exhibit 5, Judge Campbell, via Mr. Venzie, condemns Timothy M. Barrett for the way he speaks with "professional care givers".

H.    Judge Campbell's custody order violated Timothy M. Barrett's right to control his children without governmental interference by punishing him for exercising said same right.

I.  See Subsection G above.

II.  On Pages 1-2 of Exhibit 5, Judge Campbell, via Mr. Venzie, makes the inquiry not what is best for the children, but how much control and influence he will allow Timothy M. Barrett have over his children.

III.  On Page 5 of Exhibit 4, Judge Campbell finds it a strike against Timothy M. Barrett's mental state that "Mr. Barrett's relationship with the children does not allow for outside influences, so that their perception of the world will only be that allowed by Mr. Barrett."

IV.  Indeed, on Page 7 of Exhibit 4, Judge Campbell makes his custody decision based purely on his condemnation of Timothy M. Barrett for not rearing his children with the "village" and because Timothy M. Barrett supposedly believed that the children did not need or that he would not get them professional counseling when such choices belong to the parent.

I.  Judge Campbell's custody order violated Timothy M. Barrett's due process right to have his child custody case determined based on a *rational* comparison of the parents, which is to say Judge Campbell contradicted himself, which is the epitome of irrationality:

I.  On Page 5 of Exhibit 4, Judge Campbell said that he did not rely on the circumstances of Alexander since the conclusion of the evidence (though he mentions them?!?!?), but then on Page 6 of Exhibit 4, Judge Campbell relies on the Mr. Venzie's report for the "other factors", which includes the circumstances of Alexander since the conclusion of the evidence. See Page 9 of Exhibit 5.

II.  On Page 6 of Exhibit 4, Judge Campbell said that Timothy M. Barrett believes he would be a parent "solely responsible for the nurturing and education of the children. . ." and yet on Page 4 of Exhibit 4, Judge Campbell says that Kathy Barrett "would help him teach the children".

III.  Likewise, on Page 6 of Exhibit 4, Judge Campbell said that Timothy M. Barrett believes "the mother's role being that of a housekeeper and cook" and yet on Page 4 of Exhibit 4, Judge Campbell says that Kathy Barrett is "a grade school teacher", which is to say he does not believe "the mother's role being that of a housekeeper and cook".

618. Because Judge Campbell's March 9, 2006, custody order violated Timothy M. Barrett's right to substantive due process, his custody determination violated the 14th Amendment to the U.S. Constitution, rendering it unconstitutional and void for lack of jurisdiction.

619. Therefore, we ask this Honorable Court to declare Judge Campbell's March 9, 2006, custody order unconstitutional and void for lack of jurisdiction and permanently enjoin its use for any reason whatsoever.

### Count 20 - Judge Campbell's Custody Order Violates Timothy M. Barrett's Right to Procedural Due Process

620 The Plaintiffs incorporate by reference and re-allege the previous and following paragraphs as if fully reproduced herein.

621. Like Judge Powell and Judge Geisler after him, Judge Campbell's March 9, 2006 custody order repeatedly violated the procedural due process rights guaranteed to Timothy M. Barrett under the 14th Amendment to the U.S. Constitution by failing to follow Virginia law in reaching his custody determination, resulting in Timothy M. Barrett being denied custody of his children and even "normal" visitation with them.

622. Specifically, Judge Campbell's March 9, 2006, custody order violated Timothy M. Barrett's right to procedural due process as follows:

    A.    Judge Campbell's custody order violated Timothy M. Barrett's due process right to have his child custody case decided in keeping with the "overall aim" of such cases.

        I.    Judge Campbell never spoke of the children's potential, either as individuals or as members of society.

        II.    Judge Campbell never spoke of the opportunities offered by the parents to fulfill the children's potential.

III.    Judge Campbell ignored most of the evidence pertaining to the history of successes or failures of the parents, especially of the failures of the Defendant.

IV.     Judge Campbell offered no insight as to how the children would do in the future with either parent. This was despite the fact that the Court had copious amounts of evidence as to these very issues.

V.      Judge Campbell never discussed the physical needs of the children and which parent can better meet them.

VI.     Judge Campbell never discussed the children's need for intellectual and cultural growth and which parent can better meet that need.

VII.    Judge Campbell never discussed the children's need for moral development and which parent can better meet that need.

V.      Instead, Judge Campbell focused entirely on seeing that the children were raised by a village without discussing the effect of such a scheme or addressing that it had born no fruit in the 5 years between the parties' separation and the rendering of his decision.

VI      The recurring theme of Judge Campbell's custody order concerned not the children but Timothy M. Barrett's litigation and the tactics and strategies he employed in the litigation and how that was supposedly causing the children harm.

VII.    Indeed, much of the opinion of Judge Campbell's custody order was speculative as to how Timothy M. Barrett might treat his children when these cases are to be decided on facts.

VIII.   Judge Campbell never even considered that it was the Defendant's destruction of her family for her own selfish reasons, her utter lack of parenting skills, her inability to control her children or her abuse, neglect and abandonment of them that caused their problems, though he documents the mere existence of these problems on Page 2 of Exhibit 5.

IX.     Indeed, Judge Campbell ignored the expert testimony of Dr. David Zoll to this effect, expert testimony that also showed that Timothy M. Barrett had no deficiencies as a parent and that no reason existed to deny him custody of his children.

IX. Yet, this was totally contrary to the purpose of a custody case, resulting in Judge Campbell failing to follow Virginia law and denying Timothy M. Barrett his due process rights. See *Moyer,* 206 Va. at 902.

B. Judge Campbell's custody order violates Timothy M. Barrett's due process right to have his child custody case determined based on a rational *comparison* of the parents. For example:

I. Aside from Judge Campbell's comparing the parents' respective houses, merely implying that the Defendant's house is inferior to Timothy M. Barrett's house on Page 4 of Exhibit 4, there is not one word of comparison in which any superlative is used throughout the opinion.

II. More to the point, while Judge Campbell discussed many differences between the parties and what they offer the children, it never compared the two parents or provided reasons as to why what one parent offered the children was superior to what the other parent offered the children, aside from the supposed refusal of Timothy M. Barrett to employ the village and seek professional counseling for his children.

III. Not even when discussing the damage done to the children by the separation did Judge Campbell show any hint of having considered the Defendant's problems as those problems affected the children.

III. Judge Campbell also failed to discuss many of the differences between the parents, even though there was evidence introduced by them to distinguish each other.

IV. Furthermore, even when Judge Campbell made factual findings, he failed to attach any meaning to them or provide any insight whatsoever as to how these findings affected the children.

a. For example, Judge Campbell found that the Defendant "has serious problems exerting the necessary control over her six children and seems not to have earned or be able to earn the respect of her children. They seem to run over her or simply ignore her. While perhaps no one could thrive in the caldron of stress, combat, litigation, financial pressure and career building that she finds herself in and has placed herself in, the children will only remember that she was insulting to them, short tempered, exasperated and often absent." See Page 2 of Exhibit 5.

b. But Judge Campbell never stated how the Defendant's issues have affected the children. It is just assumed that the problems the

children have were not caused by the Defendant, but were caused by Timothy M. Barrett's litigation.

    c.    Never was it discussed how the children even knew about the litigation when Timothy M. Barrett made it clear that he did not discuss it with them. In other words, any problems with the children resulting from the litigation would be because the Defendant told them about it (in negative terms against the Court and their father, no doubt), not because Timothy M. Barrett exercised his right to bring the litigation and use the facts of the situation to win it.

VIII.    Even when Judge Campbell did compare the parents together in the same paragraph when discussing the same statutory factor, he was not comparing the parents to each other to determine "which parent is best qualified to provide the highest quality of care to the children." Rather, the Court was measuring the parents against an absolute, though subjective, standard and determining if they passed or failed. For example:

    a.    In dealing with the ability of the parents to cooperate and resolve disputes regarding the children, Judge Campbell determined that neither parent was cooperative. See Page 17 of Exhibit 3.

    b.    When dealing with the statutory factor concerning a parent's propensity to actively support the children's contact with the other parent, Judge Campbell again says that neither parent was willing to support the contact with the other parent. See Page 16 of Exhibit 3.

    c.    Judge Campbell quoted Judge Campbell as saying that neither parent "can be seen as ideal parents." See Page 18 of Exhibit 3.

    d.    Putting aside that no parent is an ideal parent, this finding was utterly irrelevant since the question needing to be answered by Judge Campbell was not "Are the parents cooperative or are they not" or "Are they willing or are they not" or "Are they ideal."

    e.    The question before Judge Campbell under Virginia law was "Which parent is *more* cooperative, *more* willing, *and closer* to ideal than the other parent when it comes to benefitting the children." See *Kane v. Szymczak*, 41 Va. App. 365 (2003).

f.     Had he done so, he would have considered the undisputed facts in evidence that showed Timothy M. Barrett cooperated with the Defendant any opportunity that presented itself and that was necessary, though his opportunity to do so was limited. For example, when Erin E. Barrett was injured on one visitation, Timothy M. Barrett sent his wife to find the Defendant to let her know and seek her input while he went with Erin to the hospital. When one of the children was hurt in the custody of the Defendant, she refused to even inform Timothy M. Barrett, let alone consult him despite the fact that he was somewhat knowledgeable about medicine because of his tenure as a personal injury lawyer.

g.     If Timothy M. Barrett has shown a propensity to cooperate with the Defendant, no matter how small, and the Defendant "has shown no propensity to support the children's contact with Timothy Barrett" (Page 6 of Exhibit 5), then Judge Campbell failing to make the comparison violated Timothy M. Barrett's right to procedural due process.

C.     Judge Campbell's custody order violated Timothy M. Barrett's due process right to not have his case decided on inadmissible hearsay in both the testimony of the children and the Guardian *Ad Litem*.

D.     Judge Campbell's custody order violated Timothy M. Barrett's due process right to have his child custody case determined based on proper consideration of the statutory factors.

I.     Virginia Code §20-124.3(1): Judge Campbell failed to give due consideration to the children's developmental needs. See Page 5 of Exhibit 4.

II.     Virginia Code §20-124.3(3): Judge Campbell failed to consider "the relationship existing between each parent and the children, giving due consideration to the positive involvement with the child's life, the ability to accurately assess and meet the emotional, intellectual and physical needs of the child[ren]." See Page 5 of Exhibit 3.

III.     Virginia Code §20-124.3(4): Judge Campbell failed to consider "the needs of the children" as far as the mother is concerned. See Page 5 of Exhibit 4 and Page 5-6 of Exhibit 5.

IV.     Virginia Code §20-124.3(4): Judge Campbell failed to consider the general needs of the children. See Page 5 of Exhibit 4 and Page 5-6 of Exhibit 5.

V. Virginia Code §20-124.3(5): Judge Campbell failed to consider the future role of each parent in the upbringing and care of the children.

VI. Virginia Code §20-124.3(6): Judge Campbell failed to consider which parent has the *greater* propensity to activity support the children's contact with the other parent as judged, among other considerations, whether a parent has unreasonably denied the other parent access to or visitation with the children. Indeed, Judge Campbell never addressed whether either parent has unreasonably denied the other parent contact with the children.

VII. Virginia Code §20-124.3(7a): Judge Campbell failed to consider the *relative* willingness and demonstrated the ability of each parent to maintain a close and continuing relationship with the children.

VIII. Virginia Code §20-124.3(7b): Judge Campbell failed to consider the relative ability of each parent to better cooperate and resolve disputes involving the children.

IX. Virginia Code §20-124.3(8): Judge Campbell failed to state the reasonable preference of the children if the Court deemed them mature enough to express such an opinion, aside from Jonathan.

X. Virginia Code §20-124.3(10), Judge Campbell failed to consider other factors, both as to their necessity and propriety and as to their impact on the question of custody. For example, Timothy M. Barrett introduced evidence that objectively showed York County Public Schools were far better than Bristol Public Schools, but this evidence was ignored.

