IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | | |
|---|---|---|
| **TIMOTHY M. BARRETT, ET AL.,** | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1:15CV00032 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **VALERIE JILL RHUDY MINOR,** | ) | By: James P. Jones |
| | ) | United States District Judge |
| Defendant. | ) | |

*Timothy M. Barrett, Pro Se Plaintiff; Steven R. Minor, Elliott Lawson & Minor, Bristol, Virginia, for Defendant.*

This case arises out of an ongoing series of acrimonious state court child custody proceedings that have spanned over a decade. The plaintiff father, Timothy M. Barrett, proceeding pro se, now turns to the federal courts and sues his former wife and mother of his children, Valerie Jill Rhudy Minor, pursuant to 42 U.S.C. § 1983. Mrs. Minor is represented in the case by her present husband, Steven R. Minor, a lawyer (hereafter "lawyer Minor").[1]

---

[1] In a letter to the clerk (July 10, 2015, ECF No. 6), lawyer Minor requested that this case be "reassigned away from Judge Jones and Magistrate Judge Sargent to other judges who do not regularly hold court in Abingdon or Big Stone Gap" on the ground that he regularly practices in this court and his wife is a party to the case. It is not my custom to recuse myself simply because an attorney who practices in this court or his or her close relative is a party to the case. I have no relationship to lawyer Minor other than a professional one in that he is one of many attorneys appearing before me. I do not know his wife or plaintiff Barrett. No recusal is necessary.

Barrett's alleged grievances are voluminous. Even without exhibits and supporting materials, the Complaint spans over 200 pages and is composed of 41 independent causes of action. In sum, the Complaint asserts challenges to the constitutionality of various Virginia child custody laws, the actions of various state court judges, the personal conduct of defendant Minor in relation to this custody dispute, and a purported claim for habeas corpus relief. Barrett also moves for sanctions against lawyer Minor and for his disqualification as counsel for his wife in the case.

The defendant has moved to dismiss for lack of subject-matter jurisdiction and failure to state a claim on which relief can be granted. Fed. R. Civ. P. 12(b)(1), (6). Alternatively, she requests that this court abstain while various state court actions are pending. The Motion to Dismiss or Abstain has been briefed by the parties and is ripe for decision.[2] Based on the record, I find that the allegations set forth in the Complaint are not sufficient to survive the defendant's Motion to Dismiss.[3]

---

[2] I will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not significantly aid the decisional process.

[3] In light of my decision, it is unnecessary for me to determine the abstention issue.

I.

The basic facts as alleged in the Complaint, which are accepted as true for the purposes of the present motion, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), are as follows.

Barrett and Minor were married in July of 1990 and had six children prior to their divorce in August of 2002. Since their divorce, Barrett and Minor have regularly litigated child custody disputes. Only two of their children are currently minors.[4]

The triggering event for purposes of this case occurred when Barrett filed for the modification of an April 9, 2010, child custody order in May of 2012. At that time, the custody order applied to his four minor children. During the pre-trial phase of the modification proceeding, the state court made a finding of a material

---

[4] Barrett agrees that he was once a licensed lawyer, but is no longer. *See Barrett v. Va. State Bar ex rel. Second Dist. Comm.*, 675 S.E.2d 827, 832 (Va. 2009) (affirming order revoking Barrett's license to practice law). In addition to himself as plaintiff, he seeks to sue on behalf of his two minor children as their next friend and names them as co-plaintiffs. However, a nonlawyer parent cannot represent his child in federal court. *Talbert v. Cty. Comm'n of Cabell Cty.*, No. 3:11-00290, 2012 WL 10816, at *2 (S.D.W. Va. Jan. 3, 2012) ("Virtually every court confronted with the issue has determined that a parent does not have the right to proceed *pro se* on behalf of a minor child."), *appeal dismissed,* No. 12-6210 (4th Cir. Mar. 7, 2012). One important reason for this rule is that nonlawyers are not bound by a licensed attorney's ethical obligations, which can be enforced by disbarment or suspension. *See Brown v. Ortho Diagnostic Sys., Inc.*, 868 F. Supp. 168, 172 (E.D. Va. 1994). While I could protect the minors' rights by directing that counsel be retained for them, or even by appointing counsel, *see id.* at 172 n.16, in light of the fact that I find that the court is without jurisdiction, and that any possible causes of action by the minors will not be prejudiced by dismissal of this case, no such remedy is needed, *see Talbert*, 2012 WL 10816, at *2.

change in circumstances, leaving only the issue of what was in the best interests of the children for trial. Prior to trial, however, venue for the proceeding was transferred from the Juvenile and Domestic Relations District Court ("JDRDC") for Grayson County to the JDRDC for the City of Bristol.