E. Judge Campbell's custody order violated Timothy M. Barrett's due process right to have his child custody case determined based on all of the facts instead of by a judge who ignored all of the evidence that did not fit with his *a priori*, biased and prejudiced conclusion to deny Timothy M. Barrett custody and even "normal" visitation with his children.

F. Judge Campbell's custody order violated Timothy M. Barret's due process right not to have his case determined based on a myopic view of the facts instead of the broadest range of evidence. Specifically, Judge Campbell ignored the massive amount of evidence entered into the Record by Timothy M. Barrett as to why it is best for his children to be with him and not to be with the Defendant, as reflected in the transcript, and reduced Timothy M. Barrett's contribution to his children to some vague notion that he is damaging to his children, and his disagreement with him as to how his children should be reared.

G.   Judge Campbell's custody order violated Timothy M. Barrett's due process right to relying on "facts" that were contrary to the contradicted evidence. For example:

I.    On Page 4 of Exhibit 4, Judge Campbell stated the Defendant was responsible for the education of the children and Timothy M. Barrett was responsible for all decisions concerning the care and education of the children when the evidence was that both parents were responsible for both. Indeed, even Mr. Venzie said "both [parents] were involved in home schooling". See Page 5 of Exhibit 5.

II.   On Page 4 of Exhibit 4, Judge Campbell stated that the Defendant's house "does more than meet the family's needs", but this is false, for the evidence was that it does not meet the family's needs at all in several significant respects.

III.  On Page 5 of Exhibit 4, Judge Campbell states that Alexander E. Barrett "exhibited a very serious emotional disturbance. . . at school". However, the "serious emotional disturbance" at school was Alexander allegedly threatening to shoot another student, but the school exonerated Alexander, finding no evidence that he did such a thing.

IV.   On Page 5 of Exhibit 4, Judge Campbell stated that "It is clear that Mr. Barrett's relationship with his children does not allow for outside influences, so that their perception of the world will only be that allowed by Mr. Barrett" when the evidence was quite the contrary.

V.    On Page 5 of Exhibit 4, Judge Campbell stated that "the evidence presented by expert testimony. . . is that Mr. Barrett has a narcissistic personal disorder", but the expert to whom Judge Campbell refers, Dr. Susan Garvey, expressly stated that she did not diagnose Timothy M. Barrett with this psychopathology.

VI.   On Page 5 of Exhibit 4, Judge Campbell stated that "the Court finds the report of the Guardian *ad litem* with respect to [the point of the parties mental health] more clearly sets out this finding. . . ", but Mr. Venzie offers no facts in his report as to this issue and instead offers his hyperbolic opinion, speculation and fear mongering that is utterly detached from the evidence.

VII.  On Page 5 of Exhibit 4, Judge Campbell stated that "as testified by expert witnesses, this relationship between the father and a child is extremely detrimental to the child's own sense of self-esteem and mental health,

and works to destroy a parent-child relationship between the child and the mother", but of the two expert witnesses who testified, only one said anything remotely like this and the other said the opposite.

VIII.    On Page 5 of Exhibit 4, Judge Campbell stated that "the Court finds from the father's testimony that his role would be that of being a parent solely responsible for the nurturing and education of the children with the mother's role being that of a housekeeper and cook", but Timothy M. Barrett never said such a thing, nor has he ever believed such a thing.

IX.    On Page 6 of Exhibit 4, Judge Campbell stated that "numerous instances have occurred" that demonstrate that Timothy M. Barrett is not willing to permit visitation by the Defendant, but in reality, no such instances occurred.

X.    On Page 6 of Exhibit 4, Judge Campbell stated that "it is clear that neither of the parents can or will cooperate with each other in resolving disputes regarding matters affecting the children." While this is certainly true of the Defendant, the evidence was the opposite when it cames to Timothy M. Barrett.

XI.    On Page 6 of Exhibit 4, Judge Campbell stated that "the Court does not find that there 1s such abuse committed by either parent as defined by 16.1-228." Again, while this is true as to Timothy M. Barrett, the evidence was clear that the Defendant did, in fact, physically abuse her children.

XII.    On Page 7 of Exhibit 4, Judge Campbell implied that it is the exchange of the children for the past two years that caused "extreme detriment" to them, but there is no evidence to support this claim.

XIII.    On Page 7 of Exhibit 4, Judge Campbell stated that "the father has denied emphatically any need to involve any person or agency in the upbringing and rearing of his children" when Timothy M. Barrett never denied such a thing at all.

XIV.    On Page 1 of Exhibit 5, Judge Campbell, via Mr. Venzie, stated that Timothy M. Barrett's girls will be instructed by him "that their role is to serve men and that they are inferior to men", that "this is a theologically fixed view for Mr. Barrett" when this was not his view at all.

XV.    On Page 2 of Exhibit 5, Judge Campbell, via Mr. Venzie, stated that "conflict, controversy and litigation surround [Timothy M. Barrett] like angry hornets", and that "living with Timothy Barrett for these children

will mean exposure to a constant onslaught from others, a constant sense that they are under attack", that they will not likely have a peaceful existence under his care, but there was no evidence to this effect.

XVI.  On Page 3 of Exhibit 5, Judge Campbell, via Mr. Venzie, stated that Timothy M. Barrett stated that "he plans to create X-Box software and games with his children" when he stated no such thing.

XVII.  On Page 4 of Exhibit 5, Judge Campbell, via Mr. Venzie, stated that "Tim Barrett has persisted in the position that nothing is wrong with Alex that living with his father will not immediately solve" when Timothy M. Barrett has never held this position, let alone persisted in it.

XVIII.  On Page 5 of Exhibit 5, Judge Campbell, via Mr. Venzie, stated that Emily had "her interests subjugated by her father to his need to control 'his' visitation time," but the evidence was that Timothy M. Barrett allowed his children to control what they do on visitation and that, sometimes, the needs of the many had to outweigh the needs of the one, for it is impossible to please all six children at any one time.

XIX.  On Page 5 of Exhibit 5, Judge Campbell, via Mr. Venzie, implied that Timothy M. Barrett "bribed [William with] promised gifts and a Peter Pan existence" when no such "bribes" were ever made.

XX.  On Page 6 of Exhibit 5, Judge Campbell, via Mr. Venzie, stated that Timothy M. Barrett had Alexander call the police to allege neglect by the Defendant because of "a silly dispute [between Alex and the Defendant broke out over what soda he could drink" when the reality was that the Defendant refused to feed Alexander because of this "silly dispute".

XXI.  On Page 7 of Exhibit 5, Judge Campbell, via Mr. Venzie, stated that Timothy M. Barrett went to the Bahamas on vacation, but this is false.

XXII.  On Page 8 of Exhibit 5, Judge Campbell, via Mr. Venzie, implies that Timothy M. Barrett will isolate the children, dismiss their problems and psychological stress, will apply simplistic absolute solutions and has a backward mentality toward modern society when the evidence was to the contrary.

XXIII.  On Page 9 of Exhibit 5, Judge Campbell, via Mr. Venzie, stated that "joint legal custody has been exploited by Timothy Barrett to harass professional care givers", but Timothy M. Barrett never did this.

XXIV. On Page 9 of Exhibit 5, Judge Campbell, via Mr. Venzie, stated that Timothy M. Barrett has used joint legal custody "to interfere with the children's schooling", which never happened.

XXV. Through his report, Mr. Venzie blamed the children's problems on the litigation and contact with Timothy M. Barrett when the evidence showed that they were caused by the Defendant's unfitness, parental alienation, abuse and neglect.

H. Judge Campbell's custody order violated Timothy M. Barrett's due process right to not have the custody proceeding used to punish him for wrongs, be they real or imagined. Specifically, even a cursory reading of Judge Campbell's March 9, 2006, custody order will show he was far more interested in punishing Timothy M. Barrett for the fact that he supposedly would not involve outsiders in the rearing of his children when that was his choice to make.

623. Because Judge Campbell's March 9, 2006, custody order violated Timothy M. Barrett's right to procedural due process, his custody determination violated the 14th Amendment to the U.S. Constitution, rendering it unconstitutional and void for lack of jurisdiction.

624. Therefore, we ask this Honorable Court to declare Judge Campbell's April October 4, 2010, custody order unconstitutional and void for lack of jurisdiction and permanently enjoin its use for any reason whatsoever.

### Count 21 – Judge Campbell's Custody Order Violated Timothy M. Barrett's Right To Equal Protection As To The Standard Of What Is Best For The Children

625. The Plaintiffs incorporate by reference and re-allege the previous and following paragraphs as if fully reproduced herein.

626. Despite the clear Constitutional insistence on equal protection, Judge Campbell repeatedly held Timothy M. Barrett to a different and unequal standard than the Defendant in determining what custody arrangement is best for the children, resulting in his denying Timothy M. Barrett custody of his children and even "normal" visitation with them.

627.    Specifically, Judge Campbell's March 9, 2006, custody order was based on a denial of equal protection in regard to the best interests' standard of comparison as to what was, in Judge Campbell's mind, the primary issue: the effect of the divorce on the children.

628.    In discussing the needs of the children, Judge Campbell spoke of the harm being done to the children by Timothy M. Barrett, who did not have custody of the children. But he never spoke of the harm being done to the children or its future implications by the Defendant, who did have custody of the children, though there was clearly evidence as to this point. Even the biased Mr. Venzie recognized the problem of the children staying in the custody the Defendnt. See, for example, Page 2 of Exhibit 5.

629.    Because Judge Campbell's March 9, 2006, custody order was based on an unequal application of his own chosen basis of comparing the two parents in making his custody determination, his custody determination violated the 14th Amendment Equal Protection rights of Timothy M. Barrett, rendering said order unconstitutional and void for lack of jurisdiction.

630.    Therefore, we ask this Honorable Court to declare Judge Campbell's March 9, 2006, custody order unconstitutional and void for lack of jurisdiction and permanently enjoin its use for any reason whatsoever.

### Count 22 - Judge Campbell's Custody Order Violates Timothy M. Barrett's Rights by Relying on the Report of the Guardian Ad Litem from Judge Campbell's Case

631.    The Plaintiffs incorporate by reference and re-allege the previous and following paragraphs as if fully reproduced herein.

632.    In making his March 9, 2006, custody order, Judge Campbell expressly relied on and incorporated the findings of Mr. Venzie into said custody order in an effort to support his own findings and conclusions.

633.  Such reliance violates the 1st and 14th Amendment rights of Timothy M. Barrett for said

report of Mr. Venzie repeatedly violated said rights of Timothy M. Barrett.

634.  Specifically, the Guardian's report violated the rights of Timothy M. Barrett as follows:

A.  It is biased in the fact finding role, denying Timothy M. Barrett equal protection.

    I.  Mr. Venzie refused to visit Timothy M. Barrett's house to see what he offered the children.

    II.  Mr. Venzie refused to speak with Timothy M. Barrett about any of the issues raised in his report, allowing him no opportunity to set him right because he did not want to be set right.

    III.  Mr. Venzie reported to Timothy M. Barrett before the conclusion of the case that it was only because of Kathy Barrett that he had any chance at having custody of his children, which is to say he made his mind up about Timothy M. Barrett before even all of the evidence was heard.

    IV.  Mr. Venzie misrepresents Timothy M. Barrett's theology concerning the role of women and what he plans on teaching his daughters about that role.