The modification proceeding was heard by Judge Florence A. Powell on August 22, 2012. In spite of Barrett's objections, Judge Powell allegedly ruled that (1) no evidence would be received regarding any facts prior to April 9, 2010; (2) the parties would not be allowed to call their minor children to testify; (3) the report of the guardian ad litem would be received into evidence; and (4) the case would be given one-day for trial, not the three days requested by Barrett. Following a one-day bench trial, Judge Powell took the matter under advisement.[5]

On October 3, 2012, Judge Powell issued a letter opinion regarding her custody determination, which was followed by a custody order on October 4, 2012. In reaching her decision, Judge Powell referenced and concurred with elements of an April 9, 2010, custody order of Judge Brent L. Geisler of the Circuit Court of Grayson County. Judge Geisler's order was entered in response to Barrett's appeal of a prior JDRDC decision to deny Barrett's motion to amend the parties' custody

---

[5] Prior to the issuance of her final decision, the Complaint asserts that Minor's attorney wrote to Judge Powell in an effort to influence her decision. (Compl. ¶ 40, ECF No. 1.) Based on the content of the letter — which is an exhibit to the Complaint — it appears that Minor's attorney was responding to Judge Powell's request that the parties submit preferences regarding visitation.

arrangement.  In turn, Judge Geisler's order referenced and adopted elements of a March 9, 2006, custody order of Judge J. Colin Campbell of the Circuit Court of Grayson County.  Judge Campbell's order was entered in response to appeals by Barrett and Minor of a JDRDC custody determination.

More recently, as of March 7, 2015, and continuing through April 13, 2015, Barrett filed various civil show cause motions against Minor for her alleged violations of Judge Powell's October 4, 2012, custody order.  In turn, Minor filed a motion to amend Judge Powell's custody order.  The parties' state court motions were filed while Judge Powell's prior custody order was pending review before the Virginia Court of Appeals.

Judge Powell thereafter recused herself and Judge Jarrett Benson was designated to consider the pending motions.  On May 20, 2015, at a hearing, Judge Benson concluded that Barrett had not been properly served regarding Minor's motion to amend and ordered him immediately served.  Judge Benson then denied Barrett's request for a continuance of the hearing and granted Minor's motion to amend Judge Powell's prior custody order.   Barrett voluntarily dismissed his show cause motions, based on his perception that Judge Benson was hostile and biased.

According to the parties, the orders of Judges Powell and Benson are currently pending appeal. The parties have not indicated whether the other state court orders referenced in the Complaint are pending appeal.

In sum, the various custody orders and appeals described in this litigation reflect the contentious and ongoing nature of the custody dispute between Barrett and Minor. In total, the Complaint asserts that at least eleven state judges have been involved in the parties' various custody proceedings.

II.

Although the Complaint is lengthy, Barrett has organized its content thematically into eight subparts that are individually suited to a relatively straight forward legal analysis. In addressing his claims, however, I will reorder the eight subparts of the Complaint for purposes of analysis.

In Part 1 of the Complaint, "the Plaintiffs seek . . . a review of Virginia Code §§ 20-124.1 to 20-124.3 and 20-124.6 with the intent that the Court will declare them to be unconstitutional and permanently enjoin their use in cases involving child custody disputes." (Compl. ¶ 1, ECF No. 1.) In Count 4 of the Complaint, the challenge is broader and questions the constitutionality of "Virginia Code §§ 20-124 to 20-124.6." (Compl. 37, ECF No. 1.) These statutes comprise all of Chapter 6.1 of Title 20 of the Code of Virginia and are entitled "Custody and Visitation Arrangements for Minor Children." In particular, section 20-124.1 is

-6-

the definitional section for the chapter; section 20.124.3 states the factors for a court to consider in determining the best interests of the child in custody or visitation arrangements; and section 20.124.6 requires both parents, regardless of custody, to have access to the child's health and educational records, with right of court review of a determination by a treating physician or psychologist that access to health records be denied when likely to cause substantial harm to the child or another person.