    V.  Mr. Venzie saw his role as minimizing the children's exposure to the father, not furthering their best interests.

    VI.  Mr. Venzie chose to have custody of these children with the parent that more agreed with his worldview.

    VII.  Mr. Venzie spun every circumstance in a way to paint Timothy M. Barrett in a negative light.

    VIII.  Mr. Venzie resorted to hyperbole to paint Timothy M. Barrett in a negative light.

    IX.  Mr. Venzie was vague to the point of utter meaninglessness of the information in his report.

    X.  Mr. Venzie pretended to divine the future, but only in a way that painted Timothy M. Barrett in a negative light.

    XI.  Mr. Venzie's report was filled with speculation passed off as fact.

XII. Mr. Venzie pretended to know how Timothy M. Barrett acts "in every undertaking" when he has information on but a tiny portion of his activities.

XIII. Mr. Venzie expressed his dislike of the fact that Timothy M. Barrett objected to his attempts to introduce evidence in violation of the rules.

XIV. Mr. Venzie got his facts wrong about the trial testimony of Timothy M. Barrett.

XV. Mr. Venzie ignored the truth of the claims of Timothy M. Barrett that he found incredible or contradictory.

XVI. Mr. Venzie assumed the worst of Timothy M. Barrett based on nothing but his own dislike of him.

XVII. Mr. Venzie hid the true position of some of the children with regard to custody of their father, by saying that they just want "contact" with him, which can mean anything.

XVIII. Mr. Venzie, when he did disclose the children's true position of wanting to live with their father, he dismissed it as if Timothy M. Barrett "bribed" the child to hold this position.

XIX. Mr. Venzie clearly held it against Timothy M. Barrett that he exercises his parental right to employ corporal punishment, even though even he was unable to show any abuse.

XX. Mr. Venzie ignored the fact that the Defendant was convicted of assaulting Alexander, doing this because it did not fit his thesis.

XXI. Mr. Venzie ignored all evidence that was contrary to his thesis, barely mentioning any of the evidence brought forth during two years of testimony.

B. Mr. Venzie's report contained his opinions, which he is not qualified to give, having no expertise in anything of relevance to this case, in violation of the due process rights of Timothy M. Barrett. See Virginia Rules of Evidence 2:7XX.

C. Mr. Venzie's report condemned Timothy M. Barrett for his religious beliefs, violating his right to freedom of religion.

D. Mr. Venzie's report condemned Timothy M. Barrett for his opinions, violating his right to freedom of speech and thought.

E.  Mr. Venzie's report condemned Timothy M. Barrett for his self-representation and trial tactics in that representation violating his right to self-representation.

F.  Mr. Venzie's report condemned Timothy M. Barrett for his child rearing philosophy, violating his right to rear his children as he sees fit without governmental interference.

G.  Mr. Venzie's report contained and was itself hearsay in violation of Timothy M. Barrett's due process rights. See Virginia Rules of Evidence 2:8XX.

H.  Mr. Venzie's report itself violated Timothy M. Barrett's right to confront the evidence against him.

I.  Mr. Venzie's report had *nothing* positive to say about Timothy M. Barrett.

J.  Even the good things about Timothy M. Barrett, Mr. Venzie spun into a negative.

635.  Because Judge Campbell's March 9, 2006, custody order is based on the report of the Guardian *Ad Litem*, which itself is and which contains many violations of the God-given, natural fundamental and Constitutional rights of Timothy M. Barrett, his custody determination violates the 14th Amendment Due Process rights of Timothy M. Barrett, rendering said order unconstitutional and void for lack of jurisdiction.

636.  Therefore, we ask this Honorable Court to declare Judge Campbell's March 9, 2006, custody order unconstitutional and void for lack of jurisdiction and permanently enjoin its use for any reason whatsoever.

### Count 23 - Judge Campbell's Custody Order Violates Timothy M. Barrett's Right to Have His Case Adjudicated by a Judge without Bias or Prejudice and His Right to a Fair Trial

637.  The Plaintiffs incorporate by reference and re-allege the previous and following paragraphs as if fully reproduced herein.

638.  Despite this clear Constitutional insistence on due process and equal protection in the administration of justice aforesaid, Judge Campbell was clearly biased and/or prejudiced

against Timothy M. Barrett or in favor of the Defendant, denying him an impartial judge who could administer justice fairly and resulting in a determination that saw him denying him custody of his children and even "normal" visitation with them.

639.    Specifically, Judge Campbell discriminated against Timothy M. Barrett and displayed his bias and prejudice as follows:

A.    Judge Campbell focused on the fact of Timothy M. Barrett's supposed disagreement with him as to the proper role of outsiders in the rearing of his children, basing his custody decision on that disagreement.

B.    Judge Campbell utterly ignored the evidence of the benefits of Timothy M. Barrett as a person and his abilities to promote what is best for the children.

C.    Likewise, Judge Campbell ignored the evidence of the harm done to the children by the Defendant.

D.    More to the point, even those things that should have been viewed as negative in regards to the Defendant having custody were excused or dismissed because of the litigation.

E.    Judge Campbell literally even made up evidence to hold against Timothy M. Barrett to support his *a priori*, biased and prejudiced conclusion. For example, all of the findings of Judge Campbell for which there was no evidence adduced above.

F.    Judge Campbell repeatedly ignored the rights of Timothy M. Barrett in adjudicating this matter whenever they stood in the way of his *a priori*, biased and prejudiced conclusion.

G.    Judge Campbell even employed a double standard, applying one standard to the Defendant and another to Timothy M. Barrett.

H.    Whenever Judge Campbell was called upon to draw an inference, those inferences cut against Timothy M. Barrett.

640.    Because Judge Campbell's March 9, 2006, custody order is the result of his being prejudiced and biased against Timothy M. Barrett, depriving him of a fair trial, his custody

determination violated the 14th Amendment Due Process and Equal Protection rights of Timothy M. Barrett, rendering said order unconstitutional and void for lack of jurisdiction.

641.    Therefore, we ask this Honorable Court to declare Judge Campbell's March 9, 2006, custody order unconstitutional and void for lack of jurisdiction and permanently enjoin its use for any reason whatsoever.

## PART 6

## FEDERAL CIVIL RIGHTS CLAIMS AGAINST VALERIE JILL RHUDY MINOR

### *Introduction - Facts Common To All Part 6 and 7 Counts*

642.    The Plaintiffs incorporate by reference and re-allege the previous and following paragraphs as if fully reproduced herein.

643.    Ever since the separation of Timothy M. Barrett and the Defendant, the Defendant has engaged in an intentional course of conduct designed to keep Timothy M. Barrett from his children.

644.    Indeed, in a hearing in February of 2002, the Defendant admitted that she is doing everything in her power to keep Timothy M. Barrett away from his children.

645.    The Defendant is engaging in such conduct because she is angry and distraught over having received no property in the divorce, received no spousal support and obtained a large portion of the marital debt, which, coupled with her refusal to work, forced her onto public assistance and into bankruptcy.

646.    Judge Geisler's April 9, 2010, custody order mandates that the Defendant have full legal and physical custody of William A. Barrett and Katarina N. Barrett.

647. Furthermore, Judge Geisler's April 9, 2010, custody order mandates that the Defendant provide to Timothy M. Barrett telephone visitation with both William A. Barrett and Katarina N. Barrett every Wednesday at 8:00 p.m. for 30 minutes, among other things.

648. All told, the total time Timothy M. Barrett was provided with visitation with his children under Judge Geisler's April 9, 2010, custody order amounted to a mere 5% of their lives.

649. Such a limited amount of time is reflected of neither equal nor substantively equal rights to custody of his children vis-à-vis that of the Defendant.

650. Nevertheless, Judge Geisler's April 9, 2010, custody order was entered after a contested hearing in which the Defendant was fully heard as to her concerns as to Timothy M. Barrett having anything but supervised visitation, with Judge Geisler expressly finding that it was in the children's best interests that the then minor children have the aforementioned time with Timothy M. Barrett to benefit them.

651. Indeed, immediately prior to the April 9, 2010, order being entered, the Defendant moved the Court to reconsider its custody decision.

    A.    The Defendant argued that she had no control over the children, could not make them attend visitation and that Erin no longer wanted to attend visitation.

    B.    The Court rejected the rationale, stating that it was not up to the children to decide whether they went to visitation or not, and denied the Defendant's Motion to Reconsider and reiterated that its ruling reflected the children's best interests.

    C.    The Court then entered the April 9, 2010, order fully knowing the Defendant's and alleged children's position on visitation, insisting she act in the children best interests by providing the Plaintiff the visitation contained in the order.

652.    That notwithstanding Judge Geisler's April 9, 2010, custody order, the Defendant has repeatedly refused to provide the children for the required purposes and specified dates and times.

653.    That the Defendant has been repeatedly found in civil contempt for failure to obey and was even convicted of both criminal contempt and the crime of parental kidnapping under Virginia Code §§18.2-456(5) and 18.2-49.1 for her failure to obey.

A.    On March 28, 2003, the Grayson County J&DR District Court found the Defendant guilty of criminal contempt for her failure to obey the Court's custody order.

B.    On March 1, 2004, the Grayson County J&DR District Court found the Defendant guilty of the crime of parental kidnapping.

C.    On March 29, 2005, the Grayson County Circuit Court found the Defendant guilty of criminal contempt of court for her failure to obey the Court's custody order.

D.    On January 8, 2010, the Grayson County Circuit again held the Defendant in contempt for failing to provide Erin E. Barrett for in-person visitation on March 28, 2009 and for failing to provide Erin E. Barrett, Emily G. Barrett, William A. Barrett and Katarina N. Barrett for telephone visitation on January 4, January 25, and March 8, 2009.

i.    The Defendant argued that she could not make Erin E. Barrett come and that Erin E. Barrett would have rather attended her basketball game than visitation with the Plaintiff.

ii.    The Court rejected that argument because the custody order required her to provide Erin E. Barrett, imposing on her the duty to comply.

iii.    The Court ruled that the Defendant had willfully refused to provide Erin E. Barrett for in-person visitation on March 28, 2009, despite his having commanded the Defendant to do so.

E.    On April 9, 2010, the Grayson County Circuit Court found that the Defendant "again refused to provide Erin for in-person visitation on April 9, 2010."

F.    For each finding that she had violated the Court's custody order, the Defendant received a token sanction.

G.     None of these token sanctions caused her to bring her behavior back in line with the Court order.

H.     This was because her hatred for the Plaintiff and desire to hurt him was greater than her love of her children, her desire to act in their best interests and even her own financial well-being.

I.      Instead, she openly and continuously flaunted her contempt for her children's best interests, the authority of the court and the law of this Commonwealth.

654.   In fact, between April 9, 2010, and October 4, 2012, the Defendant has failed to completely obey the Court's order even one time.

655.   Such refusals were done knowingly, wrongfully, intentionally, maliciously willfully, negligently, carelessly and recklessly.

656.   Indeed, on April 9, 2010, when the Defendant made the final decision to disregard what was in her children's best interests in keeping with the Court order, the Defendant told Erin E. Barrett to lock the doors to her house and how to hide from the Plaintiff, with instructions that she barricade herself in the house and hide, in case the Plaintiff came to the house looking for her

657.   In fact, such refusals were purposefully taken by the Defendant to punish the Plaintiff for, what is in her words, his being "despicable."

658.   That such actions on the part of the Defendant in withholding the children from the Plaintiff were done with premeditation for the purpose of inflicting emotional distress and other harms to the Plaintiff.

659.   In addition, the Defendant took these and other actions, with the intent of alienating father a child with the hope of severing the relationship and leaving it beyond repair. The

Defendant's efforts in this regard were successful, causing the Plaintiff to lose the services, love and affection of the named children.

659. In other words, such actions on the part of the Defendant were done conscientiously in disregard of the Plaintiff's God-given, natural, fundamental, Constitutional and other legal rights while acting with a reckless disregard of the consequences and with the Defendant's knowledge that her conduct would cause injury to the Plaintiff, making the Defendant's conduct willful and wanton.

660. Indeed, whenever the Plaintiff asked to speak with the Defendant by telephone to resolve this situation, the Defendant refused to speak with him or if she did speak with him, she would yell at him and hang up the phone or lie to him about the children.