In the response to Minor's Motion to Dismiss or Abstain, Barrett makes clear that he is not seeking to hold Minor personally accountable for the allegations in Part 1 of the Complaint, but is "merely seeking a declaration that Virginia's child custody statutes are unconstitutional." (Pls.' Resp. Br. 2, ECF No. 8.) Stated differently, "the Plaintiffs pray that Virginia child custody statutes be declared unconstitutional and that their use for any reason whatsoever be permanently enjoined." (Compl. ¶ 833, ECF No. 1.) Based on the filings, there are at least two ways to interpret Part 1 of the Complaint.

In its broadest sense, Part 1 of the Complaint is an expansive, vicarious attack on Virginia's child custody statutes. Framed in this way, Barrett lacks standing to challenge Virginia's child custody statutes in a manner that implicates legal interests that are not his own. *See generally Cty. Ct. of Ulster Cty., N.Y. v. Allen*, 442 U.S. 140, 154–55 (1979) ("A party has standing to challenge the

-7-

Case 1:15-cv-00032-JPJ-PMS   Document 19   Filed 08/31/15   Page 7 of 17   Pageid#: 606

constitutionality of a statute only insofar as it has an adverse impact on his own rights. As a general rule, if there is no constitutional defect in the application of the statute to a litigant, he does not have standing to argue that it would be unconstitutional if applied to third parties in hypothetical situations.").

In a more narrow sense, Part 1 of the Complaint articulates various violations of Barrett's individual constitutional rights as a result of Virginia's child custody statutes, including infringement of his right to the care, custody, control, management and companionship of his children, and alleged violations of his due process, equal protection, and privacy rights. At a minimum, however, standing issues exist based on the alleged injury suffered, the defendant named in this proceeding, and the relief requested.

As noted by the Fourth Circuit, "[t]he 'irreducible constitutional minimum of standing' requires (1) 'an injury in fact — a harm suffered by the plaintiff that is concrete and actual or imminent, not conjectural or hypothetical'; (2) 'causation — a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant'; and (3) 'redressability — a likelihood that the requested relief will redress the alleged injury.'" *McBurney v. Cuccinelli*, 616 F.3d 393, 402 (4th Cir. 2010) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102–03 (1998)). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

-8-

Case 1:15-cv-00032-JPJ-PMS   Document 19   Filed 08/31/15   Page 8 of 17   Pageid#: 607

In this case, Barrett has failed to establish a connection between the named defendant, her alleged conduct, and the causation requirement for establishing standing. *See id.* at 560 ("[T]here must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'" (citation omitted)). Put simply, the plaintiffs have failed to demonstrate how Minor is accountable for the constitutionality of Virginia's child custody laws in this context.

Similarly, the protections of the Fourteenth Amendment to the United States Constitution generally do not extend to "private conduct abridging individual rights." *See Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 722 (1961). Rather, the Fourteenth Amendment applies to the actions of state actors. With respect to Part 1 of the Complaint, however, Barrett expressly states that he is not seeking to hold Minor accountable under 42 U.S.C. § 1983. Therefore, it is unclear what connection, if any, exists between the alleged constitutional violations and Minor as a private party.

Furthermore, the issues addressed in Part 1 of the Complaint are inextricably linked with the various state court custody proceedings that are also challenged in Parts 3 through 5 and 8 of this action. As further discussed in connection with the

defendant's *Rooker-Feldman*[6] argument, if the plaintiff seeks to challenge the constitutionality of custody statutes as applied in the underlying custody proceedings associated with this litigation, then those state court proceedings are the appropriate forum to raise those issues. *See Plyler v. Moore*, 129 F.3d 728, 731 (4th Cir. 1997) ("The *Rooker-Feldman* doctrine bars consideration not only of issues actually presented to and decided by a state court, but also of constitutional claims that are 'inextricably intertwined with' questions ruled upon by a state court, as when success on the federal claim depends upon a determination 'that the state court wrongly decided the issues before it.'" (citation omitted)).

The majority of claims asserted in the Complaint address various custody orders entered in the underlying state court proceedings before Judges Powell, Geisler, Campbell, and Benson. These claims are set forth in Parts 3 through 5 and 8 of the Complaint, and as noted in Barrett's response, these subparts along with Part 1 constitute the core of the plaintiffs' dispute concerning "the actions of the state in passing and applying unconstitutional laws in an unconstitutional manner." (Pls.' Resp. Br. 2, ECF No. 8.) Similar to the claims alleged in Part 1 of the Complaint, each of the claims identified in Parts 3 through 5 and 8 allege violations of Barrett's constitutional rights, not those of the minor children that are

---

[6] *D.C. Court of Appeals v. Feldman,* 460 U.S. 462 (1983); *Rooker v. Fid. Tr. Co.,* 263 U.S. 413 (1923).

named as plaintiffs to this proceeding.[7] In general, Barrett alleges numerous violations of his individual constitutional rights under the Fourteenth Amendment.