661. The Defendant is now refusing to communicate with Timothy M. Barrett at all, and is, instead, having her husband deal with all matters concerning the children.

662. In fact, the Defendant has changed her telephone number and e-mail address without providing them to Timothy M. Barrett, which is to say Timothy M. Barrett lacks the ability to directly communicate with the Defendant concerning the children, even in an emergency.

663. Judge Geisler's April 9, 2010, custody order remains in effect except to the degree it was overruled by Judge Powell's October 4, 2012, custody order. See Virginia Code §20-146.5.

664. Judge Powell's October 4, 2012, custody order mandates that the Defendant have full legal and physical custody of both William A. Barrett and Katarina N. Barrett.

665. Furthermore Judge Powell's October 4, 2012, custody order mandates that the Defendant have in-person visitation with William A. Barrett as follows (among others):

    A.     One weekend in every six week period from Friday at 7:00 p.m. to Sunday at 5:30 p.m., with the Defendant choosing the weekend during the six week period.

B. Every Thanksgiving holiday in even numbered years from 7:00 p.m. on the Wednesday before Thanksgiving until 5:30 p.m. on the Sunday after Thanksgiving.

C. The year 2014 was an even numbered year in which Timothy M. Barrett was to have in-person, Thanksgiving holiday visitation with his three youngest children.

D. Every Spring Break holiday in odd numbered years, including 2015, from 7:00 p.m. the day school adjourns for the holiday until 5:30 p.m. on the day before school resumes after the holiday.

E. The year 2015 was an odd numbered year in which Timothy M. Barrett was to have in-person, Spring Break holiday visitation with his three youngest children.

F. That Timothy M. Barrett shall exchange the children at the Burger King/Exxon off of Exit 205 off of I-81.

666. The Defendant has willfully, wantonly, intentionally, maliciously and with reckless indifference to the rights of Timothy M. Barrett, both his God-give, natural, fundamental, and Constitutional as well as his civil rights under Virginia law, denied him his court-ordered visitation with William A. Barrett and Katarina N. Barrett.

667. Specifically, the Defendant violated Judge Geisler's April 9, 2010, custody order by failing to provide William A. Barrett for any telephone visitation on the following dates:

A. January 14, 2015

B. January 21, 2015

C. January 28, 2015

D. February 4, 2015

E. February 11, 2015

F. February 18, 2015

G. February 25, 2015

H.      March 4, 2015

I.      March 11, 2015

J.      March 18, 2015

K.      March 25, 2015

L.      April 1, 2015

M.      April 15, 2015

N.      April 22, 2015

O.      April 29, 2015

P.      May 6, 2015

Q.      May 13, 2015

R.      May 20, 2015

S.      May 27, 2015

T.      June 3, 2015

668.    Specifically, the Defendant violated Judge Geisler's April 9, 2010, custody order by failing to provide Katarina N. Barrett for any telephone visitation on the following dates:

A.      May 20, 2015

B.      June 3, 2015

C.      June 10, 2015

669.    Furthermore, the Defendant violated Judge Powell's October 12, 2012, custody order by failing to provide William A. Barrett for his 2014 Thanksgiving holiday visitation as follows:

A.      On Tuesday, November 25, 2014, Mr. Minor contacted Timothy M. Barrett via text message, to let him know that a snow storm was about to sweep western Virginia, making an exchange per the Court order on Wednesday, November 26, 2015, impossible.

B.  Mr. Minor asked if Timothy M. Barrett would be willing and able to meet that evening (*i.e.,* Tuesday) to receive the children.

C.  Timothy M. Barrett readily agreed and made his way to the Court-ordered exchange location at the Burger King/Exxon station off Exit 205 off Interstate-81.

D.  However, when Timothy M. Barrett timely arrived at the exchange location on November 25, 2015, he was able to retrieve Emily G. Barrett and Katarina N. Barrett, but the Defendant failed to provide William A. Barrett for Timothy M. Barrett's court-ordered Thanksgiving holiday visitation.

E.  Timothy M. Barrett requested the Defendant, via Mr. Minor, if she would bring William A. Barrett on Thursday, November 27, 2015, for the rest of his visitation.

F.  That request was refused and Timothy M. Barrett missed his entire court-ordered Thanksgiving holiday visitation with William A. Barrett.

670.  The Defendant again violated Judge Powell's October 12, 2012, custody order by failing to provide William A. Barrett for his in-person, six-week weekend visitation as follows:

A.  From Friday, February 6, 2015, to Sunday, February 8, 2015, Timothy M. Barrett was to have his in-person visitation with all three of his minor children.

B.  When Timothy M. Barrett timely arrived at the exchange point on February 6, 2015, he was able to retrieve Emily G. Barrett and Katarina N. Barrett, but the Defendant failed to provide William A. Barrett for Timothy M. Barrett's court-ordered six-week visitation.

C.  Timothy M. Barrett requested the Defendant, via Mr. Minor, if she would bring William A. Barrett to the visitation.

D.  That request was refused and Timothy M. Barrett missed his entire court-ordered weekend visitation with William A. Barrett.

671.  The Defendant again violated Judge Powell's October 12, 2012, custody order by failing to provide William A. Barrett for in-person, six-week weekend visitation as follows:

A.  The next in-person, six week visitation would have been on March 20, 2015; however, the Defendant exercised her option under the order and moved the visitation to March 6, 2015.

B.   From Friday, March 6, 2015, to Sunday, March 8, 2015, Timothy M. Barrett was to have his in-person visitation with all three of his minor children.

C.   When Timothy M. Barrett timely arrived at the exchange point on March 6, 2015, he was able to retrieve Emily G. Barrett and Katarina N. Barrett, but the Defendant failed to provide William A. Barrett for Timothy M. Barrett's court-ordered six-week visitation.

D.   Timothy M. Barrett requested the Defendant, via Mr. Minor, if she would bring William A. Barrett to the visitation.

E.   That request was refused and Timothy M. Barrett missed his entire court-ordered weekend visitation with William A. Barrett.

672.   The Defendant again violated Judge Powell's October 12, 2012, custody order by failing to provide William A. Barrett for his 2015 Spring Break holiday visitation as follows:

A.   The children's 2015 Spring Break holiday from school was from 7:00 p.m. on March 27, 2015, until 5:30 p.m. on April 7, 2015.

B.   When Timothy M. Barrett timely arrived at the exchange point on March 27, 2015, he was able to retrieve Katarina N. Barrett, but the Defendant failed to provide William A. Barrett for Timothy M. Barrett's court-ordered six-week visitation.

C.   The Defendant and Timothy M. Barrett had agreed to allow Emily G. Barrett to come on March 31, 2015, which is why she was not at the exchange location on March 27, 2015.

C.   Timothy M. Barrett requested the Defendant, via Mr. Minor, if she would bring William A. Barrett to the visitation.

D.   That request was refused and Timothy M. Barrett missed his entire court-ordered Spring Break holiday visitation with William A. Barrett.

673.   Timothy M. Barrett reserves the right to add to this list of times the Defendant has violated the courts' orders as time moves forward toward the trial date.

674.   That such refusals to provide William A. Barrett and Katarina N. Barrett to Timothy M. Barrett in violation of Judge Geisler's April 9, 2010, custody order and Judge Powell's October 4,

2012, custody order and were done by the Defendant wrongfully, intentionally, maliciously, and consciously in disregard of Timothy M. Barrett's God-given, natural, fundamental and Constitutional rights as well as what is in William A. Barrett's and Katarina N. Barrett's best interests; recklessly in disregard of the consequences; knowingly that her conduct would cause injury to Timothy M. Barrett, William A. Barrett and Katarina N. Barrett; and willfully, wantonly and intentionally so as to cause injury.

### COUNT 24 – VIOLATION OF 28 U.S.C. 1983

675.    The Plaintiffs incorporate by reference and re-allege the previous and following paragraphs as if fully reproduced herein.

676.    But for Judge Geisler's April 9, 2010, custody order and Judge Powell's October 4, 2012, custody order violating the rights of Timothy M. Barrett aforementioned, the Defendant herself would not have been in a position to violate the rights of Timothy M. Barrett herself.

677.    Thus, the Defendant's actions were done under color of law.

678.    That as a direct and proximate result of the Defendant's intentional, willful with reckless indifference to the rights of Timothy M. Barrett aforementioned while acting under color of law, Timothy M. Barrett was caused to sustain serious and permanent injuries, which caused and will continue to cause him to suffer great physical and mental pain, emotional anguish and disability. Said injuries have prevented the Plaintiff from carrying out his normal responsibilities and enjoying the pleasures of life. In addition, Timothy M. Barrett was caused to sustain permanent loss of society with William A. Barrett and Katarina N. Barrett; permanent harm to his relationship with William A. Barrett and Katarina N. Barrett; and permanent loss of influence over William A. Barrett's and Katarina N. Barrett's life.

679     That as a direct and proximate result of the Defendant's intentional, willful with reckless indifference to the rights of William A. Barrett and Katarina N. Barrett aforementioned while acting under color of law, William A. Barrett and Katarina N. Barrett were caused to sustain serious and permanent injuries, which caused and will continue to cause them to suffer great physical and mental pain, emotional anguish and disability.  Said injuries have prevented William A. Barrett and Katarina N. Barrett from carrying out their normal responsibilities and enjoying the pleasures of life.  In addition, William A. Barrett and Katarina N. Barrett were caused to sustain permanent loss of society with Timothy M. Barrett; permanent harm to their relationship with Timothy M. Barrett; and permanent loss of influence over Timothy M. Barrett's life.

680.    Given the nature of the Defendant's conduct under the circumstances aforesaid, Timothy M. Barrett, William A. Barrett and Katarina N. Barrett are entitled to both compensatory and punitive damages.

681.    Therefore, we ask this Honorable Court to award Timothy M. Barrett ONE MILLION DOLLARS AND ZERO CENTS ($1,000,000.00) in compensatory damages and FIVE MILLION DOLLARS AND ZERO CENTS ($5,000,000.00) in punitive damages.

682.    Therefore, we ask this Honorable Court to award William A. Barrett ONE MILLION DOLLARS AND ZERO CENTS ($1,000,000.00) in compensatory damages and FIVE MILLION DOLLARS AND ZERO CENTS ($5,000,000.00) in punitive damages.

683.    Therefore, we ask this Honorable Court to award Katarina N. Barrett TWENTY-FIVE THOURSAND DOLLARSS AND ZERO CENTS ($25,000.00) in compensatory damages and ONE

HUNDRED, TWENTY-FIVE THOUSAND DOLLARS AND ZERO CENTS ($125,000.00) in punitive damages.

## PART 7

## STATE CIVIL CLAIMS AGAINST VALERIE JILL RHUDY MINOR

### COUNT 25 – STATE COMMON LAW CLAIM –
### NEGLIGENCE *PER SE* – WILLIAM - THANKSGIVING VISITATION, 2014

684.    The Plaintiffs incorporate by reference and re-allege the previous and following paragraphs as if fully reproduced herein.

685.    The Defendant's failure to provide William A. Barrett to Timothy M. Barrett over Thanksgiving of 2014 was a withholding of a child from his parent.

686.    The Defendant's failure to provide William A. Barrett to Timothy M. Barrett over Thanksgiving of 2014 was a clear and significant violation of a court order respecting the custody or visitation of William A. Barrett.

687.    The Defendant's failure to provide William A. Barrett to Timothy M. Barrett over Thanksgiving of 2014 is a crime under Virginia Code §18.2-49.1, which is to say in failing to provide William in keeping with Judge Powell's October 4, 2012, custody order, the Defendant violated the law.

688.    Virginia Code §18.2-49.1 was a statute enacted by the General Assembly to protect the public.

689.    Timothy M. Barrett and William A. Barrett belong to the class of people for whose benefit Virginia Code §18.2-49.1 was enacted.