As an initial matter, Barrett acknowledges that the claims asserted in Parts 3 through 5 and 8 are not actions under 42 U.S.C. § 1983. In fact, Barrett contends that this court's jurisdiction to consider the orders of Judges Powell, Geisler, Campbell, and Benson is based on the court's original jurisdiction under 28 U.S.C. § 1331 or its supplemental jurisdiction under 28 U.S.C. § 1367. However, even if this court had original or supplemental jurisdiction over the claims asserted in Parts 3 through 5 and 8 — which appears unlikely — the *Rooker-Feldman* doctrine would apply in this context.

As noted by the Fourth Circuit, *Rooker-Feldman* is a jurisdictional issue. *Am. Reliable Ins., Co. v. Stillwell*, 336 F.3d 311, 316 (4th Cir. 2003). Under this doctrine, a "party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. De Grandy*, 512 U.S. 997, 1005–06 (1994). In this

---

[7] A limited exception appears to exist in two brief parenthetical notations associated with alleged violations of Barrett's right to substantive due process. In short, Barrett attaches cursory claims of violations of the freedom of speech rights of the minor plaintiffs based on Judges Geisler and Campbell allegedly drawing negative inferences against Barrett based on his questioning of the children's home life. (Compl. ¶¶ 557.I, 617.G, ECF No. 1.). No relationship exists, however, between the free speech rights of the children and Barrett's questioning of their home life.

context, "[t]he controlling question . . . is whether a party seeks the federal district court to review a state court decision and thus pass upon the merits of that state court decision." *Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 202 (4th Cir. 1997). This doctrine ensures that state court decisions are first reviewed within the state appellate courts and then the United States Supreme Court. *Am. Reliable Ins.*, 336 F.3d at 316.

As articulated by the Supreme Court, the *Rooker-Feldman* doctrine applies to a relatively narrow set of circumstances. More specifically, the doctrine is limited to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). In this case, Barrett asserts that his constitutional rights were violated by the orders of various state courts, which he seeks to have permanently enjoined by this court.[8] Framed in this way, Barrett is the "state-court loser" who is complaining of injuries caused by the "state-court judgments," which he seeks to have reviewed and rejected. *Id.*

---

[8] Barrett asserts that *Rooker-Feldman* is not applicable because the parties are not the same as those before the various state courts. Specifically, the two children named as plaintiffs in this proceeding "were not parties of the prior litigation between their parents." (Pls.' Resp. Br. 7, ECF No. 8.) A fundamental problem with this argument, however, is that the Complaint does not allege violations of the constitutional rights of the children in Parts 3 through 5 and 8 of the Complaint.

-12-

Case 1:15-cv-00032-JPJ-PMS   Document 19   Filed 08/31/15   Page 12 of 17   Pageid#: 611

The more contentious issue in this case, however, is whether pending state court appeals prohibit the application of the *Rooker-Feldman* doctrine. In the Fourth Circuit, the *Rooker-Feldman* doctrine applies to lower state court decisions and is not dependent on the completion of any state court appeal. *See Am. Reliable Ins.*, 336 F.3d at 319–20 (concluding that the *Rooker-Feldman* doctrine applies if a state court renders a decision resolving an issue that is the basis for federal action); *Brown & Root, Inc. v. Breckenridge*, 211 F.3d 194, 199 (4th Cir. 2000) (noting that the *Rooker-Feldman* doctrine precludes review of lower court decisions). As a result, Parts 3 through 5 and 8 of the Complaint are not subject to the jurisdiction of this court under the *Rooker-Feldman* doctrine.

In Part 6 of the Complaint, Barrett asserts one cause of action for compensatory damages against Minor pursuant to 42 U.S.C. § 1983. Under this provision,

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. In *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922 (1982), the Supreme Court set forth the framework for determining whether a party is a state actor for purposes of § 1983:

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible. . . . Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.