690.    As a direct and proximate result of the Defendant's violation of Virginia Code §18.2-49.1, Timothy M. Barrett and William A. Barrett were caused to sustain serious and permanent injuries, which caused and will continue to cause them to suffer great physical and mental pain, emotional anguish, and disability.  Said injuries have prevented the Plaintiffs from carrying out their normal responsibilities and enjoying the pleasures of life, and have caused and will continue to cause them to incur losses in income, medical expenses and other related losses and expenses.

691.    Virginia Code §18.2-49.1 was designed and enacted to protect against this type of harm being suffered by both a parent and a child, such as Timothy M. Barrett and William A. Barrett, respectively.

692.    Therefore, we ask this Honorable Court to award Timothy M. Barrett ONE MILLION DOLLARS AND ZERO CENTS ($1,000,000.00) in compensatory damages and FIVE MILLION DOLLARS AND ZERO CENTS ($5,000,000.00) in punitive damages.

693.    Therefore, we ask this Honorable Court to award William A. Barrett ONE MILLION DOLLARS AND ZERO CENTS ($1,000,000.00) in compensatory damages and FIVE MILLION DOLLARS AND ZERO CENTS ($5,000,000.00) in punitive damages.

### COUNT 26 – STATE COMMON LAW CLAIM –
### NEGLIGENCE *PER SE* – WILLIAM - 2/6/15 WEEKEND VISITATION

694.    The Plaintiffs incorporate by reference and re-allege the previous and following paragraphs as if fully reproduced herein.

695.    The Defendant's failure to provide William A. Barrett to Timothy M. Barrett over the weekend of February 6, 2015, was a withholding of a child from his parent.

696. The Defendant's failure to provide William A. Barrett to Timothy M. Barrett over the weekend of February 6, 2015, was a clear and significant violation of a court order respecting the custody or visitation of William A. Barrett.

697. The Defendant's failure to provide William A. Barrett to Timothy M. Barrett over the weekend of February 6, 2015, is a crime under Virginia Code §18.2-49.1, which is to say in failing to provide William in keeping with Judge Powell's October 4, 2012, custody order, the Defendant violated the law.

698. Virginia Code §18.2-49.1 was a statute enacted by the General Assembly to protect the public.

699. Timothy M. Barrett and William A. Barrett belong to the class of people for whose benefit Virginia Code §18.2-49.1 was enacted.

700. As a direct and proximate result of the Defendant's violation of Virginia Code §18.2-49.1, Timothy M. Barrett and William A. Barrett were caused to sustain serious and permanent injuries, which caused and will continue to cause them to suffer great physical and mental pain, emotional anguish, and disability. Said injuries have prevented the Plaintiffs from carrying out their normal responsibilities and enjoying the pleasures of life, and have caused and will continue to cause them to incur losses in income, medical expenses and other related losses and expenses.

701. Virginia Code §18.2-49.1 was designed and enacted to protect against this type of harm being suffered by both a parent and a child, such as Timothy M. Barrett and William A. Barrett, respectively.

702.    Therefore, we ask this Honorable Court to award Timothy M. Barrett ONE MILLION DOLLARS AND ZERO CENTS ($1,000,000.00) in compensatory damages and FIVE MILLION DOLLARS AND ZERO CENTS ($5,000,000.00) in punitive damages.

703.    Therefore, we ask this Honorable Court to award William A. Barrett ONE MILLION DOLLARS AND ZERO CENTS ($1,000,000.00) in compensatory damages and FIVE MILLION DOLLARS AND ZERO CENTS ($5,000,000.00) in punitive damages.

**COUNT 27 – STATE COMMON LAW CLAIM –**
**NEGLIGENCE *PER SE* – WILLIAM - 3/6/15 WEEKEND VISITATION**

704.    The Plaintiffs incorporate by reference and re-allege the previous and following paragraphs as if fully reproduced herein.

705.    The Defendant's failure to provide William A. Barrett to Timothy M. Barrett over the weekend of March 6, 2015, was a withholding of a child from his parent.

706.    The Defendant's failure to provide William A. Barrett to Timothy M. Barrett over the weekend of March 6, 2015, was a clear and significant violation of a court order respecting the custody or visitation of William A. Barrett.

707.    The Defendant's failure to provide William A. Barrett to Timothy M. Barrett over the weekend of March 6, 2015, is a crime under Virginia Code §18.2-49.1, which is to say in failing to provide William in keeping with Judge Powell's October 4, 2012, custody order, the Defendant violated the law.

708.    Virginia Code §18.2-49.1 was a statute enacted by the General Assembly to protect the public.

709.    Timothy M. Barrett and William A. Barrett belong to the class of people for whose benefit Virginia Code §18.2-49.1 was enacted.

710.    As a direct and proximate result of the Defendant's violation of Virginia Code §18.2-49.1, Timothy M. Barrett and William A. Barrett were caused to sustain serious and permanent injuries, which caused and will continue to cause them to suffer great physical and mental pain, emotional anguish, and disability.  Said injuries have prevented the Plaintiffs from carrying out their normal responsibilities and enjoying the pleasures of life, and have caused and will continue to cause them to incur losses in income, medical expenses and other related losses and expenses.

711.    Virginia Code §18.2-49.1 was designed and enacted to protect against this type of harm being suffered by both a parent and a child, such as Timothy M. Barrett and William A. Barrett, respectively.

712.    Therefore, we ask this Honorable Court to award Timothy M. Barrett ONE MILLION DOLLARS AND ZERO CENTS ($1,000,000.00) in compensatory damages and FIVE MILLION DOLLARS AND ZERO CENTS ($5,000,000.00) in punitive damages.

713.    Therefore, we ask this Honorable Court to award William A. Barrett ONE MILLION DOLLARS AND ZERO CENTS ($1,000,000.00) in compensatory damages and FIVE MILLION DOLLARS AND ZERO CENTS ($5,000,000.00) in punitive damages.

## COUNT 28 – STATE COMMON LAW CLAIM –
### NEGLIGENCE *PER SE* – WILLIAM - SPRING BREAK, 2015 VISITATION

714.    The Plaintiffs incorporate by reference and re-allege the previous and following paragraphs as if fully reproduced herein.

715.    The Defendant's failure to provide William A. Barrett to Timothy M. Barrett over Spring Break of 2015, was a withholding of a child from his parent.

716. The Defendant's failure to provide William A. Barrett to Timothy M. Barrett over Spring Break of 2015, was a clear and significant violation of a court order respecting the custody or visitation of William A. Barrett.

717. The Defendant's failure to provide William A. Barrett to Timothy M. Barrett over Spring Break of 2015, is a crime under Virginia Code §18.2-49.1, which is to say in failing to provide William in keeping with Judge Powell's October 4, 2012, custody order, the Defendant violated the law.

718. Virginia Code §18.2-49.1 was a statute enacted by the General Assembly to protect the public.

719. Timothy M. Barrett and William A. Barrett belong to the class of people for whose benefit Virginia Code §18.2-49.1 was enacted.

720. As a direct and proximate result of the Defendant's violation of Virginia Code §18.2-49.1, Timothy M. Barrett and William A. Barrett were caused to sustain serious and permanent injuries, which caused and will continue to cause them to suffer great physical and mental pain, emotional anguish, and disability. Said injuries have prevented the Plaintiffs from carrying out their normal responsibilities and enjoying the pleasures of life, and have caused and will continue to cause them to incur losses in income, medical expenses and other related losses and expenses.

721. Virginia Code §18.2-49.1 was designed and enacted to protect against this type of harm being suffered by both a parent and a child, such as Timothy M. Barrett and William A. Barrett, respectively.

722. Therefore, we ask this Honorable Court to award Timothy M. Barrett ONE MILLION DOLLARS AND ZERO CENTS ($1,000,000.00) in compensatory damages and FIVE MILLION DOLLARS AND ZERO CENTS ($5,000,000.00) in punitive damages.

723. Therefore, we ask this Honorable Court to award William A. Barrett ONE MILLION DOLLARS AND ZERO CENTS ($1,000,000.00) in compensatory damages and FIVE MILLION DOLLARS AND ZERO CENTS ($5,000,000.00) in punitive damages.

### COUNT 30 – STATE COMMON LAW CLAIM – NEGLIGENCE *PER SE* – WILLIAM - TELEPHONE VISITATION

724. The Plaintiffs incorporate by reference and re-allege the previous and following paragraphs as if fully reproduced herein.

725. The Defendant's failure to provide William A. Barrett to Timothy M. Barrett for telephone visitation was a violation of a court order.

726. The Defendant's failure to provide William A. Barrett to Timothy M. Barrett for telephone visitation in violation of a court order is a crime under Virginia Code §18.2-456(5), which is to say in failing to provide William in keeping with Judge Geisler's April 9, 2010, custody order, the Defendant violated the law.

727. Virginia Code §18.2-456(5) was a statute enacted by the General Assembly to protect the public.

728. Timothy M. Barrett and William A. Barrett belong to the class of people for whose benefit Virginia Code §18.2-456(5) was enacted.

729. As a direct and proximate result of the Defendant's violation of Virginia Code §18.2-456(5), Timothy M. Barrett and William A. Barrett were caused to sustain serious and permanent injuries, which caused and will continue to cause them to suffer great physical and

mental pain, emotional anguish, and disability. Said injuries have prevented the Plaintiffs from carrying out their normal responsibilities and enjoying the pleasures of life, and have caused and will continue to cause them to incur losses in income, medical expenses and other related losses and expenses.

730. Virginia Code §18.2-456(5) was designed and enacted to protect against this type of harm being suffered by both a parent and a child, such as Timothy M. Barrett and William A. Barrett, respectively.

731. Therefore, we ask this Honorable Court to award Timothy M. Barrett ONE MILLION DOLLARS AND ZERO CENTS ($1,000,000.00) in compensatory damages and FIVE MILLION DOLLARS AND ZERO CENTS ($5,000,000.00) in punitive damages.

732. Therefore, we ask this Honorable Court to award William A. Barrett ONE MILLION DOLLARS AND ZERO CENTS ($1,000,000.00) in compensatory damages and FIVE MILLION DOLLARS AND ZERO CENTS ($5,000,000.00) in punitive damages.

## COUNT 31 – STATE COMMON LAW CLAIM – NEGLIGENCE *PER SE* – KATARINA - TELEPHONE VISITATION

733. The Plaintiffs incorporate by reference and re-allege the previous and following paragraphs as if fully reproduced herein.

734. The Defendant's failure to provide Katarina N. Barrett to Timothy M. Barrett for telephone visitation was a violation of a court order.

735. The Defendant's failure to provide Katarina N. Barrett to Timothy M. Barrett for telephone visitation in violation of a court order is a crime under Virginia Code §18.2-456(5), which is to say in failing to provide Katarina in keeping with Judge Geisler's April 9, 2010, custody order, the Defendant violated the law.

736. Virginia Code §18.2-456(5) was a statute enacted by the General Assembly to protect the public.

737. Timothy M. Barrett and Katarina N. Barrett belong to the class of people for whose benefit Virginia Code §18.2-456(5) was enacted.

738. As a direct and proximate result of the Defendant's violation of Virginia Code §18.2-456(5), Timothy M. Barrett and Katarina N. Barrett were caused to sustain serious and permanent injuries, which caused and will continue to cause them to suffer great physical and mental pain, emotional anguish, and disability. Said injuries have prevented the Plaintiffs from carrying out their normal responsibilities and enjoying the pleasures of life, and have caused and will continue to cause them to incur losses in income, medical expenses and other related losses and expenses.

739. Virginia Code §18.2-456(5) was designed and enacted to protect against this type of harm being suffered by both a parent and a child, such as Timothy M. Barrett and Katarina N. Barrett, respectively.