*Id.* at 937; *see also Jackson v. Pantazes*, 810 F.2d 426, 428–29 (4th Cir. 1987) (applying *Lugar* to § 1983). However, the *Lugar* court also stated that it was not holding that "a private party's mere invocation of state legal procedures constitutes 'joint participation' or 'conspiracy' with state officials satisfying the § 1983 requirement of action under color of law." *Lugar*, 457 U.S. at 939 n.21 (citation omitted); *see also Dennis v. Sparks*, 449 U.S. 24, 28 (1980) ("[M]erely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge" for purposes of § 1983.).

In this case, Barrett alleges that "but for" the custody orders of Judges Geisler and Powell, Minor would have been unable to violate the rights of Barrett for purposes of § 1983. (Compl. ¶¶ 676–77, ECF No. 1.) However, the Complaint does not demonstrate that Minor was anyone other than an adverse party to the various state court custody proceedings at issue in this litigation. In fact, the Complaint shows that Minor was subject to numerous sanctions for her misconduct related to requirements of various custody orders. Under these circumstances, Minor did not act under color of law by litigating custody issues before various

-14-

Case 1:15-cv-00032-JPJ-PMS   Document 19   Filed 08/31/15   Page 14 of 17   Pageid#: 613

state courts or violating the courts' directives. *See, e.g.*, *McDougald v. Jenson*, 786 F.2d 1465, 1488–89 (11th Cir. 1986) ("It is the general rule in this circuit that a private individual does not act under color of state law by engaging in litigation, even in bad faith, unless that individual is compelled by state law to bring suit or is acting under the authority or pretense of authority of the state."); *Nouse v. Nouse*, 450 F. Supp. 97, 99 (D. Md. 1978) (stating that an ex-wife was not a state actor for purposes of § 1983 based on child custody litigation); *Snyder v. Talbot*, 836 F. Supp. 26, 30–31 (D. Me. 1993) (same); *Hennelly v. Flor de Maria Oliva*, 237 F. App'x 318, 320 (10th Cir. 2007) (unpublished) (same); *Owens v. Welch*, No. 09-2011, 2009 WL 1203716, at *3 (W.D. Ark. May 1, 2009) ("The mere fact that [the defendant] utilized the courts of the State of Arkansas in obtaining a custody and child support order with respect to the parties' minor child does not constitute state action.").

In Part 2 of the Complaint, the plaintiffs assert that the two minor plaintiffs are unlawfully in the custody of Minor as a result of an unconstitutional child custody determination. The plaintiffs request, in part, that this court "enter an order immediately granting [the minor plaintiffs] *habeas corpus* relief, commanding that the Defendant immediately turn them over to the physical custody of [the plaintiff] Barrett." (Compl. ¶ 297, ECF No. 1.) In his response brief, Barrett concedes that habeas relief is not available under federal law, but

requests leave to amend the Complaint to pursue such relief pursuant to state law through this court's exercise of supplemental jurisdiction. Similarly, in Part 7 of the Complaint, Barrett asserts twelve state law causes of action against Minor based on claims of negligence per se, ordinary negligence, tortuous interference with parental rights, and intentional infliction of emotional distress. Each claim in Part 7 is based on the parties' custody dispute. In asserting these claims, Barrett relies on the court's exercise of supplemental jurisdiction, as follows:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). However, a court "may decline to exercise supplemental jurisdiction over a claim under [§ 1367(a)] if . . . the district court has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3). In this case, all of the remaining claims are subject to dismissal; therefore, I decline to exercise supplemental jurisdiction over the state law claims asserted in Parts 2 and 7 of the Complaint. *See Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) ("[T]rial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished.").

For these reasons, I will grant the Motion to Dismiss or Abstain (ECF No. 4) without prejudice for lack of subject-matter jurisdiction.

III.

Barrett moves the court to sanction lawyer Minor in the amount of $2,500 for making frivolous arguments in support of the Motion to Dismiss or Abstain. He also moves to disqualify lawyer Minor since Barrett believes that lawyer Minor will be a witness at any trial of this case. He requests the court to strike the Motion to Dismiss or Abstain as scandalous because it "brings up every questionable decision of Barrett when, even if true, have no impact of [sic] the legitimacy or merits of this suit." (Mot. ¶ 27, ECF No. 9.) I will deny all of Barrett's motions. The arguments made on behalf of the defendant were not frivolous nor the assertions scandalous and since no trial will be held in this case, I need not consider whether it is proper for lawyer Minor to appear as both counsel and witness.

A separate Final Order will be entered herewith.

DATED: August 31, 2015

/s/ James P. Jones
United States District Judge