740. Therefore, we ask this Honorable Court to award Timothy M. Barrett TWENTY-FIVE THOURSAND DOLLARSS AND ZERO CENTS ($25,000.00) in compensatory damages and ONE HUNDRED, TWENTY-FIVE THOUSAND DOLLARS AND ZERO CENTS ($125,000.00) in punitive damages.

741. Therefore, we ask this Honorable Court to award Katarina N. Barrett TWENTY-FIVE THOURSAND DOLLARSS AND ZERO CENTS ($25,000.00) in compensatory damages and ONE HUNDRED, TWENTY-FIVE THOUSAND DOLLARS AND ZERO CENTS ($125,000.00) in punitive damages.

## COUNT 32 – STATE COMMON LAW CLAIM –
## TORTUOUS INTERFERENCE WITH PARENTAL RIGHTS - WILLIAM

742.     The Plaintiffs incorporate by reference and re-allege the previous and following paragraphs as if fully reproduced herein.

743.     Tortuous interference with parental rights is a common law right of action recognized under Virginia law.  See *Wyatt v. McDermott*, 283 Va. 685 (2012).

744.     Timothy M. Barrett has the God-given, natural, fundamental and Constitutional right to establish and maintain a parental or custodial relationship with his minor children, including William A. Barrett.

745.     This right was (partially) recognized by the Courts of the Commonwealth of Virginia as aforementioned.

746.     The Defendant is a party outside of the relationship between Timothy M. Barrett and his minor children, including William A. Barrett.

747.     The Defendant interfered with Timothy M. Barrett's parental and custodial relationship with William A. Barrett by preventing Timothy M. Barrett from exercising his parental or custodial rights aforesaid.

748.     Such interference on the part of the Defendant in preventing Timothy M. Barrett and from exercising his parental or custodial rights was intentional.

749.     Such preventing of Timothy M. Barrett from exercising his parental or custodial rights was without Timothy M. Barrett's consent.

750.     The Defendant's intentional interference with the Timothy M. Barrett's parental and custodial relationship with William A. Barrett by preventing Timothy M. Barrett from exercising

his parental or custodial rights aforesaid directly and proximately caused harm to Timothy M. Barrett's parental or custodial relationship with William A. Barrett.

751. As a result of the Defendant's intentional interference with Timothy M. Barrett's parental and custodial relationship with William A. Barrett by preventing Timothy M. Barrett from exercising his parental or custodial rights directly and proximately caused Timothy M. Barrett mental anguish at the loss of William A. Barrett and damages in the form of lost companionship with William A. Barrett, loss of the services of William A. Barrett and loss of money and time in seeking recovery of William A. Barrett.

752. Furthermore, the conduct on the part of the Defendant in intentionally interfering with Timothy M. Barrett's parental and custodial relationship with William A. Barrett by preventing Timothy M. Barrett from exercising his parental or custodial rights was done with the intent to harm Timothy M. Barrett.

753. Therefore, we ask this Honorable Court to award Timothy M. Barrett ONE MILLION DOLLARS AND ZERO CENTS ($1,000,000.00) in compensatory damages and FIVE MILLION DOLLARS AND ZERO CENTS ($5,000,000.00) in punitive damages.

### COUNT 33 – STATE COMMON LAW CLAIM – TORTUOUS INTERFERENCE WITH PARENTAL RIGHTS – KATARINA

754. The Plaintiffs incorporate by reference and re-allege the previous and following paragraphs as if fully reproduced herein.

755. Tortuous interference with parental rights is a common law right of action recognized under Virginia law. See *Wyatt v. McDermott*, 283 Va. 685 (2012).

756.    Timothy M. Barrett has the God-given, natural, fundamental and Constitutional right to establish and maintain a parental or custodial relationship with his minor children, including Katarina N. Barrett.

757.    This right was (partially) recognized by the Courts of the Commonwealth of Virginia as aforementioned.

758.    The Defendant is a party outside of the relationship between Timothy M. Barrett and his minor children, including Katarina N. Barrett.

759.    The Defendant interfered with Timothy M. Barrett's parental and custodial relationship with Katarina N. Barrett by preventing Timothy M. Barrett from exercising his parental or custodial rights aforesaid.

760.    Such interference on the part of the Defendant in preventing Timothy M. Barrett and from exercising his parental or custodial rights was intentional.

761.    Such preventing of Timothy M. Barrett from exercising his parental or custodial rights was without Timothy M. Barrett's consent.

762.    The Defendant's intentional interference with the Timothy M. Barrett's parental and custodial relationship with Katarina N. Barrett by preventing Timothy M. Barrett from exercising his parental or custodial rights aforesaid directly and proximately caused harm to Timothy M. Barrett's parental or custodial relationship with Katarina N. Barrett.

763.    As a result of the Defendant's intentional interference with Timothy M. Barrett's parental and custodial relationship with Katarina N. Barrett by preventing Timothy M. Barrett from exercising his parental or custodial rights directly and proximately caused Timothy M. Barrett mental anguish at the loss of Katarina N.  Barrett and damages in the form of lost

companionship with William A. Barrett, loss of the services of Katarina N. Barrett and loss of money and time in seeking recovery of Katarina N. Barrett.

764.    Furthermore, the conduct on the part of the Defendant in intentionally interfering with Timothy M. Barrett's parental and custodial relationship with Katarina N. Barrett by preventing Timothy M. Barrett from exercising his parental or custodial rights was done with the intent to harm Timothy M. Barrett.

765.    Therefore, we ask this Honorable Court to award Katarina N. Barrett TWENTY-FIVE THOURSAND DOLLARSS AND ZERO CENTS ($25,000.00) in compensatory damages and ONE HUNDRED, TWENTY-FIVE THOUSAND DOLLARS AND ZERO CENTS ($125,000.00) in punitive damages.

**COUNT 34 – STATE COMMON LAW CLAIM –
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS - WILLIAM**

766.    The Plaintiffs incorporate by reference and re-allege the previous and following paragraphs as if fully reproduced herein.

767.    Intentional Infliction of emotional distress is a common law right of action recognized under Virginia law. See *SuperValu, Inc. v. Johnson,* 276 Va. 356 (2008).

768.    The Defendant's conduct in withholding William A. Barrett from Timothy M. Barrett and Timothy M. Barrett from William A. Barrett aforesaid was intentional and reckless.

769.    The Defendant's conduct in withholding William A. Barrett from Timothy M. Barrett and Timothy M. Barrett from William A. Barrett aforesaid was outrageous or intolerable, and so extreme in degree,  in that it was against the law and contrary to William A. Barrett's best interests and otherwise, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.

770.	That such actions on the part of the Defendant were so outrageous and intolerable that one state has said that "interference with the relationship between a child and a non-custodial parent by the custodial parent is so inconsistent with the best interests of the child as to *per se* raise a strong probability that the offending parent is unfit as to act as the custodial parent." See *Krebsbach v. Gallagher*, 181 A.S.2d 363, 587 NYS2d 346 (1992). Virginia concurs, with the legislature making such conduct a crime tantamount to kidnapping (See §18.2-49.1 of the Code of Virginia) and a sufficient reason to find a material change in circumstances to alter the present custody arrangement (See §20-108 of the Code of Virginia).

771.	That as a direct and proximate result of the Defendant's intentional violation of the court's orders, commission of a crime and willful and wanton negligence, the Plaintiff has been caused to sustain permanent loss of society with his children, permanent harm to his relationship with his children, permanent loss of influence of his children's lives, great physical, mental and emotional pain and anguish in dealing with such losses, and caused him to lose much time and money in prosecuting the Defendant to secure his rights at law and to further what is in the children's best interests, all of which resulted in severe emotional harm.

772.	That these emotional damages suffered by the Plaintiff were severe, launching him into a deep and sustained clinical depression from which developed severe sleep disturbance; constant physical fatigue; lack of motivation and concentration for both his business and life (making him physically unable to further his own interests), resulting in loss of income; feelings of constant frustration; feeling of constant isolation, loneliness and loss, tantamount to mourning the death of a child, loss of enjoyment of the pleasures of life, frequent crying bouts, need for medical intervention, constant reminders of his loss when exposed to other families

and/or children, and a sense of mourning so deep that is it akin to having lost one's children through death, but worse so, as he saw how the children are suffering in the Defendant's custody while knowing that they are being purposefully deprived of the superior life they could have, if only for a few hours and/or days. No reasonable person should be expected to endure this when all that was required to avoid it was to simply put in check the Defendant's extreme hatred for the Plaintiff, refuse to use the children as weapons in that war, and to comply with a simple court order, something millions of other estranged parents do every second of every day.

773.    The Defendant's conduct in withholding William A. Barrett from Timothy M. Barrett and Timothy M. Barrett from William A. Barrett aforesaid directly and proximately caused Timothy M. Barrett and William A. Barrett to suffer severe emotional distress.

774.    Therefore, we ask this Honorable Court to award Timothy M. Barrett ONE MILLION DOLLARS AND ZERO CENTS ($1,000,000.00) in compensatory damages and FIVE MILLION DOLLARS AND ZERO CENTS ($5,000,000.00) in punitive damages.

775.    Therefore, we ask this Honorable Court to award William A. Barrett ONE MILLION DOLLARS AND ZERO CENTS ($1,000,000.00) in compensatory damages and FIVE MILLION DOLLARS AND ZERO CENTS ($5,000,000.00) in punitive damages.

## COUNT 35 – STATE COMMON LAW CLAIM –
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS – KATARINA

776.    The Plaintiffs incorporate by reference and re-allege the previous and following paragraphs as if fully reproduced herein.

777.    The Defendant's conduct in withholding Katarina N. Barrett from Timothy M. Barrett and Timothy M. Barrett from Katarina N. Barrett aforesaid was intentional and reckless.

778. The Defendant's conduct in withholding Katarina N. Barrett from Timothy M. Barrett and Timothy M. Barrett from Katarina N. Barrett aforesaid was outrageous or intolerable in that it was against the law, contrary to Katarina N. Barrett's best interests and otherwise.

779. The Defendant's conduct in withholding William A. Barrett from Timothy M. Barrett and Timothy M. Barrett from William A. Barrett aforesaid was outrageous or intolerable, and so extreme in degree, in that it was against the law and contrary to William A. Barrett's best interests and otherwise, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.

780. That such actions on the part of the Defendant were so outrageous and intolerable that one state has said that "interference with the relationship between a child and a non-custodial parent by the custodial parent is so inconsistent with the best interests of the child as to *per se* raise a strong probability that the offending parent is unfit as to act as the custodial parent." See *Krebsbach v. Gallagher*, 181 A.S.2d 363, 587 NYS2d 346 (1992). Virginia concurs, with the legislature making such conduct a crime tantamount to kidnapping (See §18.2-49.1 of the Code of Virginia) and a sufficient reason to find a material change in circumstances to alter the present custody arrangement (See §20-108 of the Code of Virginia).

781. That as a direct and proximate result of the Defendant's intentional violation of the court's orders, commission of a crime and willful and wanton negligence, the Plaintiff has been caused to sustain permanent loss of society with his children, permanent harm to his relationship with his children, permanent loss of influence of his children's lives, great physical, mental and emotional pain and anguish in dealing with such losses, and caused him to lose

much time and money in prosecuting the Defendant to secure his rights at law and to further what is in the children's best interests, all of which resulted in severe emotional harm.

782.    That these emotional damages suffered by the Plaintiff were severe, launching him into a deep and sustained clinical depression from which developed severe sleep disturbance; constant physical fatigue; lack of motivation and concentration for both his business and life (making him physically unable to further his own interests), resulting in loss of income; feelings of constant frustration; feeling of constant isolation, loneliness and loss, tantamount to mourning the death of a child, loss of enjoyment of the pleasures of life, frequent crying bouts, need for medical intervention, constant reminders of his loss when exposed to other families and/or children, and a sense of mourning so deep that is it akin to having lost one's children through death, but worse so, as he saw how the children are suffering in the Defendant's custody while knowing that they are being purposefully deprived of the superior life they could have, if only for a few hours and/or days.  No reasonable person should be expected to endure this when all that was required to avoid it was to simply put in check the Defendant's extreme hatred for the Plaintiff, refuse to use the children as weapons in that war, and to comply with a simple court order, something millions of other estranged parents do every second of every day.

783.    The Defendant's conduct in withholding Katarina N. Barrett from Timothy M. Barrett and Timothy M. Barrett from Katarina N. Barrett aforesaid directly and proximately caused Timothy M. Barrett and Katarina N. Barrett to suffer severe emotional distress.

784. Therefore, we ask this Honorable Court to award Timothy M. Barrett ONE MILLION DOLLARS AND ZERO CENTS ($1,000,000.00) in compensatory damages and FIVE MILLION DOLLARS AND ZERO CENTS ($5,000,000.00) in punitive damages.

785. Therefore, we ask this Honorable Court to award Katarina N. Barrett TWENTY-FIVE THOURSAND DOLLARSS AND ZERO CENTS ($25,000.00) in compensatory damages and ONE HUNDRED, TWENTY-FIVE THOUSAND DOLLARS AND ZERO CENTS ($125,000.00) in punitive damages.

### COUNT 36 – STATE COMMON LAW CLAIM – ORDINARY NEGLIGENCE – WILLIAM

786. The Plaintiffs incorporate by reference and re-allege the previous and following paragraphs as if fully reproduced herein.

787. That since before March 9, 2006, the Defendant was bound by a legal duty to provide Timothy M. Barrett with custody of his minor children in keeping with the Court's orders and the common law that parents are to act in keeping with their children's best interests.

788. That notwithstanding said duty, the Defendant failed to provide Timothy M. Barrett with custody of his children and those children with visitation with Timothy M. Barrett in keeping with the Court's orders, breaching that duty, including William A. Barrett

789. That as a direct and proximate result of the Defendant's negligence, carelessness and recklessness aforesaid, Timothy M. Barrett and William A. Barrett were was caused to suffer harm as stated above.

790. Therefore, we ask this Honorable Court to award Timothy M. Barrett ONE MILLION DOLLARS AND ZERO CENTS ($1,000,000.00) in compensatory damages and FIVE MILLION DOLLARS AND ZERO CENTS ($5,000,000.00) in punitive damages.

791. Therefore, we ask this Honorable Court to award William A. Barrett ONE MILLION DOLLARS AND ZERO CENTS ($1,000,000.00) in compensatory damages and FIVE MILLION DOLLARS AND ZERO CENTS ($5,000,000.00) in punitive damages.

### COUNT 37 – STATE COMMON LAW CLAIM – ORDINARY NEGLIGENCE – KATARINA

792. The Plaintiffs incorporate by reference and re-allege the previous and following paragraphs as if fully reproduced herein.

793. That since before March 9, 2006, the Defendant was bound by a legal duty to provide Timothy M. Barrett with custody of his minor children in keeping with the Court's orders and the common law that parents are to act in keeping with their children's best interests.

794. That notwithstanding said duty, the Defendant failed to provide Timothy M. Barrett with custody of his children and those children with visitation with Timothy M. Barrett in keeping with the Court's orders, breaching that duty, including Katarina N. Barrett

795. That as a direct and proximate result of the Defendant's negligence, carelessness and recklessness aforesaid, Timothy M. Barrett and Katarina N. Barrett were was caused to suffer harm as stated above.

796. Therefore, we ask this Honorable Court to award Timothy M. Barrett ONE MILLION DOLLARS AND ZERO CENTS ($1,000,000.00) in compensatory damages and FIVE MILLION DOLLARS AND ZERO CENTS ($5,000,000.00) in punitive damages.

797. Therefore, we ask this Honorable Court to award Katarina N. Barrett TWENTY-FIVE THOURSAND DOLLARSS AND ZERO CENTS ($25,000.00) in compensatory damages and ONE HUNDRED, TWENTY-FIVE THOUSAND DOLLARS AND ZERO CENTS ($125,000.00) in punitive damages.

## PART 8

## JUDGE BENSON'S MAY 20, 2015, CUSTODY ORDER IS UNCONSTITUTIONAL

### Introduction

798.   The Plaintiffs incorporate by reference and re-allege the previous and following paragraphs as if fully reproduced herein.

799.   Beginning on March 7, 2015 and continuing until April 13, 2015, Timothy M. Barrett filed a series of civil show causes against the Defendant for her aforementioned violation of Judge Powell's October 4, 2012, custody order.

800.   On March 19, 2015, or there about, the Defendant filed a Motion to Amend Judge Powell's October 4, 2012, custody order with the Juvenile and Domestic Relations District Court for the City of Bristol (Juvenile Court).

801.   A true and accurate copy of said Motion to Amend is attached to this Complaint as Exhibit 11.

802.   This Motion to Amend was filed while the appeal concerning the validity of Judge Powell's October 4, 2012, custody order was still pending before the Court of Appeals of Virginia in the case of *Barrett v. Minor*, Record Number 0173-14-3.

803.   With Judge Powell having recused herself on motion of Timothy M. Barret due to her bias and denial of Timothy M. Barrett's constitutional rights, the Virginia Supreme Court appointed retired Judge Jarrett Benson of the Juvenile and Domestic Relations District Court of Virginia Beach to hear the matter.

804.   The City of Virginia Beach is approximately 431 miles from the City of Bristol or 6.5 hours by car per www.MAPQUEST.com.

805. On May 20, 2015, beginning at approximately 1:20 p.m., Timothy M. Barrett's show causes and the Motion to Amend was heard by Judge Benson with Timothy M. Barrett appearing by general appearance as to his show causes and special appearance as to the Motion to Amend on the basis that he had not yet been served.

806. As a result of the hostility and bias being shown by Judge Benson toward Timothy M. Barrett, Timothy M. Barrett non-suited his show causes.

807. Judge Benson found that Timothy M. Barrett had not been properly served on the Motion to Amend and ordered the bailiff to serve him right then and there.

808. Timothy M. Barrett moved Judge Benson for a continuance on the basis of lack of preparation and on the fact that he was just served on the day of trial.

809. Judge Benson denied that motion and the matter proceeded to trial.

810. A true, accurate and complete copy of the transcript of that May 20, 2015, hearing in its entirety is attached to this Complaint as Exhibit 12.

811. A true, accurate and complete copy of Judge Benson's May 20, 2015, custody order is attached to this Complaint as Exhibit 13.

## COUNT 38 – JUDGE BENSON'S CUSTODY ORDER VIOLATES TIMOTHY M. BARRETT'S RIGHT TO SUBSTANTIVE DUE PROCESS GUARANTEED BY THE 14TH AMENDMENT TO THE U.S. CONSTITUTION

812. The Plaintiffs incorporate by reference and re-allege the previous and following paragraphs as if fully reproduced herein.

813. Judge Benson's May 20, 2015, custody order repeatedly violated the substantive due process rights guaranteed to Timothy M. Barrett under the 14th Amendment to the U.S.

Constitution, resulting in Timothy M. Barrett being denied custody of his children and even "normal" visitation with them.

814. Specifically, Judge Benson's May 20, 2015, custody order violated Timothy M. Barrett's right to substantive due process as follows:

A. Judge Benson's Juvenile Court had no jurisdiction as the matter then pending before it was in the breast of the Court of Appeals of Virginia in the case of *Barrett v. Minor*, Record Number 0173-14-3. See *Greene v. Greene*, 223 Va. 210, 212 (1982).

B. Judge Benson violated Timothy M. Barrett's right to reasonable notice and an opportunity to be heard by denying his motion for a continuance due to lack of preparedness and trying the cause on the merits on the same day as Timothy M. Barrett was served a copy of the Motion to Amend.

C. Judge Benson violated Timothy M. Barrett's right to be heard by denying him his right to make an opening statement, fully cross-examine the Defendant's witnesses, the opportunity to present his own case-in-chief; and the opportunity to make a closing argument; and by constantly interrupting him during his limited examination of the Defendant's witnesses and arguments and insulting him from the bench.

D. Judge Benson violated Timothy M. Barrett's right to confront and cross-examine the Defendant's witnesses by denying him his right to make an opening statement, fully cross-examine the Defendant's witnesses, the opportunity to present his own case-in-chief; and the opportunity to make a closing argument; and by constantly interrupting him during his limited examination of the Defendant's witnesses and arguments and insulting him from the bench.

E. Judge Benson violated Timothy M. Barrett's right to represent himself by limiting the questions he was allowed the Defendant's witnesses, preventing him from presenting any evidence whatsoever, denying him his right to make an opening statement, denying him his right to make an argument, constantly interrupting him during his limited examination of the Defendant's witnesses and arguments and insulting him from the bench.

F. Judge Benson violated Timothy M. Barrett's right to petition the government by allowing testimony over his objection as to past and future actions he has and/or may file against the Defendant and her husband when such was irrelevant to the proceedings and unduly prejudicial.

G.     Judge Benson violated Timothy M. Barrett's right to control his own children without governmental interference on the basis that Timothy M. Barrett exercised his right to corporal punishment of his children as recognized by the Virginia Supreme Court in *Carpenter v. Carpenter*, 186 Va. 851 (1947), basing his custody decision on this evidence alone.

815.    Judge Benson's May 20, 2015, custody order is based on a deprivation of Timothy M. Barrett's right to substantive due process in violation of the 14th Amendment to the U.S. Constitution, rendering it unconstitutional and void for lack of jurisdiction.

816.    Therefore, we ask this Honorable Court to declare Judge Benson's May 20, 2015, custody order unconstitutional and void for lack of jurisdiction and permanently enjoin its use for any reason whatsoever.

## COUNT 39 – JUDGE BENSON'S CUSTODY ORDER VIOLATES TIMOTHY M. BARRETT'S RIGHT TO PROCEDURAL DUE PROCESS GUARANTEED  BY THE 14TH AMENDMENT TO THE U.S. CONSTITUTION

817.    The Plaintiffs incorporate by reference and re-allege the previous and following paragraphs as if fully reproduced herein.

818.    Judge Benson's May 20, 2015, custody order repeatedly violated the procedural due process rights guaranteed to Timothy M. Barrett under the 14th Amendment to the U.S. Constitution, resulting in Timothy M. Barrett being denied custody of his children and even "normal" visitation with them.

819.    Specifically, Judge Benson's May 20, 2015, custody order violated Timothy M. Barrett's right to procedural due process as follows:

A.     Judge Benson decided this case, denying Timothy M. Barrett any visitation with his son, without finding a material change in circumstances.

B.     Judge Benson decided this case without considering all of the factors of Virginia Code §20-124.3.

C.    Judge Benson decided this case without "communicat[ing] to the parties the basis of the decision either orally or in writing. . . [and without] set[ing] forth the judge's findings regarding the relevant factors set forth in this section." See Virginia Code §20-124.3.

D.    Judge Benson violated the right of Timothy M. Barrett to have his case decided without inadmissible hearsay when he allowed the Defendant's attorney to present evidence of what past judges have done in similar circumstances during his opening statement over the objection of Timothy M. Barrett.

E.    Judge Benson violated Timothy M. Barrett's right to present relevant evidence over Timothy M. Barrett' objections as follow:

      i.    Judge Benson excluded from evidence all facts that arose prior to October 4, 2012, the date of Judge Powell's order.

      ii.   Judge Benson excluded from evidence all evidence of habit of the Defendant in violating court orders related to custody and her abuse of the children.

      iii.  Judge Benson denied Timothy M. Barrett the right to cross-examine the Defendant's witnesses and present his own case.

F.    Judge Benson violated Timothy M. Barrett's right to have the case decided only on relevant evidence when he allowed the Defendant's husband to offer opinion testimony, though he was not qualified, that was nothing more than an opinion of law as to the existence of a material change in circumstances and that went to the ultimate issue, over the objection of Timothy M. Barrett.

G.    Judge Benson violated Timothy M. Barrett's right to have his child custody rights adjudicated without a myopic view of the facts by precluding Timothy M. Barrett from presenting any evidence or even fully cross-examining the Defendant's witnesses or even allowing the Defendant to finish presenting her case.

H.    Judge Benson violated Timothy M. Barrett's rights as to the burden of proof:

      a.    Virginia law imposes upon the moving party to establish that there exists a material change in circumstances since the entry of the last custody order and that a change in custody is in the children's best interests.

      b.    As the moving party, the Defendant bore this burden of proof.

c.   Part way through the Defendant's case as Timothy M. Barrett was cross-examining the Defendant's second witness in her case-in-chief, Judge Benson announced that it was up to Timothy M. Barrett to prove the absence of a material change and that it was in William's best interests that he visit with Timothy M. Barrett.

I.   Judge Benson violated Timothy M. Barrett's right to have his child custody rights adjudicated according to the overall aim of such cases in that Judge Benson failed to perform any kind of comparative analysis to decide which parent is best qualified, as that concept is defined unto Virginia law, to provide the highest quality of care to the children.

J.   Judge Benson violated Timothy M. Barrett's right to have his child custody rights adjudicated without using the custody proceeding to punish him.

   i.   It was clear throughout the hearing that Judge Benson did not approve of Timothy M. Barrett challenging his authority.

   ii.   In fact, Timothy M. Barrett would never dream of challenging a judge's authority, though the judge's competence was clearly at issue. For example:

      a.   Judge Benson was completely unfamiliar with habit evidence and that it was admissible.

      b.   Judge Benson had no idea of the rights of a *pro se* litigant to engage in examination of witnesses, put on evidence and make argument.

      c.   Judge Benson had no idea that the case involved a civil show cause when his review of the file made him think it was a criminal case, and this despite the fact that the pleadings clearly say "civil show cause".

   iii.   Judge Benson was clearly embarrassed by this ignorance of the law and of the case, especially by having a non-licensed attorney offer to educate and correct him.

   iv.   This embarrassment resulted in Judge Benson expressing nothing but hostility toward Timothy M. Barrett, constantly interrupting him, denying the most basic motions (even without argument from opposing counsel) and even insulting him.

v.     As Timothy M. Barrett was cross-examining the Defendant's second witness, Judge Benson announced that he had made up his mind as to the evidence and then misallocated the burden of proof.

vi.    This drew an objection and motion for a mistrial from Timothy M. Barrett.

vi.    This caused Judge Benson to explode at Timothy M. Barrett and deny the motion for a mistrial and immediately enter judgment against him, denying him any in--person visitation with William A. Barrett.

vii.   Clearly, Judge Benson used these custody proceedings to punish Timothy M. Barrett for Timothy M. Barrett for zealously representing himself in the matter before him.

viii.  In addition, Judge Benson kept mentioning his need to drive back to Virginia Beach that evening in an effort to expedite the process, even complaining that this matter should not be taking as long as it was.

ix.    Clearly Judge Benson was more concerned with expediting his return to his home than what was in William's best interests or even the due process rights of all involved.

x.    Judge Benson, therefore, punished Timothy M. Barrett for taking too much of his time and delaying his return home.

K.    Judge Benson violated Timothy M. Barrett's right to have this case decided by what was in the best interests of the children, for he never considered it.

L.    Judge Benson violated Timothy M. Barrett's right to have this case decided by a rational comparison of the parents, for he never compared them.

M.    Judge Benson violated Timothy M. Barrett's right to have this case decided upon a foundation based on the evidence given that he refused to even allow Timothy M. Barrett to be heard.

N.    Judge Benson violated Timothy M. Barrett's right to have the current custody order modified only upon a showing of a material change in circumstances since the entry of the current custody order when to have a change in circumstances one must know the original circumstances as reflected in the current order and that order was not put into evidence.

820.     Judge Benson's May 20, 2015, custody order is based on a deprivation of Timothy M.

Barrett's right to procedural due process in violation of the 14th Amendment to the U.S.

Constitution, rendering it unconstitutional and void for lack of jurisdiction.

821.     Therefore, we ask this Honorable Court to declare Judge Benson's May 20, 2015,

custody order unconstitutional and void for lack of jurisdiction and permanently enjoin its use

for any reason whatsoever.

### COUNT 40 – JUDGE BENSON'S CUSTODY ORDER VIOLATES TIMOTHY M. BARRETT'S RIGHT TO EQUAL PROTCTION GUARANTEED BY THE 14TH AMENDMENT TO THE U.S. CONSTITUTION

822.     The Plaintiffs incorporate by reference and re-allege the previous and following

paragraphs as if fully reproduced herein.

823.     Despite the clear Constitutional insistence on equal protection, Judge Benson

repeatedly held Timothy M. Barrett to a different standard than the Defendant when it came to

whether and how each side was allowed to present their case before him, resulting in him

denying Timothy M. Barrett any in-person visitation with William.

824.     Specifically, Judge Benson's May 20, 2015 custody order was based on a denial of equal

protection as follows:

A.     By allowing the Defendant, via her attorney, to give an opening statement while denying Timothy M. Barrett the same opportunity.

B.     By allowing the Defendant to make reference to facts from prior to October 4, 2012, while denying Timothy M. Barrett the same opportunity.

C.     By allowing the Defendant to present evidence while denying Timothy M. Barrett the same opportunity.

D.  By allowing the Defendant, via her attorney, to do and say whatever she wanted in the presentation of the evidence while constantly interrupting Timothy M. Barrett.

E.  By being biased and prejudiced against Timothy M. Barrett.

825.  Because Judge Benson's May 20, 2015, custody order was based on an unequal application of the law to Timothy M. Barrett vis-à-vis his application of that same law to the Defendant in making his custody determination, his custody determination violated the 14th Amendment Equal Protection rights of Timothy M. Barrett, rendering it unconstitutional and void for lack of jurisdiction.

826.  Therefore, we ask this Honorable Court to declare Judge Benson's May 4, 2015, custody order unconstitutional and void for lack of jurisdiction and permanently enjoin its use for any reason whatsoever.

### Count 41 - Judge Benson's May 20, 2015, Custody Order Violates Timothy M. Barrett's Right to Have His Case Adjudicated by a Judge without Bias or Prejudice and His Right to a Fair Trial

827.  The Plaintiffs incorporate by reference and re-allege the previous and following paragraphs as if fully reproduced herein.

828.  Despite this clear Constitutional insistence on due process and equal protection in the administration of justice, Judge Benson was clearly biased and/or prejudiced against Timothy M. Barrett or in favor of the Defendant, denying him an impartial judge who could administer justice fairly and resulting in a determination that denied him custody of his children and even "normal" visitation with them.

829.  Specifically, Judge Benson discriminated against Timothy M. Barrett and displayed his bias and prejudice as aforementioned.

830. Because Judge Benson's May 20, 2015, custody order is the result of him being prejudiced and biased against Timothy M. Barrett, depriving him of a fair trial, his custody determination violates the 14th Amendment Due Process and Equal Protection rights of Timothy M. Barrett, rendering it unconstitutional and void for lack of jurisdiction.

831. Therefore, we ask this Honorable Court to declare Judge Benson's May 20, 2015, custody order unconstitutional and void for lack of jurisdiction and permanently enjoin its use for any reason whatsoever.

## CONCLUSION AND RELIEF SOUGHT

832. The Plaintiffs incorporate by reference and re-allege the previous and following paragraphs as if fully reproduced herein.

833. As to Part 1, the Plaintiffs pray that Virginia child custody statutes be declared unconstitutional and that their use for any reason whatsoever be permanently enjoined.

834. As to Part 2, the Plaintiffs pray that custody of William A. Barrett and Katarina N. Barrett be immediately granted to their father, Timothy M. Barrett, in keeping with the common law of the Commonwealth of Virginia.

835. As to Part 3, the Plaintiffs pray that Judge Powell's October 4, 2012, child custody order be declared unconstitutional and that its use for any reason whatsoever be permanently enjoined.

836. As to Part 4, the Plaintiffs pray that Judge Geisler's April 9, 2010, child custody order be declared unconstitutional and that its use for any reason whatsoever be permanently enjoined.

837.    As to Part 5, the Plaintiffs pray that Judge Campbell's March 9, 2006, child custody order be declared unconstitutional and that its use for any reason whatsoever be permanently enjoined.

838.    As to Part 6, the Plaintiffs, Timothy M. Barrett and William A. Barrett, pray that an order of judgment be entered against the Defendant in the amount of ONE MILLION DOLLARS AND ZERO CENTS ($1,000,000.00) in compensatory damages and FIVE MILLION DOLLARS AND ZERO CENTS ($5,000,000.00) in punitive damages for each of them, and Katarina N. Barrett prays that an order of judgment be entered against the Defendant in the amount of TWENTY-FIVE THOURSAND DOLLARSS AND ZERO CENTS ($25,000.00) in compensatory damages and ONE HUNDRED, TWENTY-FIVE THOUSAND DOLLARS AND ZERO CENTS ($125,000.00) in punitive damages.

839.    As to Part 7, the Plaintiffs, Timothy M. Barrett and William A. Barrett, pray that an order of judgment be entered against the Defendant in the amount of ONE MILLION DOLLARS AND ZERO CENTS ($1,000,000.00) in compensatory damages and FIVE MILLION DOLLARS AND ZERO CENTS ($5,000,000.00) in punitive damages for each of them, and Katarina N. Barrett prays that an order of judgment be entered against the Defendant in the amount of TWENTY-FIVE THOURSAND DOLLARSS AND ZERO CENTS ($25,000.00) in compensatory damages and ONE HUNDRED, TWENTY-FIVE THOUSAND DOLLARS AND ZERO CENTS ($125,000.00) in punitive damages.

840.    As to Part 8, the Plaintiffs pray that Judge Benson's May 20, 2015, child custody order be declared unconstitutional and that its use for any reason whatsoever be permanently enjoined.

841.     Should the facts of this case be disputed by the Defendant, your Plaintiff expresses his

intent, subject to his revisions, to call the following witnesses:

| | | |
|---|---|---|
| Timothy M. Barrett | Alexander E. Barrett | Katarina N. Barrett |
| Steven R. Minor | Erin E. Barrett | D. Jeffery Coal |
| Valerie J. Minor | Emily G. Barrett | Patricia E. Smith |
| Jonathan H. Barrett | William A. Barrett | Laura Gilispee |
| Jonathan Venzie | Judge Florence Powell | Judge Brent L. Geisler |
| Judge Colin Campbell | Kathleen C. Barrett | Delaney N. Barrett |
| Ethan D. Kantz | Judge Jerrett Benson | |

842.     The Plaintiffs reserve the right to add to these allegations of fact in support of their

position during any hearing on this matter.


                                                          **TIMOTHY M. BARRETT**


                                        By: _____
                                        *Pro Se* Plaintiff and Next Friend
                                        of William A. Barrett and
                                        Katarina N. Barrett

Timothy M. Barrett
415 Edgewood Drive
Sarver, Pennsylvania 16055
(757) 342-1671 (Voice)
viceregent@juno.com

                          **CERTIFICATION**

I, Timothy M. Barrett, do hereby certify that a true and accurate copy of the forgoing Complaint
was served via U.S. Mail on the Defendant, Valerie Jill Rhudy Minor, at her usual place of abode
at 417 Meadow Drive, Bristol, Virginia 24201, on this, the 24th day of June 2015.


                                        _____
                                        Timothy M. Barrett